UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERYL BRODSKY

                Plaintiff, Pro Se

      -against-

THE NEW YORK CITY CAMPAIGN FINANCE BOARD,
ON BEHALF OF ZACHARY W. CARTER, CORPORATION
COUNSEL OF THE CITY OF NEW YORK

                Defendant.

**Case No. 17-CV-3186 (JLC)(AJN)**

RECEIVED
SDNY PRO SE OFFICE
2017 AUG 29 AM 11: 15
S.D. OF N.Y.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Submitted by:

Meryl Brodsky Plaintiff, Pro se
150 East 61st Street, #11-K
New York, New York 10065
Tel. 212-866-2105; meryl7@verizon.net


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: X 04 2017

# TABLE OF CONTENTS

Page(s)

**Table of Contents** ……………………………………………………………… i

**Table of Authorities** …………………………………………………………… ii

**I - PRELIMINARY STATEMENT** ……………………………………………… 1

**II - STATEMENT OF FACTS** …………………………………………………… 2

    (a)  Declaration of Meryl Brodsky ………………………………………… 2
    (b)  Defendant board entirely omits NYC Claim No. 2017LW002809
        against the board for fraudulent misrepresentations pursuant to
        26 USC § 7431(a)(2) and (d)……………………………………….. 2

**III - ARGUMENT** …………………………………………………………… 8

    POINT I  –  Due to Fraud Dismissal is Inappropriate,  F. R. C. P. 12(b)(1) and (6)….. 8
    POINT II –  Res judicata, Collateral Estoppel and Statute of limitations do not
              preclude Claims…………………………………………………… 12
    POINT III –  Plaintiff's Claims are not barred by the relevant Statute of Limitations,
              § 7431(d)……………………………………………… ………….. 15
    POINT IV –  (a)  The Attorney Work-Product Privilege should have precluded the
              Civil Court Judge and Board Employees from disseminating Plaintiff's
              Return Information……………………………………… ………… 15
              (b) Right to Protective Order, FOIL Exemption, No Judicial Exception
              or Unlawful Levy…………………………………………… ……… 18
    POINT V –  Retaliation ………………………………………….................... 24

**CONCLUSION**……………………………………………………………… 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                    Page(s)

*Aliotti v. Vessel Senora*, 217 F.R.D. 496 (N.D. Cal. 2003)....................................... 19

*Allstate v. Elzanaty*, 916 F. Supp. 2d 273 (E.D.N.Y. 2013)...................................... 12

*Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153,___
(9th Cir. 2012).............................................................................. 9, 15, 16, 17, 18

*Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988))..................................... 12

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146
(2nd Cir. 1995)........................................................................................ 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544  (2007)................................................... 9

*Bingham v. Zolt,* 66 F.3d 553 (2d Cir. 1995), *cert. denied,* 517 U.S. 1134(1996).............. 12

*Bleavins v. United States*, 1991 U.S. Dist. LEXIS 20975, at **3-4 (C.D. Ill. 1991)............ 13

*Brodsky v. Carter*, No. 15-cv-3469,  2016 U.S. Dist. LEXIS 40461
(S.D.N.Y. Mar. 28, 2016), *aff'd* 673 F. App'x 42 (2d Cir. 2016)................................... 1

*Brodsky v. N.Y.C. Campaign Finance Board*, 2013 N.Y. App. Div. LEXIS 4552............... 8

*Cambridge Med., P.C. v. Allstate Ins. Co.,* 899 F. Supp. 2d 227, 2012 WL 5077481, at *6
(E.D.N.Y.  2012)...................................................................................... 12

*Campinas Foundation v. Simoni,*  02 Civ. 3965 (S.D.N.Y. 2005)................................ 18

*Charney v. Zimalist*  07-CV-6272  (S.D.N.Y. 2016)............................................... 15

*Conley v. Gibson,* 355 U. S. 41 (1957)............................................................. 9

*Daugherty v. Jefferson County ,* 13-CV-491(N.D.N.Y.  2015).................................... 15

*Dew v. 39th Street Realty*, 2001 WL 388053, at *2 (S.D.N.Y. 2001).............................19

*Dowd v. Calabrese,* 101 F.R.D. 427 (D.D.C. 1984)................................................ 23

*English v. Lattanzi*, 12-CV-4179 (E.D.N.Y. 2015) ................................................ 10

*Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321 (1957) ...................................... 10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168
(2d Cir. 2004)...................................................................... 9

*Fedele v. Harris,* 69 F. Supp.3d 313 (E.D.N.Y. 2014).............................................. 25

*Federal Deposit Ins. Corp. v Forte,* 144 A.D.2d 627 [1988]......................... 3

*Garity v. United States,* 81-2 U.S. Tax Cas.(CCH)¶ 9599, at 88,006-08
(E.D. Mich. 1980).................................................................. 24

*Gates v. Wilkinson,* No. 03-CV-763  (N.D.N.Y. 2005)........................... 14, 19

*Gattegno v. Pricewaterhousecoopers, LLP,* 205 F.R.D. 70 (D. Conn. 2001)................... 19

*Goel v. Bunge, Ltd.,* 820 F. 3d 554 (2d Cir. 2016).................................................. 9

*Green v. Sunset Fin. Servs., Inc.,* 8:09CV13 (D. Neb. 2012)...................................... 19

*Guilbert v. Gardner,* 480 F. 3d 140 (2d Cir. 2007) .................................................. 11

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132 (2009)...................... 11

*In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56 (2d Cir.1998).................. 12

*In re Rae,* 436 B.R. 266 (Bankr. D. Conn. 2010)..................................................... 14

*JKM Med. Care, PC v. Interboro Ins. Co.,* 2016 NY Slip Op 26348............................. 2

*Kaufman v. Cohen,* 307 A.D.2d 113, 760 N.Y.S.2d 157 (2003)................................. 11

*Lavastone Capital LLC v. Coventry First LLC,* 14 Civ. 7139, 2015 WL 1939711, at *9
(S.D.N.Y. 2015) ................................................................... 10

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A,* 400 F.3d 139 (2d Cir. 2005)................. 15

*Liberty Mut. Ins. Co. v. Excel Imaging, PC,* 879 F. Supp. 2d 243 (E.D.N.Y. 2012)........... 12

*Maggio v. Hynes,* 423 F. Supp. 144 (E.D.N.Y. 1976)........................................ 14, 21

*Matter of Mercury Factoring, LLC v. Partners Trust Bank,* 75 AD 3d 1101
(4th Dept. 2010) ................................................................. ..3

*Matter of Moody's Corporation and Finance v. NYS Dept. Of Tax and Finance,*
141 A.D.3d 997, Appellate Division (3d Dep't, 2016)........................................... 22

*May v. United States,* 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. 1992)................. 13

*Mayfield v. Asta Funding,  Inc.,* 95 F. Supp. 3d 685 (S.D.N.Y. 2015)........................... 12

*Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313 (S.D.N.Y. 2015) ......................... 15

*Merck & Co. v. Reynolds,* ___US___, 130 S. Ct. 1784 (2010)..................................... 16

*Minda v. US*, Docket No. 15-3964 (2d Cir. 2017)................................................. 24

*Minnie Rose LLC v. Yu*, No. 15-cv-1923 (S.D.N.Y. 2016)...................................... 10

*Natl Bank of New York City v. ESI Group, Inc.,* 201 AD 2d 469 (2nd Dept. 1994)............ 3

*Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539  (E.D.N.Y. 2015).................. 11

*NYS Board of Elections v. Lopez Torres,* 552 U.S. 196 (2008)........................ 15, 24, 25

*O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142 (E.D.N.D. Ohio 1949)................... ......14

*Olsen v. Egger*, 594 F. Supp. 644 (S.D.N.Y. 1984)............................................... 23

*Oteze Fowlkes v. Adamec,*  432 F.3d 90 (2d Cir.2005) ......................................... 25

*People v. O'HARA*, 191 Misc. 2d 248  (NY Sup.Ct. 2002)...................................... 5

*Perrin & Nissen Limited v. SAS Group Inc.* No. 1:2006cv13089 at 9 (S.D.N.Y 2009)......... 9

*Proctor v. LeClaire,* 846 F.3d 597 (2d Cir. 2017)............................................... 15

*Ravo v. Rogatnick*, 70 N.Y.2d 305 (1987)...................................................... 15

*Raytheon Co. v. Indigo Systems Corp.*, 688 F. 3d 1311 (2d  Cir. 2012)...................... 11

*Rorex v. Traynor,* 771 F.2d 383 (8th Cir. 1985)............................................... 24

*Rueckert v. IRS*, 775 F.2d 208 (7th Cir.1985)................................................... 17

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)..................................... 9

*Russell v. Board of Plumbing Examiners*, 74 F. Supp. 2d 339 (S.D.N.Y. 1999).............. 18

*Sargiss v. Magarelli*, 2009 N.Y. Slip. Op. 4301................................................ 10

*Schaeffler v. US*, 806 F. 3d 34 (2d Circuit 2015)*,* 13 Civ. 4864 (S.D.N.Y.2016)......... 15, 20

*Scheuer v. Rhodes*, 94 S. Ct. 1683 (1974)...................................................... 9

*Schipper v. United States*, No. CV-94-4049, 1998 WL 786451, at *9-12
(E.D.N.Y. 1998)............................................................................ 24

*Schmidt v. McKay*, 555 F.2d 30 (2d Cir. 1977)……………………………………….. 10

*Scollo v. Good Samaritan Hosp.*, 175 AD2d 278 (2d Dept 1991)………………………… 21

*Seaman v. Wyckoff Heights Med. Ctr., Inc.,* 8 Misc 3d 628
(Sup. Ct., Nassau County)(2005)…………………………………………………… 21

*Seattle Times Co. v Rhinehart* (467 US 20 [1984])……………………………………… 21

*Siler v. 146 Montague Assocs.*, 228 A.D.2d 33 (2d Dep't 1997)……………………… 15

*Slayton v. Am. Express Co.,* 604 F.3d 758 (2d Cir. 2010)…………………………… 9

*St. Regis Paper Co. v. U.S.*, 368 U.S. 208 (1961)……………………………………… 14

*Stalis v. Sugar Creek Stores, Inc.,* 295 A.D.2d 939, 744 N.Y.S.2d 586
(App. Div. 2002)……………………………………………………………………… 11

*Standard Investment Chartered v. NASD*, 07 Cv. 2014 (S.D.N.Y. 2008)………………… 21

*Sykes v. Mel. S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015)……………… 12

*Szulik v. Tagliaferri*, 966 F. Supp. 2d 339  (S.D.N.Y. 2013) ………………………… 9

*Tartan Oil Corporation v. Department of Taxation and Finance,* 239 AD2d 36,
668 NYS2d 76 (3rd Dep't 1998)……………………………………………………… 22

*Trudeau v. NYS Consumer Protection Board*, 237 FRD 325 (N.D.N.Y. 2006)…………… 19

*United States v. Adlman*, 134 F. 3d 1194  (2d Cir. 1998)……………………………… 15, 20

*United States v. Evans*, 844 F.2d 36 (2d Cir. 1988)…………………………………… 1

*United States v. O'Mara,* 122 F.Supp. 399 (D.C.D.C.1954)…………………………….. 14

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013)…………………………………….. 9

*Westchester Rockland Newspapers, Inc. v. Marbach*, 66 A.D.2d 335,
413 N.Y.S.2d 411 (2d Dept.1979)……………………………………………………. 21

*Woori Bank v. RBS Sec., Inc.,* 910 F. Supp. 2d 697 (S.D.N.Y. 2012)……………………. 10

*YSL v. Shal*, 10 Misc. 3d 554, 809 N.Y.S.2d 387 (Sup. Ct. 2005)……………………… 5, 22

**Federal Statutes**

26 U.S.C. § 527(j)…………………………………………………………………… 3

26 U.S.C. § 6103................................................................ 1, 13, 14, 17, 21, 22

26 U.S.C. § 6103(a)............................................................... 19, 22, 24

26 U.S.C. § 6103(b)(2)............................................................... 18

26 U.S.C. § 6103 ( c )................................................................... 8

26 U.S.C. § 6103(e).................................................................. 18

26 U.S.C. § 6103(h)(4).............................................................. 23

26 U.S.C. § 6103(i)...............................................................18, 21, 23

26 U.S.C. § 6103(i)(1)..............................................................14, 21

26 U.S.C. § 6103(k)(6)............................................................... 24

26 U.S.C. § 6104................................................................... 3

26 U.S.C. § 6104 (c )(4)............................................................ 23

26 U.S.C. § 6104 ( c )(D)(6)......................................................... 22

26 U.S.C. § 6110.................................................................. 21

26 U.S.C. § 7213.................................................................. .23

26 U.S.C. § 7216.................................................................. 6

26 U.S.C. § 7216 (a) (2)............................................................ 6

26 U.S.C. § 7431(a)................................................................16

26  U.S.C. § 7431(a)(2)............................................... 1, 6, 8, 12, 13, 14, 15

26 U.S.C. § 7431(c)(1)(B)(i)(ii),(2),(3)................................................17

26 U.S.C. § 7431( c)(1)(B),(2),(3) and (d)............................................. 3

26 U.S.C. § 7431(d)............................................... 9, 11, 14, 15, 16, 18

26 U.S.C. § 7525(a)................................................................ 6

26 U.S.C. § 7525(2)................................................................ 6

28 U.S.C. § 1340.................................................................. 1

28 U.S.C. § 1367(a)……………………………………………………………………… 1

Fed. R. Civ. P. 12(b)(1), (2)…………………………………………………….. 8

Fed. R. Civ. P. 12(b)(6)………………………………………………………   1, 8, 13

Fed. R. Civ. P. 12(d)……………………………………………………………… 1

Fed. R. Civ. P. 15(a)……………………………………………………………. 1, 13

Fed. R. Civ. P. 15(a)(1)(b)………………………………………………………1

Fed. R. Civ. P. 26(a) ……………………………………………………………13

Fed. R. Civ. P. 26(b)(1)…………………………………………………………18

Fed. R. Civ. P. 26(b)(3)…………………………………………………………20

Fed. R. Civ. P. 40.2………………………………………………………………14

Treasury Regulation § 301.6103(c )-1…………………………………………… 23

U.S. Const.  amend. 1 and 5……………………………………………………… 21

## State and City Statutes

NYCPLR § 213(8)……………………………………………………………1, 9, 10, 11

NYCPLR § 214(4)…………………………………………………………………11

NYCPLR § 2221(e)……………………………………………………………… 8

NYCPLR § 2303(a)……………………………………………………………… 5

NYCPLR § 3103(c)……………………………………………………………… 5

NYCPLR § 3106 ………………………………………………………………… 5

NYCPLR § 3107 ………………………………………………………………… 5

NYCPLR § 3111 ………………………………………………………………… 5

NYCPLR § 3120 ………………………………………………………………… 5

NYCPLR § 5015(a)(2) and (3)………………………………………………….. 8

NYCPLR § 5021(a)(2)…………………………………………………………… 8

NYCPLR § 5222 ………………………………………………………………..  3

NYS Public Officers Law § 87(2)(a)………………………………………… 22

NYS Tax Law § 211 (8)(a) ………………………………………………….. 22

NYS Tax Law § 1146(a) …………………………………………………….. 22

NYS Tax law § 1831 ………………………………………………………… 22

NYC Administrative Code §  3-711…………………………………………...  5

22 NYCRR § 130-1.1………………………………………………………...  5

## References

IRS Disclosure & Privacy Law Reference Guide
(Publication 4639 (Rev. 10-2012))
 https://www.irs.gov/pub/irs-pdf/p4639.pdf…………………… ………….. 13, 18, 23

IRS Form 1099-A (Copy A & B)…………………………………………….  7

http://exercisescivpro.lawbooks.cali.org/chapter/exercise-eleven-preclusion/ …………... 14

A Manual for *Pro Se* Litigants appearing before the U.S. District Court for the
Southern District of New York, January 2011, Published and Copyrighted by
the District Executive Office, United States District Court, Southern District of
New York…………………………………………………………………… 8

Restatement (Second) of Judgments § 70, § 74 (1982)…………………………. 5

# I - <u>PRELIMINARY STATEMENT</u>[1]

Brodsky appealed from judgment, *Brodsky v. Carter*, 15-cv-3469, 2016 U.S. Dist. LEXIS 40461 (S.D.N.Y. 2016), *aff'd* 673 F. App'x 42 (2d Cir. 2016). The Second Circuit stated, in part, Brodsky may have a case pursuant to 26 U.S.C. § 6103 and § 7431(a)(2), which, for various reasons, was not heard.  Employees of the NYC Campaign Finance Board (the "board") violated the Internal Revenue Code pursuant to 28 U.S.C. § 1340, 26 U.S.C. § 7431 and supplemental State law, 28 U.S.C. § 1367(a) pursuant to NY CPLR § 213(8) allowing claims for fraud.[2]

Via a routine audit, the board devised a fraudulent obligation to execute Brodsky's private monies, 223 shares of ExxonMobil stock, or $13,237.93, plus the difference in market value representing adverse claims totaling $18-$19,000.  Brodsky also sues the board for NYC Claim No. 2017LW002809 (May 2017) pursuant to the same statutes.  Violations of the Internal Revenue Code include the illegal dissemination of tax returns resulting in property liens, executions imposed on ten or more interstate stock companies, banks,  and a subpoena to an accountant.[¶1-4]

Such actions  may have been instigated by a previous City official, accused of over-the-limit contributions, who also appointed board members and city judges, to conceal the suppression of classified information required to be disclosed in an unrelated federal lawsuit, *United States v. Evans*, 844 F.2d 36 (1988). The prospect of private gain spiked by uncontrollable jealousy could have motivated attacks on this country.   Extrinsic fraud is revealed  in the instant case where the board conceals it fabricated a debt,  colludes to place a particular judge on the case, illegally disseminates Brodsky's tax return information and avoids reporting. [¶ 5-11, 54-65]

---

[1] [¶ ___] Paragraphs of Brodsky's May  30, 2017 Complaint [ECF Dkt. 5]; (Dec.    ) Brodsky's Declaration, Exs. A-I; (D. __  )Pages of Defendant's  Rule 12(b)(6) motion to dismiss; (D. Dec.__) Defendant's Declaration ("Jacob Decl."); Attachment  1- Page 47, "Second Cause of Action," May 1, 2017 Complaint [ECF Dkt. 1]was  not scanned. (D. 4-5)

[2] Pursuant to Rule 12(d), Brodsky submits a Declaration  because Defendant's motion to dismiss and declaration   must be treated as a motion for summary judgment, Rule 56. **To date, defendant has *not* mailed Brodsky a Local Rule 56.2 Notice** required since plaintiff is pro se. Further, Brodsky reserves the right to amend the May  30, 2017 Complaint [ECF Dkt. 5]pursuant to Rule 15(a)(1)(b).

1

## II - STATEMENT OF FACTS

(a)   **Declaration of Meryl Brodsky.** In order to   substantiate J. Rakower, Suh and Weisman's  false facts and statements, documents concerning the derivation of the bogus debt  and illegal dissemination of private tax return information are contained in Plaintiff's Declaration: **Exhibit A,** Exhibits 1-5 [¶ 1-113, 124-5,  137-141, 154-196, 200-252]; **Exhibit B** [¶ 66-113]; **Exhibit C** [¶ 104]; **Exhibit D** [¶ 114-123]; **Exhibit E** [¶ 126-136]; **Exhibit F** [¶ 142-196]; **Exhibit G** [¶ 187- 204]; **Exhibit H** [¶  197 ]; **Exhibit I** [¶  1 ]. (D. 4-5)

**(b) Defendant board entirely omits NYC Claim No. 2017LW002809 against the board for fraudulent misrepresentations pursuant to 26 USC § 7431 (a)(2) and (d).**  (D. 1-9; D. Dec.)

For the past several years, Brodsky has litigated claims and accrued legal fees against the board for imposing a fraudulent debt which preclude her from seeking public office and obtaining other employment [¶ 48]. To resolve this, on January 12, 2017, Brodsky wrote ExxonMobil ("Exxon" or "XOM") c/o Computershare, for a copy of an execution check which she was previously unable to procure and informed she needed permission from the NYC Sheriff. [¶ 227, Ex.1; Dec. A15] Brodsky contacted the Sheriff on January 24, 2017 and told there was a $7,917 interest lien on $26,010 accruing from July 2007 to August 2010 at  9%.  The board neglected to file a "satisfaction of judgment" pursuant to CPLR § 5021(a)(2) on $26,010 "unspent" funds Brodsky repaid on July 26, 2007 thus, there was no proof. *JKM Med. Care, PC v. Interboro Ins. Co.,* 2016 NY Slip Op 26348 (The Civil Court did not consider alternative relief of the entry of a satisfaction of judgment). In December 2009, J. Rakower made clear she would *not* entertain a motion to amend or satisfy the order holding plaintiffs liable for $26,010 previously repaid, at 2:

> Brodsky asserts that the Board accepted a payment of $26,010 shortly after the decision was issued. Thus, the judgment should be vacated due to the Board's misrepresentations to the Court regarding the amount owed. By way of reply, the Board points out that it need not submit a new proposed judgment each time a partial payment is made. [No. 118316/06 (N.Y. Sup. Ct., June 27, 2007)](D. 2)

2

*Natl Bank of New York City v. ESI Group, Inc.,* 201 AD 2d 469 (2nd Dept. 1994) ("where, as here, the judgment creditor wrongfully refuses to issue a partial satisfaction: 'The clerk of the court …shall make an entry of the satisfaction or partial satisfaction on the docket of the judgment upon' 'the order of the court (CPLR 5021[a][2]'"). [¶227-229] Employees Jihee Suh and Hillary Weisman colluded with J. Rakower to preclude any hearing on additional, falsified amounts imposed on multiple subpoenas. *See Matter of Mercury Factoring, LLC v. Partners Trust Bank*, 75 AD 3d 1101 (4th Dept. 2010) (Judgment debtor has demonstrated exploitative overreaching by the creditor sufficient to compel the conclusion that the judgment should be deemed satisfied (*see generally Federal Deposit Ins. Corp. v Forte*, 144 A.D.2d 627, 628 [1988])). [¶ 230]

Falsifying debt, J. Rakower, Suh and Weisman violate CPLR § 5222, etc. Accordingly, "[T]he aggregate amount of $35,850, of which $11,875 remains due and unpaid" represents to stock agents, banks and the NYC Sheriff that installments of $26,010 are due. J. Rakower, Suh and Weisman predicated the excessive debt on a fraudulent total: $188,000 - $120,000 ($26,010 "unspent" **repaid**) = $68,000, exceeding the $150,000 limit by $38,000 (rounded). Thus, $13,237.93 (including poundage, interest) are adverse claims.[3] [¶ 231]

Due to the lack of any satisfaction of judgment on $26,010 repaid ten years ago, the Sheriff could not finalize the case. Pursuant to CPLR § 5021(4)(B), on February 6, 2017, Lieutenant Lopez

---

[3] Brodsky's total funds were $119-120,000 including $26,010 "unspent" repaid. Tomassetti, Weisman and Suh expanded the total to $188,000, $38,000, 25% "over the limit," $150,000, to incur penalties for a debt: [¶ 29-53]
    (a) Five percent (5%) of $188,000 is $9,400, falsified "adjustment to disbursements";
    (b) Then 5% of $9,400 = $470, falsified "penalty"; plus
    (c) $470 rounded to $500, plus $1,500 additional penalties ($470, $777, $650 (all rounded))  is $2,000:
        $470 + ($500 + $800 + $700) = $2,470 + $9,400 + $150,000 +$26,010 = $188,000 (rounded)[¶ 37-43]
    Thus, $38,000 – $26,000 = $12,000 (rounded) = $9,400 + $470 + $470(500) + $1,500 = "$11,87[5]," corresponds to "the aggregate amount of $35,850, *of which $11,875 remains due and unpaid*" imposed on subpoenas and executions. (Dec. E132-189)The difference, $68,000 ($188,000 - $120,000) represents the "partly satisfied," fraudulent debt of $11,875, "due and unpaid" on about five subpoenas which resulted from the illegal dissemination of return information, 26 USC § 7431(c)(1)(B),(2),(3) and (d). **Damages = $9,400 +$2,470 + $1,368 (sheriff's fees, interest) = $13,238** + difference of 223 shares of XOM at $75-85/sh. = **$18-19,000** [¶ 37-51, 231] Inserting a falsified total, $188,000 for $119-120,000 (+/- $600 bank adj.) yields the spurious conclusion that totals were not required on disclosure statements, violating  § 6104, 527(j).

supplied Brodsky with the Exxon check, etc. and a "Writ of Execution to Mellon Investors Services, LLC" for Alcatel-Lucent, Citadel Broadcasting, General Electric and Exelon stocks, stating, "Partly satisfied Net Collected $12,546.04." The Writ of Execution and ExxonMobil check, etc. disseminate Brodsky's tax return information emanating from J. Rakower's, Suh's and Weisman's illegal dissemination of return information in July 2010. [¶ 232; Dec. A23-25] On April 10, 2017, Brodsky received an "Amended property execution endorsed 'fully satisfied' return" from the Lieutenant stating the execution, not dated, was incorrectly endorsed. [¶ 233-237; Dec. A34] According to the NYC Clerk in February 2017, Suh and Weisman could re-file the writs of execution to Mellon Investors Services, LLC and ExxonMobil utilizing the return data previously transferred to them. Arguendo, 20-year money judgments, such as Rakower's identical July 9, 2010 orders (004 & 005), could be filed because adjudging that $26,010 was not repaid "thereafter" the Appellate Division affirmed, allows the board's current inference that money is still owed, at 2: [¶ 155, Dec.G238]

> Brodsky appealed the June 21, 2007 decision, and the decision was affirmed by the Appellate Division First Department. A judgment was entered, and thereafter Brodsky returned $26,010 in funds to the Board. The sum currently due, $13,290.40, was calculated by the Board after fees and interest were added to the remaining balance. [No. 118316/06 (N.Y. Sup. Ct. July 9, 2010)] (D. Dec. Ex. A)

To remove the lien, Brodsky submitted proof to the NYC Comptroller that $26,010 was paid on July 26, 2007, Claim No.2017LW002809, January 31, 2017.(Dec. A29) The board submitted June 21, 2007, July 9, 2010 orders, a fraudulent satisfaction of judgment, three canceled checks and eight contact records. A call from the Comptroller on June 1, 2017 stated the board denied the Sheriff's interest lien, that instead of $7,917 on $26,010, J. Rakower imposed penalties. Since J. Rakower's June 27, 2007 order exempted Feinsot: "Ordered that Petitioners' application to declare that Feinsot is not personally liable for its pending reimbursement obligations to the Board is granted," Weisman, Suh and J. Rakower lied that $26,010 was not paid as an excuse to impose liability on Feinsot and collect Brodsky's monies[¶ 61-65], Further, they implied to the Sheriff that the bogus

amount of $11,875 was the penalty imposed for not repaying $26,010.[¶ 38] *People v. O'Hara*, 191 Misc. 2d 248 (NY Sup. Ct. 2002), "The court has strong reservation whether Administrative Code of the City of New York §3-711 authorizes the court to impose a civil penalty."

**Extrinsic fraud and dissemination of returns.** Leo Glickman, Brodsky's counsel moved to quash an information subpoena and vacate the August 2009 order, denied by Rakower on December 16, 2009. On January 6, 2010, under the Attorney Work-Product privilege, Glickman redacted responses to the subpoena, attached redacted 2007, 2008 returns, which under IRS purview are protected, then threw them out. After garnishing HSBC Bank and Charles Schwab, J. Rakower, Suh and Weisman forced Glickman, via threats of sanctions, to submit Brodsky's returns to her which Rakower handed to Suh and Weisman on March 23, 2010. [4] [¶ 92-94, 164; Dec.B46] (D.2)

Following 350+ pages of deposition, April 1, 2010 [¶100], Suh subpoenaed a "Questionnaire, in connection with Information Subpoena with Restraining Notice" on April 7, containing the exact 40 interrogatories from ExxonMobil and Eastman Kodak, c/o Computershare. On or about April 7, Suh and Weisman imposed five more subpoenas on stock companies culled from the illegal disclosure of returns; Alcatel-Lucent; Citadel Broadcasting, General Electric, Exelon held by BNY Mellon; Walt Disney. On or about April 16, Suh imposed writs of execution on all of them. On May 19, Suh also sent a turnover to Exxon without service or certified mail to Brodsky, followed by a Sheriff's levy. [5] [¶ 165-170; Dec. E170] Suh then extorted Feinsot, with no city business, for additional years' returns.[6] [¶ 142] Sikorski, Feinsot's counsel, moved to quash

---

[4] Restatement (Second) of Judgments § 70, 74 (1982) "[A] judgment in a contested action may be avoided if the judgment…(b)Was based on a claim that the party obtaining the judgment knew to be fraudulent." [¶ 6] Here, board employees concealed they falsified the total amount of funds, from $120,000 to $188,000.

[5] **Dissemination of private tax return information to transfer agents and banks.** All of the subpoenas lack leave of court but exceed twice the judgment amount and statutory number allowed per year. [¶ 126-141] Suh and Weisman violated laws governing attachment but assumed the financial entities at separate interstate locations could not be aware of it. Pursuant to CPLR § 3103(c), 3106, 3107, 3111, 3120 and § 2303(a), documents from a non-party must be on notice to all parties who have appeared in pending litigation. The failure by one party, to a pending action, to afford the requisite notice to the opposing party, of a subpoena duces tecum served on a non-party constitutes sanctionable conduct pursuant to 22 NYCRR § 130-1.1. *YSL v. Shal*, 10 Misc. 3d 554, 809 N.Y.S.2d 387 (Sup. Ct. 2005) [¶ 138-141]

Suh's subpoena on April 20. Suh, unable to answer, contacted J. Rakower to "fix" it: [¶ 154, 173-174, 176-179; Dec. F191] (D. 2-3)

> Thus please clarify whether the June 15 date is a hearing date, or return date only for Brodsky's opposition papers. Thank you.
> **Response:** "The appearance is on the papers only, you don't have to come to court."

Sikorski stated, "The two judgments sought to be enforced are in conflict," – "it would seem that the other should be vacated" and rebutted the illegal dissemination of Brodsky's returns.[¶ 175] Fearing any contest on the order rendered null the turnovers enabled by her illegal disclosures, § 7431(a)(2), Rakower shut him out. Not hearing Feinsot testify on Brodsky's behalf as to (1) the altered order or fabricated amounts; and (2) right to quash the subpoena and nondisclosure of returns, reveals extrinsic fraud. [¶ 178] Due to threats, Glickman resigned. J. Rakower cut Brodsky only a week to substitute Joel Schonfeld, Esq., who filed an Affirmation and Affidavit for adverse claims to "postpone on any garnishment or the compelling of Ms. Brodsky's brokers to turn over funds," on June 14, 2010. (Dec.227-230) J. Rakower also shut him out: [¶ 171-172] (D. 3)

> I am requesting that this Court hold in abeyance the Garnishee Order and any Order directing my stockbrokers and/or the transfer agents to transfer any of my shares of stock until my appeal to the Appellate Division is determined. [¶ 184]

---

[6] Excerpts from Sikorski's motion to quash:   [¶ 145-153, 180-181; Dec. F192-226]

12. In the court's original judgment, Exhibit "C", your deponent was relieved from any liability for the $470.00 penalty sought by the NYC Campaign Finance Board, and your deponent has paid, on behalf of the Brodsky to City Council 2005 committee the balance of the committee's funds ($25,975.44).

**THE DOCUMENTS SOUGHT, PERSONAL TAX DOCUMENTS, ARE PROTECTED FROM DISCLOSURE BY THE FEDERAL AND STATE LAW**

15. Client tax records in the possession of an accountant are protected from disclosure under both federal and state law, including NYS Tax law § 1831 and IRC § 7216.

16. To make matters worse for an accountant or other party who discloses tax records of a taxpayer IRC § 7525(a), the act of improper disclosure is a misdemeanor, IRC § 7216 (a) (2). This is in the nature of an attorney violating a client's privilege. A client or a taxpayer alone, not the attorney or accountant, has control over this information. The accountant cannot be forced to disclose this information except in exceptional circumstances (usually criminal proceedings, IRC § 7525(2)), and even then only under court order.

**THE TWO JUDGMENTS SOUGHT TO BE ENFORCED ARE IN CONFLICT**

20. The two judgments, copies of which are attached, are described in the second order as 'Duplicate original of order dated July 17, 2007'. Yet, both orders are different from each other. This raises the question as to whether the second order can be enforced. It is claimed to be a duplicate, yet it clearly is not. It seems that only the first judgment can be enforced, as it is the original, and the other judgment should be vacated.

**Contrary to Defendant, J. Rakower denied Feinsot's motion to quash the subpoena for Brodsky's tax returns, dismissing it as "moot," after handing the tax returns to Suh and Weisman. Further, the Second Circuit Court of Appeals made no such statement. (D. 3-4)**

Defendant lies that J. Rakower granted Feinsot's motion to quash and the Second Circuit affirmed, "J. Rakower quashed that subpoena" does not exist on the record (D. 4)  Two identical orders of July 9, 2010, state, "…Feinsot's petition to quash the subpoena, dated April 5, 2010, is rendered moot, and Mr. Feinsot need not produce Meryl Brodsky's tax returns," belie Defendant. (Dec. G238-239)(D. Dec. Ex. A)  J. Rakower renders Feinsot's motion moot to avoid exposure. Denying Feinsot's motion,  Rakower still holds him liable for the  debt because the underlying August 31, 2009 order does  and he did not release the returns. Thus, "Computershare is directed…to sell a sufficient number of Judgment Debtor Meryl Brodsky's shares of Exxon-Mobil to satisfy the judgment against Ms. Brodsky, plus Sheriff's fees and statutory interest, in the total amount of $13,290.40," represents damages due to the illegal dissemination of  return information and transfer out of a dividend reinvestment plan of 223 shares of Brodsky's Exxon stock pursuant to 26 U.S.C. § 7431 ( c)(1)(B),(2),(3) and (d) [¶187-190; Dec. A13, D128-131].[7] A call to a Mellon supervisor in September 2010 and Walt Disney in January 2011, reveal that, concurrent with the execution of 223 shares of Exxon,  Suh executed General Electric, Alcatel-Lucent, Exelon, Citadel Broadcasting at Mellon and Walt Disney stock on July 7, 2010 and was still collecting checks. [¶ 191-193; Dec.D129] An Exxon check and  Writ of Execution to Mellon, stating "Partly Satisfied Net Collected $12,546.04," remained with the City Clerk pending execution until April 10, 2017, according to the Lieutenant, who closed the "partly satisfied" case, representing adverse claims of $18-19,000, including the difference of ExxonMobil stock to date. [¶ 19-196; Dec. A18] (D. 5)

Due to baseless sanctions threatened against two or more attorneys in a proceeding costing

---

[7] A governmental unit, or any of its subsidiary agencies, that lends money secured by property must file Form 1099-A (Copy A & B), "Acquisition or Abandonment of Secured Property." Suh and Weisman  did not file Form 1099-A for the execution of 223 shares of Brodsky's Exxon stock of $13,237.93, which intentional omission carries steep penalties. They also failed to file an IRS Information Return for the $26,010 Brodsky returned in 2007.[¶ 159-163, 219]

$30,000+, Brodsky reserves the right to contest fees resulting from Suh and Weisman's fraud.[¶ 48] Brodsky complained to the Disciplinary Committee of the NYC Association of the Bar on September 23, 2010 which answered: "[C]oncerning the material allegations of professional misconduct...we have found that a judicial determination of such matters is helpful to the Committee," October 28, 2010. [¶ 197; Dec. H245]

.   On September 11, 2011, Brodsky wrote to the Administrative Law Judge, Civil, 1st Judicial Department, NYS Supreme Court, pursuant to CPLR § 2221(e) on facts garnered that would change the prior determination, CPLR § 5015(a)(2) and (3). After two state judges recused, Case #111590/2011 was routed to J. Rakower. Brodsky went to her chambers and witnessed her scrawl, "Decline to sign...leave to renew is denied," evincing extrinsic fraud. [¶ 197-199; Dec.G241]

**Additional fees incurred.** Sikorski assisted Brodsky appeal the July 9, 2010 order.(D. Dec. Ex. A) The First Department affirmed that Feinsot was exempt, revealing J. Rakower lied: "The court, however, found petitioner Feinsot was not personally liable for the repayment. Petitioners appealed to this court and we affirmed," *Brodsky v. N.Y.C. Campaign Finance Board*, 2013 N.Y. App. Div. LEXIS 4552. This should render (1) the transactions that imposed false liability on Feinsot and Brodsky without force of law, and (2) the execution void. [¶ 200-204; Dec. G242-243]

## ARGUMENT – POINT I
## Due to Fraud Dismissal is Inappropriate, F. R. C. P. 12(b)(1) and (6) [8] [¶ 239-252] (D. 5-6)

Pursuant to Fed. R. Civ. P. 12(b)(6), factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (*quoting*

---

[8] Brodsky has jurisdiction: 12(b)(1)(subject matter): 26 U.S.C.§ 7431(a)(2): "If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of section 6103 or in violation of section 6104 (c) such taxpayer may bring a civil action for damages against such person in a district court of the United States"; 12(b)(2)(personal) "In a lawsuit against the City of New York, the summons and complaint must be <u>delivered</u> to ...Office of the Corporation Counsel...N.Y. Civil Practice Law & Rules § 311(2)...along with the chief of the agency ..." A Manual for *Pro Se* Litigants appearing before the U.S. District Court for the Southern District of New York, January 2011, p. 60. [¶ 27-28]

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) *citing Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) *in Perrin & Nissen Limited v. SAS Group Inc.* No. 1:2006cv13089 at 9 (S.D.N.Y 2009). For example, "A complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud," *quoting Slayton v. Am. Express Co.,* 604 F.3d 758, 766 (2d Cir.2010) *in Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 355-6  (S.D.N.Y. 2013). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts …which would entitle him to relief," *citing Conley v. Gibson,* 355 U. S. 41 (1957), *Scheuer v. Rhodes,* 94 S. Ct. 1683, 1686 (1974). *See Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) (Plaintiff pro se  "clearly established constitutional rights.") Further, a motion under Rule 12(b)(6) challenges only the "legal feasibility" of a complaint. "[W]e do not look beyond 'facts stated on the face of the complaint,'"concluding that the District Court erred by relying on materials outside the pleadings in deciding to dismiss. *See Goel v. Bunge, Ltd.***,** 820 F. 3d 554 (2d Cir. 2016)

NY CPLR § 213(8) generally requires a plaintiff show, within six years of filing or within two years of discovery of the fraud, whichever is greater, that: (1) the defendant made a material false representation; (2) the defendant intended to defraud; (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (*quoting Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).

Violations under 26 U.S.C. § 7431(d) may be brought "within 2 years after the date of discovery." The statute of limitations does not begin to run until the taxpayer has discovered the existence of the disclosure of false fact. *Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153,___ (9th Cir. 2012). [¶ 76-77, 157-158]  (D. 6)

A "Complaint must . . . state with particularity the circumstances of the fraud under Rule

9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2)." *Woori Bank v. RBS Sec., Inc.,* 910 F. Supp. 2d 697, 700-01 (S.D.N.Y. 2012). See *Minnie Rose LLC v. Yu*, No. 15-cv-1923 (S.D.N.Y. 2016), altered invoices and monies diverted to a bank, not the factory, was fraudulent misrepresentation. Pleading requirements may be relaxed when the information is exclusively within the defendant's knowledge "as long as the plaintiff has adequately set forth the factual basis for the allegations." *Lavastone Capital LLC v. Coventry First LLC,* 14 Civ. 7139, 2015 WL 1939711, at *9 (S.D.N.Y. 2015). Minnie Rose LLC produces altered invoices as factual bases. Here, the board's falsification of total expenditures and "unspent" funds forced reliance on fabricated amounts. [¶ 29-43]

Where plaintiff alleged an employee stole, defendant argued that plaintiff's claims for fraud, conversion and breach of fiduciary duty were time-barred because events occurred eight years before plaintiff filed the complaint, *English v. Lattanzi*, 12-CV-4179 (E.D.N.Y. 2015). "The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was 'possessed of knowledge of facts from which [the fraud] could be reasonably inferred,'" *Sargiss v. Magarelli*, 2009 N.Y. Slip. Op. 4301 (quoting *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 326 (1957)). Summary judgment or dismissal is often "not a proper vehicle for the resolution of such a dispute," *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir. 1977). English did not know money was embezzled until contacted by Treasury agents in 2011, thus his fraud claim was not time-barred. Brodsky had to appeal one of two identical orders of July 9, 2010 before false facts were disclosed in 2013, that J. Rakower lied on the August 2009 order. Accordingly, Feinsot was not liable, thus, the claim against Brodsky for the exact same debt is justiciable, § 213(8). Also, Brodsky did not know of the illegal dissemination of return information, § 7431 (d), on "partly satisfied" writs of execution or checks until February 2017 when a lieutenant from the NYC Sheriff's Office contacted Brodsky [¶ 208, 227-238; Dec. A24] (D.7)

10

Where a print/brokerage business offered a salary and pension, until obvious it would not provide plaintiff the pension, *Guilbert v. Gardner*, 480 F. 3d 140 (2d Cir. 2007), plaintiff pled each successive breach of a contract requiring continuing performance  may begin the statute of limitations running anew. *See Stalis v. Sugar Creek Stores, Inc.,* 295 A.D.2d 939, 744 N.Y.S.2d 586, 587-88 (App. Div. 2002). The Second Circuit vacated summary judgment to the extent that claim encompassed misrepresentations occurring within the discovery period for fraud, § 213(8). Here, misrepresentations are continuous from the execution of Brodsky's monies 2010 to date. [¶ 205-219]

According to *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539  (E.D.N.Y. 2015), a three-year breach of fiduciary claim  has a  six-year statute of limitations if premised on fraud, CPLR § 213(8); 214(4). *IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 139 (2009). Since defendant breached its fiduciary duty to reap excessive legal fees, dismissal was denied. Fraud may also be "predicated on acts of concealment where the defendant had a duty to disclose material information," *Kaufman v. Cohen,* 307 A.D.2d 113, 760 N.Y.S.2d 157, 165 (2003). Board employees had a duty to disclose the derivation of its debt resulting in the illegal dissemination of Brodsky's return information. Predicated on concealment and fraud, revealed by the Sheriff in 2017, their actions were for pecuniary gain.[¶ 49-51,196, 208] Contesting defendants' statute of limitations defense against misappropriation of camera technology and patent infringement, *Raytheon Co. v. Indigo Systems Corp.*, 688 F. 3d 1311 (2d  Cir. 2012), the court reverses summary judgment, "…[T]here is no way the district court could reach such a conclusion without resolving factual questions against Raytheon, the non-moving party, at summary judgment." Since the board replaced the amount of total funds with a bogus hypothecation to fabricate debt, illegally disseminate returns and execute private monies, dismissal is inappropriate.

**Accrual of Claims.**  The instant case falls under  CPLR  § 213(8) and 26 U.S.C. § 7431(d), not RICO, however, the principles are guiding.  The  Second Circuit  recognized, *Liberty Mut. Ins.*

*Co. v. Excel Imaging, PC*, 879 F. Supp. 2d 243 (E.D.N.Y. 2012), that "a continuing series of fraudulent transactions undertaken with a common scheme can produce multiple injuries which each have separate limitations periods." *In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 59 (2d Cir.1998) (*citing Bingham v. Zolt,* 66 F.3d 553, 559-61 (2d Cir. 1995), *cert. denied,* 517 U.S. 1134(1996)); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988).

Injury accrued in *Allstate v. Elzanaty*, 916 F. Supp. 2d 273 (E.D.N.Y. 2013), *also Liberty Mut. Ins. Co.,* 879 F. Supp. 2d 243 (E.D.N.Y. 2012),  when they were defrauded of money. The board takes great pains  to suppress facts which prove the debt is *not* based on the same disclosure total. By 2017, facts exist to prove it is not— rather, it is derived from a falsified total. [¶202] (D. 7)Allstate contends that it did not discover  fraud  until a pattern developed pursuant to the doctrine of fraudulent concealment, *Liberty Mutual,* at 270  ("…[T]he issue [of statute of limitations] cannot be determined as a matter of law."); s*ee also, Cambridge Med., P.C. v. Allstate Ins. Co.,* 899 F. Supp. 2d 227, 235, 2012 WL 5077481, at *6 (E.D.N.Y.  2012) ("The court cannot hold…that all of Allstate's RICO claims are time-barred.").

A debt-buying company orchestrated a scheme  to enforce debt judgments of wireless service; filed fraudulent affidavits and engaged in "sewer service," *Mayfield v. Asta Funding,  Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015). False affidavits are  "false or  fraudulent …representations" that provide "independent bases for liability" under RICO. See *Sykes v. Mel. S. Harris & Associates LLC,* 780 F.3d 70, 86 (2d Cir. 2015). Here, the board illegally disseminated returns,  filed false pleadings, defective subpoenas and writs of execution to enforce a bogus debt. (Dec. F132-189) Due to Defendant's fraudulent misrepresentations, this Complaint should not be dismissed. (D. 1-6)

## POINT II
### Res judicata, Collateral Estoppel and Statute of Limitations do not preclude Claims (D. 6-9)

The three elements of res judicata Defendant states are met are ***not.***  Section § 7431(a)(2) and

(d) claims were not previously litigated in a state court ("such taxpayer may bring a civil action for damages…in a district court of the United States.") *Further, the § 7431(a)(2) and (d) claim was not stated in Brodsky's prior Complaint or in the Magistrate's Report.* (D. Dec. Ex. B) Magistrate Freeman foreclosed the right to query a witness, Rule 26(a), and denied a Rule 15(a) amendment. See *Bleavins v. United States*, 1991 U.S. Dist. LEXIS 20975, at **3-4 (C.D. Ill. 1991)Bleavins' complaint did not allege to whom the return information was disclosed or the items of information disclosed. Thus, the action was dismissed without prejudice, ***providing plaintiff 20 days to amend his complaint***. The Second Circuit opined that Brodsky's claim  lacks specificity, "Although §§ 6103 and 7431, in tandem, provides a private cause of action for certain unlawful disclosures of tax returns or return information…Brodsky has not alleged that any individual in fact unlawfully disclosed her tax returns or return information," 673 F. App'x 42 (2d Cir. 2016) not mentioning res judicata or the statute of limitations. (Dec. I) (D. 8) Recent claims further evince  that J. Rakower, Suh and Weisman disseminated returns with intent to defraud, at 1-33:

> A complaint filed pursuant to section 7431 must allege with specificity the returns or return information inspected or disclosed, the dates of inspection or disclosure, to whom information was disclosed, and any other facts sufficient to inform the defendant of the particulars of the alleged violation. Absent such information, motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) have been successful. Generally, however, courts dismiss without prejudice and provide plaintiffs an opportunity to amend the complaint.(https://www.irs.gov/pub/irs-pdf/p4639.pdf)

*See May v. United States*, 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. 1992)(plaintiff must specifically allege who made the alleged disclosures, to whom they were made, the nature of the disclosures, the circumstances surrounding them, and the dates on which they were made).

**None of the Rule 8( c) elements of identical, previously litigated claims are  met.** (D. 7-8)Claims that may appear in the final judgment but which were not the subject of contest in the action will not support res judicata or collateral estoppel. Judge George B. Daniels dismissed the case in its entirety, ***not*** with "prejudice," recently declining it as "not related" or not identical,

Rule 40.2. (ECF Dkt.) The  former case was not a final judgment on the merits reached after trial, summary judgment or judgment as a matter of law, thus the current case should not be dismissed on the doctrine of res judicata.[9]  Although Magistrate Freeman correctly states in her Report that a **private right** exists under § 6103: "The only section of the Internal Revenue Code cited by Plaintiffs for which Congress *has* provided a private right of action" (15-CV-3469, 2015 U.S. Dist. LEXIS 169104, at *26 (S.D.N.Y. 2015)), she wrongly bars the statute, *citing  Maggio v. Hynes*, 423 F. Supp. 144-46 (E.D.N.Y. 1976) (A state prosecutor for nursing homes could subpoena returns from an accountant).  Since Maggio was prosecuted under § 7213, allowing criminal penalties, not civil damages,  prior to the 1977 enactment of § 6103 amendments adding more restrictive disclosure rules, *see Gates v. Wilkinson*, No. 03-CV-763  (N.D.N.Y. 2005), *infra*, her determination is not apt. (D.4)  See also, *St. Regis Paper Co. v. U.S.*, 368, U.S. 208 (1961)(Disclosure of census data to FTC allowed but law amended); *United States v. O'Mara*, 122 F.Supp. 399 (D.C.D.C.1954)(Return disclosure allowed only for US Senate Committee on Interstate and Foreign Commerce)[¶11, fn 3], c*ontra, O'Connell v. Olsen & Ugelstadt*, 10 F.R.D. 142, 143 (E.D.N.D. Ohio 1949)(Rule 34 did not permit disclosure of tax returns in a personal injury case). The board is ***not*** the IRS (*see In re Rae*, 436 B.R. 266, 271 (Bankr. D. Conn. 2010)) (D. 7), a federal judge, prosecutor or  Senate Committee with authority in criminal cases to subpoena tax returns, I.R.C. § 6103(i)(1)[¶ 182]. If neither Brodsky nor the Magistrate cited § 7431(a)(2) and (d),  Defendant's first element of res judicata "amendment would be futile" (D. 8) is a nullity, *contra,* "Plaintiff  is on notice that declining to amend her pleadings… to Defendant's August 17 motion to dismiss may well constitute a waiver…to cure any defects," Order, Judge Alison Nathan (ECF, Dkt. 14), August 18, 2017. The second element is not met because Brodsky recently filed a city claim  omitted by Defendant which expands nonparties, not in privity. The third element lacks credibility since the

---

[9] http://exercisescivpro.lawbooks.cali.org/chapter/exercise-eleven-preclusion/

transactions resulting in § 7431(a)(2) claims emanating from execution of Brodsky's stock due to fraud are inapposite. (D. 3) Such facts were not, nor could have been, previously litigated. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 400 F.3d 139, 141(2d Cir. 2005) (Claims subsequent to a prior action are ***not*** res judicata); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 327 (S.D.N.Y. 2015) (Claims which required facts beyond prior complaint are ***not*** res judicata).(D.8)

Prior appeal of an unrelated claim does not preclude. *See Proctor v. LeClaire*, 846 F.3d 597 (2d Cir. 2017)(Despite LeClaire's protracted confinement claim was previously dismissed on res judicata and collateral estoppel grounds, *Proctor II*, 2011 WL 2976911, at \*3-4, summary judgment now violates F.R.C.P. 56(f) and vacated on substantive due process.). *See also, Aloe Vera*; *Adlman*; *Schaeffler; Lopez Torres, infra* (Petitioners, 0-9). Plaintiff's securities and common law fraud claims relating to a real estate scheme, *Charney v. Zimalist* 07-CV-6272 (S.D.N.Y. 2016), defeat collateral estoppel because plaintiffs have a "right to collect the full judgment from [a tortfeasor]," see *Siler v. 146 Montague Assocs.*, 228 A.D.2d 33, 38 (2d Dep't 1997); *accord Ravo v. Rogatnick*, 70 N.Y.2d 305, 313 (1987) (under joint and several liability, citing N.Y. CPLR § 1402). Neither res judicata or collateral estoppel applied where plaintiff plead violations of the FMLA Act, *Daugherty v. Jefferson County*, 13-CV-491(N.D.N.Y 2015) and the arbitrator disclaimed consideration of the Act. Similarly, Brodsky's 26 U.S.C. § 7431(a)(2) and (d) claims were not litigated.

## POINT III
## Plaintiff's Claims are not barred by the relevant Statute of Limitations, § 7431(d) [10] (D. 6-9)

Section 7431(a)(2), titled "Civil damages for unauthorized inspection or disclosure of returns

---

[10] § 7431(c) "**Damages** In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of … (1) the greater of (B) the sum of (i) the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus (ii) in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus (2) the costs of the action, plus (3) in the case of a plaintiff which is described in section 430(c)(4)(A)(ii), reasonable attorneys fees…"
**Statute of limitations** § 7431(d): "Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure."

and return information," provides a civil remedy for any employee not of the United States. [¶ 75] A court may consider the ruling of a higher court, here the Ninth Circuit, that is not binding. *Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153 (9th Cir. 2012), sets a precedent for applying the statute for wrongful disclosure of returns. Until the taxpayer knows about the disclosure of a false statement, § 7431(d) does not begin to run because the taxpayer has not discovered the existence of the disclosure of false fact. [¶ 76-77]  The statute of limitations did not begin to run when the  plaintiffs became aware of an examination, but only later when they knew of the specific unlawful disclosures at issue, which the court affirmed. *Aloe*, 699 F.3d 1153 (9th Cir. 2012).

Defendant misrepresents that Brodsky "was required to bring this action in 2012." (D. 7) Here, the statute of limitations did not exhaust in 2012 because a subsequent action in 2013, relieving Feinsot of any campaign obligations proved  that J. Rakower lied, yet J. Rakower precluded Brodsky from disproving the false facts from June 2010 to date. [¶ 173-186] (D. 7)Aloe did not know the IRS and NTA (National Tax Administration of Japan) were conducting examinations and could not disprove the allegations of  understating commissions and royalties  it paid to its Japanese partners in 1991-92. Apprised by the IRS of  pending adjustments disseminated by the NTA, plaintiffs filed Freedom of Information Act requests in 1997,  1999 and a complaint under 26 USC § 7431(a). The question was when the "date of discovery" occurs. Accordingly, this rule comports  with the "general federal rules" that a limitations period begins  when "the plaintiff knows or has reason to know of the injury which is the basis of the action," *citing Merck & Co. v. Reynolds,* ___US___, 130 S. Ct. 1784, 1796 (2010), against the background of the so-called "discovery rule" in fraud cases, *Id.* at 1795.

Brodsky could not discover the fraud until appeal of one of two identical execution orders for the exact same obligation, $13,237.93. Thus, (1) the August 31, 2009 order renders the identical execution orders of July 9, 2010 falsifications; (2) after contacting the NYC Sheriff for an

16

ExxonMobil stock check in February 2017, Brodsky was informed that the case is not satisfied due to a pending Writ of Execution for $12,546.04 containing return information for four stocks at Mellon Investors Services, LLP. Both the Exxon check and writ of execution reveal that Suh and Weisman compelled the transfer of information to them, representing illegal dissemination of return information and damages to date. [¶ Ex.2; Dec. A11-41] Brodsky had not seen the documents until now. Tomassetti, Weisman and Suh predicated the debt on a bogus total of $188,000, concealed in court papers, which yields a bogus debt of $68,000. With no interim spending, the total of $119-120,000 represents fact: $63,232 private funds, $55,776 matching funds of which $26,010 was returned and $29,766 spent. [¶ 29-47] Suh and Weisman intentionally failed to file satisfactions of judgment to Mellon Investors Services, LLP, Exxon, c/o Computershare, or any garnishee after locating and executing stock, intending to do it again. Adverse claims pursuant to § 7431(c)(1)(B)(i)(ii),(2),(3) exist for Exxon because the debt remains a falsification and return information, still in their possession, is currently disseminated. Focusing on *Aloe*, Count I, Taxpayers claimed that certain information provided to the NTA – that Taxpayers had significant unreported income—was false and subject to damages under § 7431. The Court noted a taxpayer who knows the IRS has disclosed his tax return generally has no reason to suspect that the IRS also fabricated and disclosed a false statement. Initially, Brodsky and Feinsot relied on the same data as the board —but the board concealed total funds on court documents, which they were required to disclose, then derived the debt from a bogus total. Brodsky had no reason to suspect a judge would fabricate and disclose such falsifications nor disseminate return information to execute a bogus debt but J. Rakower did. Accordingly, the statutes pursuant to CPLR § 213(8) and 26 U.S.C. § 7431(d) do not run on Brodsky's claims, "Until …the disclosure of that specific, false statement." [¶ 76]

One of § 6103's main purposes, actionable under § 7431, is protection against malevolent government disclosure. *Rueckert*, 775 F.2d at 210. The question is "whether a *knowing* provision of

17

false information can be 'pertinent' to 'preventing fraud or fiscal evasion.'" Clearly, "information known to be false cannot be subject to protection as 'pertinent' information under the Tax Treaty." Further, "There is support in the record for Taxpayers' assertion that Taxpayers had correctly reported the supposedly unreported $32 million in commissions and royalties. Thus, there is a genuine issue of material fact as to whether the government knowingly disclosed false information and summary judgment was not appropriate on this issue." *Aloe*, *Id.* Similarly, Rakower, Suh and Weisman falsified total funds, "deliberately miscalculat[ing]" (D. 3) in order to fabricate a debt but fail to prove that Brodsky or Feinsot owed anything after the return of $26,010. **Plaintiff does not "feign ignorance of return information being used in 2010 to identify and subpoena companies she held stock in…"(D. 6-7), contrariwise, she relies on such information to substantiate her claims pursuant to the statute of limitations § 7431(d).** [¶ 78-83, 114-144; Dec. A-I] Predicating campaign debt on false facts, as board does in this case and others, is contrary to the public interest and should not waive the test of constitutionality.

## POINT IV
### (a) The Attorney Work-Product Privilege should have precluded the Civil Court Judge and Board Employees from disseminating Palintiff's Return Information

Pursuant to 26 USC § 6103(e), Brodsky would not authorize in writing disclosure of her tax returns or return information (defined, § 6103(b)(2)) to board employees or Glickman. *Section 6103 generally prohibits the disclosure of tax information to the Justice Department or other federal, state or local enforcement agencies in nontax civil cases.* (IRS Disclosure & Privacy Law Reference Guide, Rev. 10-2012, at 1-11). [¶ 66-67, 181-183] See *Campinas Foundation v. Simoni* (S.D.N.Y. 2005). Seeking to recover $1.6 wrongfully diverted funds, the Campinas Foundation sought Simoni's tax returns, which the court barred, because "requests for disclosure of tax returns during the pretrial phase of litigation must satisfy a more stringent standard than the relevance standard that Fed. R. Civ. P. 26(b)(1) imposes upon litigant engaged in discovery exercises,"

18

including multi-pronged tests in non-tax federal criminal cases; *Russell v. Board of Plumbing Examiners*, 74 F. Supp. 2d 339 (S.D.N.Y. 1999), since the Board of Plumbing Examiners was unable to get copies of tax returns directly from the Treasury, it should not be permitted to do so indirectly by coercion. Plaintiffs were entitled to summary judgment on privacy claims, injunctive relief and the Amicus Curiae to  reasonable counsel fees. Requests for orders compelling the production of tax returns involving the sale of mattresses by plaintiffs and Wilkinson defendants were both denied under the RICO Act. *Gates v. Wilkinson*, No. 03-CV-763  (N.D.N.Y. 2005): "Since 1977, tax returns are described by statute as 'confidential.' 26 U.S.C. § 6103(a); *see also Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 71 (D. Conn. 2001)." Thus, confidentiality serves both to protect the privacy interests of taxpayers, *Gattegno*, 70 F.R.D. at 71, and "`the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns.' *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497 (N.D. Cal. 2003)"

Suh and Weisman lied when the "26,010" "unspent" was recoverable from TD bank to invade Brodsky's assets for more.(¶128; Dec. E162)The NYS Consumer Protection Board sought Trudeau's tax returns to assess accrued claims, *Trudeau v. NYS Consumer Protection Board*, 237 FRD 325 (N.D.N.Y. 2006), *cited in  Green v. Sunset Fin. Servs., Inc.,* 8:09CV13 (D. Neb. 2012), if information "is available from another source… compelled discovery of the return should be denied." Second Circuit courts find personal financial information to be presumptively confidential or cloaked with a qualified immunity. *Dew v. 39th Street Realty,* 2001 WL 388053, at *2 (S.D.N.Y. 2001)("[T]here is a qualified immunity with respect to the disclosure of tax returns[.]")

Under the Attorney Work-Product privilege, on January 6, 2010, Glickman redacted responses on an information subpoena, attached redacted 2007 and 2008 returns, which under IRS purview are protected and threw out the remainder. (Dec. C59-107) Brodsky assumed the Attorney Work-Product privilege extended to both litigation and deposition which would prevent Glickman's

"efforts from redounding to the benefit of the opposing party," *Hickman v. Taylor,* 329 U.S.495, 511 (1947).  [¶ 69] See *US v. Adlman*, 134 F. 3d 1194  (2d Cir. 1998). Adlman's company, Sequa, expected an IRS challenge but the court denied production of Adlman's work product. The work product doctrine, recognized in *Hickman,* 329 U.S. 495 (1947), codified in F.R.C.P. § 26(b)(3), provides protection "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Adlman*, 134 F.3d at 1196 (quoting *Hickman*, 329 U.S. at 510-11).  *See Schaeffler v. US*, 806 F. 3d 34 (2d Circuit 2015)(same)(*vacated and remanded*).

Attempting to stop the exploitation, Glickman filed a motion on February 8, 2010 to deposit the un-redacted subpoena and returns in Rakower's chambers. Alternatively, "to deposit it with the clerk would make it public record and defeat the purpose of the stay provision." (Dec. B46) Arguendo, even a lower court judge ought to know better than to violate the IRC nondisclosure law. Glickman accuses Suh and Weisman of "yet another material omission – if not fraud – on the court and Petitioner regarding the amount owed to Respondent," exposing J. Rakower's denial a fraud:

> . We believe that this is yet another material omission-- if not fraud -- on the court and Petitioner regarding the amount owed to Respondent and we therefore respectfully suggest that the court should reconsider its denial of the Motion to Vacate the Judgment [¶ 70-74; Dec.B46-47]

**(b) Right to Protective Order, FOIL Exemption, No Judicial Exception or Unlawful Levy**

On March 19, 2010, Glickman wrote to Brodsky, "You must appear for the deposition on April 1. I will also have to provide the information subpoena questionnaire on March 23." On 3/22/10, Suh faxed, "I am writing to inform **you that the deposition on April 1, 2010 in the above- referenced  matter may be videotaped."**[¶ 96-97; Dec. B55]Since Suh will illegally disseminate Brodsky's return information via videotape, Glickman requests Suh sign a protective order:

Obviously any disclosure of that information beyond the parties to this litigation would pose a security issue to Ms. Brodsky. **We therefore ask that you sign a protective order that would enjoin the parties and their attorneys from disseminating the information elicited in the deposition.** [¶ 95, 97-99; Dec.B56]

Similarly, where NASD and NYSE sought a protective order preventing Standard Investment Chartered from disclosing documents acquired during expedited discover, NASD sought protection of documents under IRS purview, S*tandard Investment Chartered v. NASD*, 07 Cv. 2014 (S.D.N.Y. 2008), "[T]he potential harm to NASD from the disclosure of its 'return information' … 26 U.S.C. §§ 6103 and 6110, outweighs the public interest in disclosure in this case." [¶ 95-101]

Contrary to Suh, a protective order precludes return information to anyone other than client's counsel. [¶ 105-108] Examinations before trial are not required to be open to the public since a deposition is a private matter between the parties, not allowing dissemination of returns. *Scollo v. Good Samaritan Hosp.*, 175 AD2d 278 (2d Dept 1991) *citing Westchester Rockland Newspapers v Marbach,* 66A.D. 335(1979); *see also, Bal v Hughes*, 1995 WL 244757, 1995 US Dist LEXIS 5466 (S.D.N.Y. 1995). The US Supreme Court stated, "pretrial depositions are not public components of a civil trial…" *Seattle Times Co. v Rhinehart* (467 US 20, 33 [1984]); *also, Seaman v. Wyckoff Heights Med. Ctr., Inc.,* 8 Misc 3d 628  (2005) (barring videotape at deposition). Deviating from law, Suh did not obtain an ex parte order from a district judge who would not allow videotape, pursuant to I.R.C. § 6103(i)(1)[¶ 181-183], *see Maggio v. Hynes, Id.*. 144-46. (D.4)

**Contrary to Defendant, J. Rakower illegally disclosed Brodsky's 2007 and 2008 tax returns, Exhibits P, Q of the April 1, 2010 videotaped deposition, and return information, Exs. A-X (D. 4) [¶ 102-104; Dec. C59-107, Dec. D108-129], for Suh to ascertain "income and assets" from "third parties." (D. 6-7, 9)**

On March 24, 2010 Suh states a protective order "would obstruct such efforts." (Dec. B57-58) Conversely, Suh obstructs Brodsky's U.S. Const. amend. 1 and 5 rights pursuant to the Internal Revenue Code guaranteeing taxpayers protection against unwarranted, illegal disclosure of returns. Suh wrongly  denies Glickman's protective order: [¶ 105-107] (D. 7)

> As a government agency, the CFB is also subject to the New York State Freedom of
> Information law (FOIL). Thus, we cannot enter into the protective order requested in
> your letter because it is contrary to the CFB's disclosure requirements. (Dec. B55)

Contrary to Suh, NYS FOIL does **not** provide for disclosure of a taxpayer's private returns

much less the dissemination of "videotaped portions." [§ 107-109]. "Tax Records, Corporate or

Personal," NYS Committee on Open Govt –FOIL, reveal no *exceptions under the NYS Freedom of*

*Information Law for the disclosure of tax returns and return information.* See *Matter of Moody's*

*Corporation and Finance v. NYS Dept. Of Tax and Finance*, 141 A.D.3d 997 (3d Dep't, 2016)

(FOIL request denied pursuant to § 87(2)(a)), "Contrary to petitioner's argument, the protections

afforded by Tax Law § 211 (8)(a) are not limited to the return only" and "the confidentially required

by the statute necessarily extends to any document that reflects information included in a return,"

also, when "a document is exempt … it may not be subjected to redaction." *See also Tartan Oil*

*Corporation v. Department of Taxation and Finance,* 239 AD2d 36, 668 NYS2d 76 (3rd Dep't

1998) involving requests for audits, as well as a company's cash receipt journals, invoices and the

like. The court held that the records were exempt under § 1146(a) of the Tax Law. Restricting the

confidentiality exemption to "reports and returns" would defeat its purpose of "encouraging

taxpayers to make full and truthful declarations without fear that these statements will be revealed

or used against them for other purposes." Despite federal and state penalties attach to illegal

dissemination, J. Rakower shut out Feinsot's and Brodsky's motions for nondisclosure and adverse

claims, "The Board concedes…[it] will no longer need the subpoenaed records from Feinsot," July

2010 order [¶ 109-110; Dec.G238-239] Title 26 USC § 7431 invokes sections of § 6103 and § 6104.

"Returns and return information" defined by § 6104(c )(D)(6) have the same meaning as § 6103(a)

and (b), which dissemination is precluded. Thus, J. Rakower's handing Brodsky's tax returns, etc. to

Suh and Weisman to disseminate to entities was improper or illegal, *YSL v. Shal*, 3d 554, 559, 809

N.Y.S.2d 387 (2005) ("[D]emand for tax returns was palpably improper.") (D. 3, 8-9)

22

**I.R.C.§ 6103(h)(4) stating:  (1) "Disclosure in judicial and administrative tax proceedings.** *A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration"* **expressly applies to a tax court or  agency, not to J. Rakower's city court, and  (2) precludes unauthorized disclosure in nontax matters. (D. 9)**

Title 26 U.S.C. § 7431 and § 6103(h)(4)(same as § 6104(c )(4)) do not allow disclosure *except provided by statute*. Defendant's statement is wrong in its entirety, "even if the Board obtained and disclosed Plaintiff's return information to ascertain information needed .. such disclosure is expressly authorized by 26 U.S.C.S. § 6103(h)(4)." (D. 9) *Section 6103   generally prohibits the disclosure of tax information to the Justice Department or other federal, state or local enforcement agencies  in nontax civil cases.* (IRS Disclosure & Privacy Law Reference Guide, Rev. 10-2012, at 1-11). [¶ 66-67, 181-183]   J. Rakower, not a tax court, violated  I.R.C.§ 6103(h)(4) prohibiting disclosure of a taxpayer's returns except for tax administration, "in respect of any tax imposed under this title," § 6103(h)(4)(A), No "transactional relationship" exists, for example,  the imposition of an additional tax by the IRS due to an entity's failure to file. [¶ 110-111] (D. 9) Reprehensibly, the board failed to file the requisite returns for the illegal collection of  Brodsky's ExxonMobil stock or  the $26,010  previously repaid to the board. [¶ 159-163, 219].   *See  Olsen v. Egger*, 594 F. Supp. 644 (S.D.N.Y. 1984). Dismissing plaintiff's case, a cross-motion for summary judgment was granted defendant *Olsen*  despite the NYS Supreme Court held him in contempt and entered a warrant for his arrest for failure to turn over his income tax returns to his ex-wife. Accordingly,  Treasury Regulation § 301.6103(c )-1 requires written consent to disclosure, signed by the taxpayer. Section 7213 states that disclosure is prohibited "except as authorized in this title" and does *not permit the court to create judicial exceptions to the general prohibition against disclosure*, *Dowd v. Calabrese,* 101 F.R.D. 427 at 438-39 (D.D.C. 1984), see Sen. Rep. No.938, 94th Cong., 2d Sess. 318, *reprinted in* 1976 U.S. Code Cong. & Ad. News 2897, at 3747 ("[T]he committee felt that returns and return information should generally be treated as confidential…").

23

This prohibition may not be circumvented even when the returns relate to a matter in litigation. *See Garity v. United States*, 81- 2 U.S. Tax Cas.(CCH) ¶ 9599, at 88,006-08(E.D. Mich. 1980).

Collusively, J. Rakower, Suh and Weisman have, to date, illegally disseminated Brodsky's tax return information to levy and execute a bogus debt. [¶109-112, 227-238] The validity of a levy is relevant to and/or determinative of unauthorized disclosures under I.R.C. § 7431. Disclosure of returns in "pursuance of an unlawful levy violates the confidentiality requirement of [I.R.C.] § 6103(a) and is not authorized under § 6103(k)(6)."[¶ 156] *Rorex v. Traynor,* 771 F.2d 383, 386 (8th Cir. 1985). *See also*, *Schipper v. United States*, No. CV-94-4049, 1998 WL 786451, at *9-12 (E.D.N.Y. 1998) (United States held liable for unauthorized disclosures resulting from repeated erroneous levies on plaintiff's wages and bank accounts); *Minda v. US*, 15-3964-cv (2d Cir., 2017). "[T]he statute clearly provides an aggrieved taxpayer $1,000 statutory damages for 'each act' of unauthorized disclosure …*accord*, *Rorex v. Traynor,* at 388." [¶ 157-160]

## **POINT V** - Retaliation [¶ 220-226]

The prevailing comparator spent $360,000+ exceeding the $300,000 spending limit for two consecutive elections, four others had obligations but none, except Brodsky, were enforced. Suh, Weisman and Tomassetti defrauded Brodsky by fabricating a total of $188,000 that was 25% above the spending limit since the prevailing comparator exceeded the limit by 21%. However, Brodsky spent less than any candidate, $29,766, of a total $55,776 public funds. Repaying $26,010 "unspent" attests to Brodsky's honesty. [¶ 88-91] Board employees retaliated against Brodsky for membership in a committee, an adversary in NYS Board of Elections v. Lopez Torres, 552 U.S.196 (0-9)[¶ 12-26] Suh contacted the NY Post. On February 19, Glickman wrote: "NY Post just called. Maggie Haberman sounds like she's doing a little story on your litigation with the CFB. I just gave her some facts of the case." "Pol fights for 'tainted' cash" is riddled with Suh's libel: [¶ 84-86]

> A failed Democratic City Council candidate has been waging a four-year court battle with campaign-finance officials in a bid to hang on to thousands of taxpayer dollars she allegedly handed out improperly to a top staffer after her election.

However, (a) Not a speck of evidence exists that Brodsky held "thousands of taxpayer dollars"; (b) Feinsot, the "top staffer" to whom Suh alleges Brodsky "handed" out money then went to court "to argue the expenses were legitimate" was exempt from all liabilities in two state courts, (c) Suh exposes lying about Feinsot's and Brodsky's liability and thus altered the order; [¶62-65] (d) the debt is a falsification. [¶ 87] Brodsky answered: [¶ 86, fn. 8; Dec. B51-53, D125-127]

> As a Manhattan district leader, I feel justified in highlighting the transgressions of the CFB through the legal process: ... It was the self-same board members who represented the losers, 0-9, in *Lopez Torres,* a U. S. Supreme Court case decided in 2008.

See *Fedele  v. Harris*, 69 F. Supp.3d 313 (E.D.N.Y 2014). Dep't of Taxation and Finance (DTF) employees were wrongly coerced to divulge their personal tax returns on charges of padding expenses done in retaliation for reporting to the New York Post that cigarette sting operations had been cut due to political pressure. Despite Section 1983 claims were dismissed:

> [P]laintiffs have adequately alleged that their confidential tax return information was disclosed to the human resources and labor relations divisions within DTF, not as a means to collect unpaid taxes, but instead as part of a pretextual scheme, "for employee administrative purposes," to justify initiating meritless audits and suspending plaintiffs out of retaliation. ... *See Oteze Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir.2005). [P] laintiffs have adequately pleaded that their confidential tax returns and/or return information were disclosed, and defendants' motion is denied insofar as it seeks dismissal...

## CONCLUSION

The motion should be denied or if this pleading is, in part, deficient, leave to re-plead granted.

Meryl Brodsky, Plaintiff pro se
150 East 61st Street, #11-K
New York, New York 10065
212-866-2105; meryl7@verizon.net

Dated:  August 29, 2017
        New York, N.Y.

# **Attachment 1**

## SECOND CLAIM FOR RELIEF
### Violations of 28 U.S.C. § 1367(a)   Supplemental State Law,  CPLR § 5239 and § 213(8)

246.   Plaintiff repeats and re-alleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

247. Board employees Suh and Weisman incurred violations under supplementary State law, 28 U.S.C. § 1367(a) pursuant to CPLR § 5239 for adverse claims due to fraud and CPLR § 213(8), the fraud statute of limitations.

248.   Since Brodsky's state and federal claims derive from a common nucleus of operative facts, comprising a single constitutional case, the court may exercise jurisdiction over the action, including the state-law claims under Article III of the Constitution.

249. Under color of supplemental State law, pursuant to CPLR § 5222 and § 5225 and § 5239, having falsified a debt, Suh, Weisman and Judge Rakower illegally disseminate Brodsky's tax returns and return information violating both sections of the Internal Revenue Code as well as NYS tax law.   Via defective subpoenas, levies and executions, they further foreclose laws regulating money judgments which allow a hearing for adverse claims.

250.   Brodsky is severely prejudiced by preclusion of her federal and state rights which  also results in adverse claims for legal fees and costs of more than $30,000.

251.   Brodsky is entitled to adverse claims the measure of which is the difference between the fair market value of 223 shares of Exxon-Mobil stock of $13,237.93 on July 22,  2010, at 59.55 basis points, and the current price of the stock  As of the close of trading on April 28, 2017, ExxonMobil stock traded at 80-85 basis points pursuant to the Wall Street Journal standard index. This represents adverse claims of about $18-19,000.

252.   Based on all of the  foregoing, Brodsky seeks adverse claims against the NYC Campaign Finance Board for violation of rights secured by the U.S. Constitution.