Redacted Not Requested

MERYL BRODSKY
150 E 61ST ST APT 11F
NEW YORK NY  10021-8617

\*\*\* TIME DEPOSIT \*\*\* 3-5 MO. RENEWABLE CD
ACCOUNT NUMBER  0109172356
PREVIOUS STATEMENT BALANCE ........................
    PLUS     3  DEPOSITS AND OTHER CREDITS ...................
    LESS     1  WITHDRAWALS AND OTHER DEBITS ................
CURRENT STATEMENT BALANCE AS OF 07/27/07 .........................

-----------------------------------------------------------------------

\*\*\* TIME DEPOSIT ACCOUNT TRANSACTIONS \*\*\*
    DATE            DESCRIPTION                     TRANSACTION AMOUNT

   04/21   RATE CHANGE TO  3.92000                          .00
   04/21   DEPOSIT RENEWAL    26,876.05 AT  4.93200          .00
   04/21   08/21/06 DEPOSIT MATURITY    26,876.05           .00
   04/21   INTEREST PAYMENT                           900.61
   07/21   04/21/07 DEPOSIT MATURITY    27,139.99           .00
   07/21   INTEREST PAYMENT                           263.94
   07/25   WITHDRAWAL                            27,139.99-

                PAYER FEDERAL ID NUMBER        22-2488057
                INTEREST PAID YEAR TO DATE      1,164.55

100

W

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------- X
In the Matter of the Application of                           :
                                                               :
MERYL BRODSKY, MARK FEINSOT, and ELECT                        :
MERYL BRODSKY TO CITY COUNCIL 2005,                           :
                                                               :           Index No. 118316/06
                        Petitioners,                          :
                                                               :        **RESTRAINING NOTICE**
                                                               :
v.                                                            :
                                                               :
NEW YORK CITY CAMPAIGN FINANCE BOARD,                         :
                                                               :
                        Respondent/Judgment Creditor.         :
                                                               :
--------------------------------------------------------------- X

RE:   Meryl Brodsky

THE PEOPLE OF THE STATE OF NEW YORK

To:  Meryl Brodsky          Address:      150 East 61st Street, #11K
                                          New York, New York 10021

GREETINGS:

WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent New York City Campaign Finance Board (the "Board"), a

judgment was entered in the Supreme Court of the State of New York, New York County,

on August 31, 2009 in favor of the Board, judgment creditor, and against Petitioners,

including Meryl Brodsky ("Brodsky"), judgment debtor, in the aggregate amount of

$35,850, of which $11,875 remains due and unpaid.

1

NOW TAKE NOTICE, that pursuant to CPLR § 5222(b), a copy of which is set forth below, you are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with, any property of the judgment debtor or pay over or otherwise dispose of any debt to the judgment debtor to any person other than the sheriff, except under direction of the sheriff or pursuant to order of the court, until the expiration of one year after this notice is served upon you, or until the judgment is satisfied or vacated, whichever event occurs first:

## SECTION 5222(b) OF THE CIVIL PRACTICE LAW AND RULES

**(b) Effect of restraint; prohibition of transfer; duration.** A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in

2

an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

**(h) Effect of restraint on judgment debtor's banking institution account into which statutorily exempt payments are made electronically or by direct deposit.** Notwithstanding the provisions of subdivision (b) of this section, if direct deposit or electronic payments reasonably identifiable as statutorily exempt payments as defined in paragraph two of subdivision (l) of section fifty-two hundred five of this article were made to the judgment debtor's account during the forty-five day period preceding the date that the restraining notice was served on the banking institution, then the banking institution shall not restrain two thousand five hundred dollars in the judgment debtor's account. If the account contains an amount equal to or less than two thousand five hundred dollars, the account shall not be restrained and the restraining notice shall be deemed void. Nothing in this subdivision shall be construed to limit a banking institution's right or obligation to restrain or remove such funds from the judgment debtor's account if required by 42 U.S.C. § 659 or 38 U.S.C. § 5301 or by a court order. Nothing in this subdivision shall alter the exempt status of funds that are protected from execution, levy, attachment, garnishment or other legal process, under section fifty-two hundred five of this article or under any other provision of state or federal law, or affect the right of a judgment debtor to claim such exemption.

**(i) Effect of restraint on judgment debtor's banking institution account.** A restraining notice issued pursuant to this section shall not apply to an amount equal to or less than the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable (as published on the websites of the United States department of labor and the state department of labor) except such part thereof as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents. This amount shall be equal to seventeen hundred sixteen dollars on the effective date of this subdivision, and shall rise to seventeen hundred forty dollars on July twenty-fourth, two thousand nine, and shall rise thereafter in tandem with the minimum wage. Nothing in this subdivision shall be construed to limit a banking institution's right or obligation to restrain or remove such funds from the judgment debtor's account if required by 42 U.S.C. § 659 or 38 U.S.C. § 5301 or by a court order. Where a judgment debtor's account contains an amount equal to or less than ninety percent of the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable (as published on the websites of the United States department of labor and the state department of labor), the account shall not be restrained and the restraining notice shall be deemed void, except as to those funds that a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents. Nothing in this subdivision shall alter the exempt status of funds which are

3

exempt from execution, levy, attachment or garnishment, under section fifty-two hundred five of this article or under any other provision of state or federal law, or the right of a judgment debtor to claim such exemption.

TAKE FURTHER NOTICE, that disobedience of this Restraining Notice is

punishable as a contempt of court.

WITNESS, Honorable Eileen A. Rakower, one of the justices of the New York

State Supreme Court, at the courthouse in the County of New York on August 31, 2009.

Dated: New York, New York
       August 31, 2009

_____
Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006
(212) 306-7100

*Attorneys for the Respondent/Judgment
Creditor New York City Campaign Finance
Board*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------ X
In the Matter of the Application of                           :

MERYL BRODSKY, MARK FEINSOT, and ELECT            :
MERYL BRODSKY TO CITY COUNCIL 2005,               :      Index No. 118316/06
                                                              :
                    Petitioners,                              :      **NOTICE**
                                                              :
                                                              :
v.                                                            :
                                                              :
NEW YORK CITY CAMPAIGN FINANCE BOARD,             :
                                                              :
                    Respondent/Judgment Creditor.            :
                                                              :
------------------------------------------------------------ X

## NOTICE TO JUDGMENT DEBTOR OR OBLIGOR

Money or property belonging to you may have been taken or held in order to satisfy

a judgment or order which has been entered against you.  Read this carefully.

## YOU MAY BE ABLE TO GET YOUR MONEY BACK

State and federal laws prevent certain money or property from being taken to

satisfy judgments or orders.  Such money or property is said to be "exempt."  The

following is a partial list of money which may be exempt:

1.  Supplemental security income, (SSI);

2.  Social security;

3.  Public assistance (welfare);

4.  Alimony or child support;

5.  Unemployment benefits;

6.  Disability benefits;

7.  Workers' compensation benefits;

1

8. Public or private pensions;

9. Veterans benefits;

10. Ninety percent of your wages or salary earned in the last sixty days;

11. Twenty-five hundred dollars of any bank account containing statutorily exempt payments that were deposited electronically or by direct deposit within the last forty-five days, including, but not limited to, your social security, supplemental security income, veterans benefits, public assistance, workers' compensation, unemployment insurance, public or private pensions, railroad retirement benefits, black lung benefits, or child support payments;

12. Railroad retirement; and

13. Black lung benefits.

If you think that any of your money that has been taken or held is exempt, you must act promptly because the money may be applied to the judgment or order. If you claim that any of your money that has been taken or held is exempt, you may contact the person sending this notice.

Also, YOU MAY CONSULT AN ATTORNEY, INCLUDING ANY FREE LEGAL SERVICES ORGANIZATION IF YOU QUALIFY. You can also go to court without an attorney to get your money back. Bring this notice with you when you go. You are allowed to try to prove to a judge that your money is exempt from collection under New York civil practice law and rules, sections fifty-two hundred twenty-two-a, fifty-two hundred thirty-nine and fifty-two hundred forty. If you do not have a lawyer, the clerk of the court may give you forms to help you prove your account contains exempt money that the creditor cannot collect. The law (New York civil practice law and rules, article four

2

106

and sections fifty-two hundred thirty-nine and fifty-two hundred forty) provides a

procedure for determination of a claim to an exemption.

Dated: New York, New York
        July 24, 2009

_____
Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006
(212) 306-7100

*Attorneys for the Respondent/Judgment
Creditor New York City Campaign Finance
Board*

3

# EXHIBIT D

| SCHEDULE B<br>(Form 1040A or 1040) | Interest and Ordinary Dividends | | OMB No. 1545-0074 |
|---|---|---|---|
| Department of the Treasury<br>Internal Revenue Service   (99) | ► Attach to Form 1040A or 1040.        ► See Instructions. | | **2009**<br>Attachment<br>Sequence No. **08** |

Name(s) shown on return

MERYL BRODSKY

Your social security number

**Part I**
**Interest**
(See instructions for Form 1040A, or Form 1040, line 8a.)

1  List name of payer. If any interest is from a seller-financed mortgage and the buyer used the property as a personal residence, see the instructions and list this interest first. Also, show that buyer's social security number and address . . . . . . . . . . . . . . . . . . . ►

| | Amount |
|---|---|

HSBC

Note. If you received a Form 1099-INT, Form 1099-OID, or substitute statement from a brokerage firm, list the firm's name as the payer and enter the total interest shown on that form.

| | | | Amount |
|---|---|---|---|
| 1 | | 1 | |
| 2 | Add the amounts on line 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Excludable interest on series EE and I U.S. savings bonds issued after 1989.<br>Attach Form 8815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Subtract line 3 from line 2. Enter the result here and on Form 1040A, or Form 1040, line 8a . . . | 4 | |

Note. If line 4 is over $1,500, you must complete Part III.

**Part II**
**Ordinary**
**Dividends**

(See instructions for Form 1040A, or Form 1040, line 9a.)

5  List name of payer . . . ►

| | Amount |
|---|---|
| AMERICAN ELECTRIC POWER CO | |
| BOEING21 | |
| CHARLES SCHWAB AS NOMINEE | |
| E I DUPONT | |
| EXELON | |
| EXXON | |
| GENERAL ELECTRIC | |
| HONEYWELL | |
| MERCK | |
| THE WALT DISNEY CO | |

Note. If you received a Form 1099-DIV or substitute statement from a brokerage firm, list the firm's name as the payer and enter the ordinary dividends shown on that form.

| | | | |
|---|---|---|---|
| | | 5 | |
| 6 | Add the amounts on line 5. Enter the total here and on Form 1040A, or Form 1040, line 9a . . . ► | 6 | |

Note. If line 6 is over $1,500, you must complete Part III.

**Part III**
**Foreign**
**Accounts**
**and**
**Trusts**

(See instructions.)

You must complete this part if you **(a)** had over $1,500 of taxable interest or ordinary dividends; **(b)** had a foreign account; or **(c)** received a distribution from, or were a grantor of, or a transferor to, a foreign trust.

| | | Yes | No |
|---|---|---|---|
| 7a | At any time during 2009, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See instructions for exceptions and filing requirements for Form TD F 90-22.1 . . . . . . . . . . . . . . . . . . . | | X |
| b | If 'Yes,' enter the name of the foreign country ► | | |
| 8 | During 2009, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If 'Yes,' you may have to file Form 3520. See instructions . . . . . . . . . . . . . . . . . . . | | X |

BAA  For Paperwork Reduction Act Notice, see Form 1040A or 1040 instructions.        FDIA0401L  06/24/09        Schedule B (Form 1040) 2009

62

```
1                           M. Brodsky
2                 Is this the -- is this a dividend payment?
3        A.    No.
4        Q.    What type of payment is this?
5        A.    This is a, a -- looks to me like a, a sale of
6   stocks.
7        Q.    Did you sell your shares in Honeywell, to receive
8   this amount of money?
9        A.    Yes.
10             MS. SUH:  Do you want to stop now and go onto --
11             MS. DAVIDSON:  Yes.
12             MS. SUH:  -- the next tape?
13             MS. DAVIDSON:  Yes.  The time is 11:11 and 50.
14   This concludes number one.  Off the record.
15             (Whereupon, a recess was taken at 11:11 a.m. and
16        the Deposition continued at 11:13 a.m..)
17             MS. DAVIDSON:  The time is 11:13 and 53.  This is
18   number two.  On the record.
19        Q.    How many shares did you have to sell to obtain
20   this amount from Honeywell?
21        A.    I don't know.
22        Q.    Was it more than fifty shares?
23        A.    I really don't remember.
24        Q.    Are there any documents that would help you
25   recollect how many shares --
```

FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

63

                              M. Brodsky

1

2        A.    I doubt it --

3        Q.    -- you sold?

4        A.    -- once I sold the stock, I don't need the

5  documents.

6        Q.    How did you effectuate the sale of these shares?

7        A.    I don't remember.

8        Q.    Ms. Brodsky, is there anyone else that could help

9  you recollect how you sold shares to obtain this money

10  from --

11        A.    I don't --

12        Q.    -- Honeywell?

13        A.    -- I don't think so.

14        Q.    Are there any documents that will help you

15  recollect that?

16        A.    I don't think so.

17        Q.    Ms. Brodsky, you did sell these shares last year;

18  correct?

19        A.    Correct.  No, it was this year, wasn't it?  Date

20  posted -- I guess it was last year, yes.

21        Q.    It was in 2009?

22        A.    Well, if it was posted on 1/4/2010, then it was

23  possible that it was 2009.

24        Q.    Okay.

25              I'm going to refer you to the check date.

76

                              M. Brodsky

1

2       A.    Correct.

3       Q.    And to obtain that -- the money from the

4    securities, do you keep track of how -- what you own?

5       A.    I keep track of what my expenses are.

6       Q.    Okay.

7             Do you keep track of what you own to pay --

8       A.    No --

9       Q.    -- for your expenses?

10      A.    -- no.

11      Q.    Okay.

12            So you don't keep track of what stocks you own?

13            MR. GLICKMAN:   Objection.

14      Q.    Is that your testimony?

15      A.    Correct.

16      Q.    Since when have you owned shares in

17   American Electric Power Company?

18      A.    I don't know.  I really don't know.

19      Q.    Has it been more than ten years?

20      A.    Probably.

21      Q.    More than twenty?

22      A.    I don't know.  I really don't know.

23      Q.    Okay.

24            What's the total value of the securities you own

25   in American Electric Power Company?

                 FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

77

M. Brodsky

1

2    A.   I don't know.  I have no idea.

3    Q.   What is the share price?

4    A.   I have no idea.

5    Q.   Okay.

6         When you obtain money from your securities, do

7    you ever check what the share price is before you obtain

8    that money from the securities?

9    A.   Well, you can -- a market order, you can sell it,

10   whatever the day of the, the stock is.

11   Q.   The question was, do you ever check the price of

12   the stock before you try to obtain, you know --

13   A.   I think if you execute the sell order --

14   Q.   -- proceeds from it?

15   A.   -- you ask someone to sell it for you, whatever,

16   they do that.

17   Q.   Okay.

18        But do you ever check --

19   A.   No --

20   Q.   -- on the price?

21   A.   -- (no response.)

22   Q.   Who do you put a sell order to?

23   A.   I think stocks can be sold -- I'm not sure.  I

24   can't answer those questions.

25   Q.   Do you buy and sell these stocks yourself or

79

```
 1                        M. Brodsky
 2            MR. GLICKMAN:  Objection.
 3       A.   At the moment, no.
 4       Q.   Have you ever had a broker?
 5       A.   Yeah.
 6       Q.   And who was that broker?
 7       A.   Well, I think you know that.
 8       Q.   Who is that broker?
 9       A.   Did I ever have a broker?  I guess I didn't.  I
10   don't know if I had a broker or not.
11       Q.   So you're changing your testimony.  It's now you
12   don't know if you had a broker?
13       A.   I had a broker, Schwab.
14       Q.   Is your testimony that as of today you don't have
15   that broker anymore?
16       A.   I don't know if I have that broker or not.
17       Q.   Is the stock that you hold in American Electric
18   Power Company common stock or --
19       A.   I don't know --
20       Q.   -- preferred stock?
21       A.   -- I have no idea.
22       Q.   Are there any restrictions on the sale of your
23   holdings in --
24       A.   I don't know --
25       Q.   -- American?
```

33

                              M. Brodsky

1

2        Q.    Was it over fifty?

3        A.    Don't know.

4        Q.    And what -- do you still hold shares in

5    Eastman Kodak?

6        A.    I don't -- very few -- maybe, maybe, maybe not.

7    I really don't know.

8        Q.    So is your final answer you don't know or you --

9        A.    I don't know --

10        Q.    -- you may have to --

11        A.    -- I don't know, final answer.

12        Q.    And did you hold that stock for more than

13    ten years?

14        A.    Probably.

15        Q.    And what was the value of the stock --

16        A.    I don't --

17        Q.    -- when you held it?

18        A.    -- know.

19        Q.    Again, just let me finish -- get my question out,

20    before you put your answer on the record.

21              Was that stock common or preferred?

22        A.    Don't know.

23        Q.    Were there any restrictions on your ability to

24    sell Eastman Kodak stock?

25        A.    Don't know.

```
                              M. Brodsky
 1
 2        Q.    Okay.
 3              Did you receive any dividends from that stock?
 4        A.    I don't think so.
 5        Q.    So you may have received dividends?
 6        A.    No.
 7        Q.    So you're revising your answer to you
 8    definitely said you did not receive --
 9        A.    I didn't revise --
10        Q.    -- dividends --
11        A.    -- my answer.  I said no.
12        Q.    Well, your prior answer was you don't know.  So I
13    just want to clarify, have you ever received --
14        A.    I don't remember getting --
15        Q.    -- dividends --
16        A.    -- any dividends from that.  If one of the others
17    did, I don't know about it.
18        Q.    For your shares in Exxon, how many shares
19    approximately did you --
20        A.    I don't --
21        Q.    -- hold?
22        A.    -- know.
23        Q.    Do you currently hold that stock?
24        A.    Joint, yeah.
25        Q.    And do you have more than fifty shares?
```

86

```
 1                    M. Brodsky

 2      A.    Uh-huh.

 3      Q.    Is that a yes?

 4      A.    Yes.

 5      Q.    Okay.

 6            And what's, what's the total value of your shares

 7      in --

 8      A.    I don't know --

 9      Q.    -- General Electric?

10      A.    -- do not know.

11      Q.    And is that stock common or preferred?

12      A.    I do not know.

13      Q.    Is there any restrictions on your ability to sell

14      General Electric stock?

15      A.    I don't know.

16      Q.    And what are the dividends -- do you receive

17      dividends from General Electric?

18      A.    No.

19      Q.    Is your testimony you no longer have Honeywell

20      stock; correct?

21      A.    Correct.

22      Q.    Okay.

23            And when you did hold it, how many shares did you

24      have?

25      A.    I don't know.
```

FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

90

```
 1                          M. Brodsky
 2          A.    I don't know.
 3          Q.    What's the total value?
 4          A.    I don't know.
 5          Q.    Have you ever checked on the total value?
 6          A.    No.
 7          Q.    Okay.
 8                Is the stock common or preferred?
 9          A.    I don't know.
10          Q.    Are there restrictions on your ability to sell
11     the Merck stock?
12          A.    I don't know.
13          Q.    And do you receive any dividends from the
14     Merck --
15          A.    No --
16          Q.    -- stock?
17          A.    -- (no response.)
18          Q.    Your stock in Walt Disney Co., do you currently
19     own that?
20          A.    Yes.
21          Q.    Okay.
22                And how many shares do you have?
23          A.    I don't know.
24          Q.    Do you have more than fifty?
25          A.    I don't know.
```

FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

91

                              M. Brodsky

1

2        Q.    And how long have you had that stock?

3        A.    I don't, I don't know.

4        Q.    Has it been more than ten years?

5        A.    Maybe, I don't know.

6        Q.    And what's the total value of the stock, that you

7    have in Walt Disney --

8        A.    I don't --

9        Q.    -- Co.?

10       A.    - know.

11       Q.    And what type of stock, is it common or

12   preferred?

13       A.    I don't know.

14       Q.    Are there any restrictions on the sale?

15       A.    I don't know.

16       Q.    Do you receive any dividends on it?

17       A.    I don't know.

18       Q.    Okay.

19             Ms. Brodsky, I, I just want to clarify, for all

20   of the questions that you didn't know the answers to, would,

21   would Carol or Charles have that information?

22       A.    Probably not.

23       Q.    Okay.

24             Why don't you, why don't you think they have the

25   information?

             FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

                                                            93

                                    M. Brodsky

    2        A.      -- know.

    3        Q.      Again, Ms. Brodsky, for the court reporter's sake

    4    just let me finish my question --

    5        A.      Okay --

    6        Q.      -- before you speak your answer.

    7        A.      -- uh-huh.

    8        Q.      Okay.

    9                Do you have stock in Boeing?

    10       A.      Do I have stock in Boeing?  No.

    11       Q.      Have you ever had stock in Boeing?

    12       A.      No.

    13       Q.      Do you have stock in Exelon Corp.?

    14       A.      No.

    15       Q.      Have you ever had stock in Exelon Corp.?

    16       A.      Yeah, but I had to sell it.

    17       Q.      When did you sell it?

    18       A.      I think I sold it a few weeks ago.

    19       Q.      Why you have to sell it?

    20       A.      I had to sell it, because it was -- at one point

    21    I think it was restrained, by you.

    22       Q.      If it -- your testimony is that because it was

    23    restrained, you had to sell it --

    24       A.      Yes --

    25       Q.      -- sell the shares?

                     FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

96

```
 1                    M. Brodsky
 2            Do you have any shares in Xerox?
 3      A.    No.  Not currently, no.
 4      Q.    Have you ever had shares in Xerox?
 5      A.    Yes.  They were the part of the order in that
 6 Schwab account.
 7      Q.    You mean part of the sell order on the Schwab
 8 accounts?
 9      A.    Yes.
10      Q.    Okay.
11            So you sold Xerox shares as well; correct?
12      A.    Yes.
13      Q.    And when did you settle the Exelon Corp. shares?
14      A.    I sold them on the same date, when I had found
15 out you had subpoenaed Schwab.
16      Q.    Was that in February?
17      A.    I think that was in March.
18      Q.    And how many shares did you sell of your Xerox
19 holdings?
20      A.    As I recall, I'm not sure.  But I sold all of it.
21      Q.    And how much did you obtain from the Xerox
22 shares?
23      A.    I don't know.
24      Q.    Was it more than $6,500?
25      A.    I think the whole thing amounted to as I said
```

97

1                       M. Brodsky

2      6,700.

3            Q.    I see.

4                  Just to clarify, you, you obtained sixty --

5      about, about 6,700 from your sale of both the Exelon Corp.

6      and Xerox shares?

7            A.    All of those stocks, correct.

8            Q.    Were there any other stocks that you hold, other

9      than Exelon and Xerox, that you sold as part of that order?

10           A.    No, I don't think so.  Whatever was on --

11     whatever you have.

12                 You have the information there.  Why do you need

13     me to answer those questions?

14           Q.    Was - so the only shares were Exelon and Xerox

15     as part of that order?

16           A.    No.  I sold all of them.

17           Q.    You sold everything you hold?

18           A.    I sold the four stocks in the amount of

19     approximately 6,700.

20           Q.    Okay.

21                 And what were the other two stocks?

22           A.    What was it?  I think it was -- I think there

23     were only three.

24           Q.    And what was the --

25           A.    The one that you mentioned --

                FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

48

M. Brodsky

Q.   -- third one?

A.   -- the one that you mentioned.

Q.   Boeing?

A.   Mention the others, mention all three of them.

Q.   Okay.  Well, we'll go over documents that may help refresh your recollection.

But as -- right now, are you -- is your testimony that you only recollect Exelon and Xerox?

A.   Exelon, and Xerox, and then there was Boeing shares.

Q.   And there was a third?

A.   Yeah, that was the Boeing -- yeah.

Q.   It was the Boeing shares?

A.   I don't know if it was the Boeing shares or not. But I remember I showed -- you mentioned that in your former questioning.

Q.   Yeah.  My question was whether you ever had Boeing shares and you indicated no.

A.   I said that there were Boeing shares, and Exelon, and Xerox in the Schwab account, which I sold, because you restrained, at one point, in February on the -- oh, I guess it was the Fifth or the Eighth -- restrained -- put a restraining order on that, and then sent in a subpoenas as of March Fifth -- which you're very proud of -- and I sold

FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

123

111

```
 1                        M. Brodsky
 2   didn't know whether or not I had sold any other Honeywell,
 3   but it's possible.
 4        Q.    Okay.
 5              And this statement, does it help you recollect
 6   now that you sold those shares?
 7        A.    Well, I said as much.  And this is what - this
 8   is -- you have this information.
 9        Q.    Okay.
10              And you sold those Honeywell shares; correct?
11        A.    Yeah.
12        Q.    Okay.
13              And what do you do with the money that you
14   obtained from that sale?
15        A.    I use it for living, and work.  In those specific
16   cases, in the share of the Honeywell, and the share of
17   anything else that's here, it was used for legal fees.
18        Q.    Legal fees to Mr. Glickman?
19        A.    Yes.
20        Q.    Okay.
21        A.    And I think that was 9,000 something.
22        Q.    Did you first transfer these funds to a checking
23   account, before you used them for your expenses in
24   legal fees?
25        A.    Did I first transfer these accounts, no.
```

312

```
 1                      M. Brodsky
 2    were also the same people in the US Supreme Court -- and I'm
 3    a small fry.  And that made me very suspect of some of the
 4    things that went on.
 5         Q.    I'm sorry, did you say LePastore (phonetic), I
 6    didn't hear you.
 7         A.    Lopez --
 8               MR. GLICKMAN:  Lopez --
 9         A.    -- Torres.
10               MR. GLICKMAN:  -- Torres.
11         Q.    Okay.
12         A.    It was a US Supreme Court case in which you lost,
13    9-0.
14         Q.    US Supreme Court case?
15         A.    Yes.
16         Q.    Okay.
17               And you are saying that that case gives you the
18    right not to pay the eleven thousand --
19         A.    I said there was a very --
20         Q.    -- eight hundred seventy-five dollars?
21         A.    -- shady connection, between some of the things
22    that went on at the Campaign Finance Board and some of the
23    things that were going on, insofar as that case was being
24    litigated.
25         Q.    And what's that shady connection that you are
```

122

1                          M. Brodsky

2          Q.     Okay.

3                 So which -- what you referring to, when you say

4    that something didn't reflect what you paid back to the CFB?

5    Are you referring to Judge Rakower's decision?

6          A.     I'm referring to your, to the CFB's written

7    arguments, as well as Rakower's decision.

8          Q.     Okay.

9                 So you're saying Judge Rakower's decision should

10   have reflected money that you paid to the CFB --

11         A.     The --

12                MR. GLICKMAN:  Let her, let her finish the

13   question.

14         Q.     -- after she issued that decision?

15         A.     -- the entry of the order which was in --

16   corresponded to Judge Rakower's decision, said that a total

17   amount of over $35,000 was still owed, $35,415 --

18         Q.     And that was before --

19         A.     -- that's after I paid the money.

20                The entry of the judgment came down on August

21   First or Second of 2007.  I paid back the money on the 26th.

22                The person who was handling it knew I had paid

23   the money, and failed to amend to the order.

24         Q.     Okay.

25                So if the, the order was amended, would you pay

                 FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

123

                          M. Brodsky

1

2    the remaining amount --

3              MR. GLICKMAN:  Objection.

4         Q.    -- owed to the Campaign Finance Board?

5         A.    No.  It was done fraudulently, and on purpose.

6         Q.    So but if it was, if it was rectified, would you

7    pay the Campaign Finance Board the remaining amount --

8         A.    No, because, part --

9              MR. GLICKMAN:  Objection.

10        A.     and parcel of the reason that you are

11   objecting to everything was because the initial $10,000 was

12   never reviewed properly, or the fact that the $35,000 was

13   alleged to be owed, when it was actually only 9,875 -- as

14   further proof that that 975 was not due -- or what they

15   called adjustment to disbursements as you claimed they were,

16   but in fact --

17        Q.    Ms. Brodsky, can you just --

18        A.    -- compliance costs.

19        Q.    -- if you can slow for the court reporter, so

20   that she can just, accurately just transcribe your

21   testimony.

22        A.    Uh-huh.

23        Q.    You're speaking a little too quickly.

24        A.    Uh-huh.

25        Q.    Okay.

            FIVE STAR REPORTING, INC. d/b/a ADL TRANSCRIPTION SERVICES

J (Dep. at 202:2-13; Computershare's Information Subpoena response) (testifying that she does not have any stock certificates even though third party agents such as Computershare have attested that she owns stock certificates). She even testified that she did not remember whether she has sold any stocks since December 2009, when she sold her Honeywell Corporation stock, even though her brokerage account statements show that she sold stocks a few weeks before the April 1 deposition. See Ex. K (Dep. at 70:23-25; March 2010 Charles Schwab brokerage account statement).

18.     However, with the limited information that Brodsky has disclosed and the information and documents from third party garnishees, the Board has ascertained that Brodsky is able to pay the amount owed.

19.     Brodsky owns over a half-million dollars worth of blue chip stocks. See Ex. L (Computershare's Information Subpoena response; Dep. at 75:16-76:2; 193:12-24; 195:17-20). After selling a portion of her extensive stock holdings, Brodsky recently paid approximately $8,000 in legal fees to oppose the Board's judgment enforcement efforts. See Ex. M (Dep. at 111:10-19; 172:12-13).

20.     Among the largest of Brodsky's stock holdings are over ████ shares of Exxon-Mobil Corporation stock that she purchased directly from the corporation. With each share selling at approximately $64.00 as of May 11, 2010 (the 52-week range for each share is $58.46-$76.54), Brodsky owns at least ██████ worth of Exxon-Mobil shares, which could easily be used to satisfy the judgment. See Ex. L (Computershare's Information Subpoena Response); Ex. N (Wall Street Journal Stock Price Information for Exxon-Mobil).

21.     In addition to the Exxon-Mobil stock, Brodsky's ownership of several other blue chip stocks and financial assets show that she can pay the amount owed. For example, she owns

6

more than ████ worth of shares in the Walt Disney Company and more than ████ worth of shares in General Electric Company. She also owns two Manhattan apartments (with no mortgage). See Ex.O (Dep. at 16:24-17:3; 25:3, 4, 12-15).

**Garnishee Computershare Currently Possesses Brodsky's Exxon-Mobil Shares And Should Be Ordered To Sell $13,290.40 Worth Of The Shares To Satisfy The Judgment (Including Statutory Interest And The Sheriff Fees)**

22.    Garnishee Computershare is the third-party agent that maintains Brodsky's Exxon-Mobil stock holdings.

23.    Computershare has various office locations, including New York (199 Water Street, 26th Floor, New York, New York 10038) and Massachusetts (250 Royall Street, Canton, MA 02021).

24.    Computershare is "in possession or custody of money or other personal property in which the judgment debtor has an interest." C.P.L.R. § 5225(b). Approximately 7,500 of the over 8,296 Exxon-Mobil shares belonging to Brodsky are "plan shares" held by Computershare in electronic form in an account for Brodsky. See Ex. L (Computershare's Information Subpoena Response).

25.    Under C.P.L.R. § 5225(b), Computershare is "required[d] . . . to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

26.    Under C.P.L.R. § 5225(b) and well-established caselaw, the judgment can be satisfied in full through a turnover order that directs Computershare to sell a portion of the shares back to the issuing corporation (Exxon-Mobil) that would result in the payment of the amount

7

April 20, 2010

Computershare Investor Services
250 Royall Street
Canton Massachusetts 02021
www.computershare.com

JIHAA SUH
NEW YORK CITY CAMPAIGN FINANCE BOARD
40 RECTOR ST, 7TH FL
NEW YORK NY 10006

| | |
|---|---|
| Company Name: | EASTMAN KODAK COMPANY / EKC |
| Holder Account Number: | ~~████████████~~ |
| Registration: | Meryl Brodsky |

| | |
|---|---|
| Company Name: | EXXON MOBIL CORPORATION / XOM |
| Holder Account Number: | ~~████████████~~ |
| Registration: | Miss Meryl Brodsky |

Dear Sir / Madam:

We are in receipt of your follow-up request regarding the subpoena with restraining notice pertaining to the case of Meryl Brodsky, Mark Feinsot, and elect Meryl Brodsky to City Counsel 2005 vs. New York City Finance Board, a copy of which is enclosed for your convenience.

Please be advised that Computershare charges a processing fee of $10.00, plus $0.25 per page to respond to Subpoenas. We kindly ask that you submit a check to Computershare in the amount of $10.25, accompanied by a copy of this letter.

Our records show that account number ~~████████~~ was established with a credit of certificate number ~~████~~ for ~~██~~ shares on April 21, 1983. On April 19, 2010, the account held 3 certificates totaling ~~██~~ shares and on this date, the stock closed at $7.40 per share. On January 31, February 28, and March 31, 2010, the account held the same balance. Eastman Kodak Company suspended their semi-annual dividend May 5, 2009. Therefore no dividends were paid in 2009.

Account number ~~████████~~ was established with a transfer credit of certificate number ~~██████~~ for ~~██~~ shares on January 9, 1981. On April 19, 2010, the account held ~~█~~ certificates totaling ~~████~~ shares, and ~~████████~~ plan shares and on this date, the stock closed at $68.23 per share. On January 31 and Febraury 28, 2010 the account held ~~████████~~ shares. On March 31, 2010, the account held ~~████████~~ shares.

Exxon Mobil Corporation pays a quarterly dividend and records show the account is enrolled in full dividend reinvestment. Since January 1, 2009, there have been five dividends paid to the account. They are as follows:

March 09 $~~████████~~, June 09 $~~████████~~, September 09 $~~████████~~, December 09 $~~████████~~, and March 2010 $~~████████~~

Please note certificate shares are held by the shareholder. Since August 31, 2009, we have no record of any sale transaction on either account. We are unable to locate any accounts listed in the names of Carol Brodsky and/or Charlee Mae Brodsky, jointly or individually held. We have enclosed a Certification of Business Records. Please note that it is our policy to use our own Certification for matters of this nature. We apologize for any delay in receiving all the details pertaining to your initial request.

If you have any further questions, please visit our web site at www.computershare.com. Or you may contact us by phone at 781-575-2879. We offer an automated telephone service to assist you at any time, or you may reach a representative Monday through Friday, 8:30 AM to 5 PM Eastern Time.

Sincerely,

Norborth McKearney
Assistant Team Leader
Computershare Shareholder Services
Enclosures: Copy of Subpoena, Certification
REF   rd/0180001038839

# EXHIBIT E



**New York City**
**Campaign Finance Board**

40 Rector Street, New York, NY 10006
tel.  212.306.7100
fax  212.306.7143
www.nyccfb.info

Joseph P. Parkes, S. J.
Chairman

Art Chang
Richard J. Davis
Katheryn C. Patterson
Mark S. Piazza
Members

Amy M. Loprest
Executive Director

Shauna Tarshis Denkensohn
Deputy Executive Director

Sue Ellen Dodell
General Counsel

**By First-Class Certified Mail**

February 8, 2010

Charles Schwab Bank
Post Office Box 52114
Phoenix, AZ 85072
Attn: Legal Unit

Re:     *Brodsky et al. v. New York City Campaign Finance Board*, Index No. 118316/06 (N.Y. Sup. Ct. June 27, 2007), *aff'd*, 869 N.Y.S.2d 508 (1st Dep't 2008)

To whom it may concern:

    Enclosed please find the Restraining Notice, Exemption Notice, and two Exemption Claim Forms in the above-referenced matter.

    Please contact me at (212) 306-5261 if you have any questions.

Sincerely,

Rhee G. Suh

Enc.

*charles* SCHWAB

**Office Of Corporate Counsel**
211 Main Street. San Francisco. CA 94105-1905
Tel (877) 243-9263 Fax (888) 368-6356

February 12, 2010

VIA USPS FIRST-CLASS MAIL

MERYL BRODSKY &
CAROL BRODSKY
372 CENTRAL PARK W APT 10U
NEW YORK NY        10025

RE:    Garnishment on Account No(s)  ▬▬▬▬▬▬

Dear Client(s):

Charles Schwab Bank ("Schwab Bank") has received the enclosed garnishment. **As required by law Schwab Bank has frozen assets in the above referenced account(s) up to the amount specified in the garnishment and disclosed it to the proper authority.**

Please read the enclosed copy of the garnishment carefully. Be aware that the restrictions placed on your account(s) may adversely affect your ability to trade securities, make withdrawals, and use account features. As a courtesy, Schwab Bank has enclosed an *Explanation of a Garnishment* sheet to help you understand how the garnishment affects your account(s). Please be advised that **if Schwab Bank receives instructions from the court to turnover assets Schwab Bank will be required to forward the specified amount.** A $35.00 fee will be charged to your account(s) to cover our garnishment processing costs. If you have a portfolio manager or financial planner, you should advise them of the restrictions on your account.

Schwab Bank regrets having to take this action, but we must follow the command of the court. Please contact the creditor's attorney listed on the enclosed garnishment if you have further questions.

For the Firm,

*Laura Carnero*

Laura Carnero
Manager, Office of Corporate Counsel
Charles Schwab & Co., Inc.
Fax (888) 368-6355

Enclosures

# EXPLANATION OF A GARNISHMENT

Charles Schwab Bank ("Schwab Bank") is required by law to immediately comply with the instructions issued by a court or government agency. As a courtesy to our clients, Schwab Bank offers the following information to help you understand how a garnishment affects your account(s). This is not intended to be legal advice. You should consult with an attorney for assistance with this matter. Enclosed is a copy of the garnishment with a letter explaining the actions Schwab Bank has been required to take with your account(s).

## *What is a garnishment?*

A garnishment is a document issued by a court or government agency that has legal authority to collect a debt. Schwab Bank is required by law to comply with a valid garnishment. Garnishments have various titles including, but not limited to Citation to Discover Assets, Garnishment, Restraining Notice, Notice of Attachment, Writ of Attachment, Writ of Execution, & Writ of Garnishment.

## *How does this affect my account(s) with Schwab Bank?*

The garnishment requires that Schwab Bank freeze assets equal to that of the garnishment amount. In addition, the garnishment may require that:
- the cash amount to be held is double or triple that of the garnishment amount;
- daily interest accrue on the garnishment amount; and/or
- Schwab Bank disclose certain information about any restricted account (e.g. current balance, account numbers, etc.)

Possible actions Schwab Bank may take include:
- holding all assets in account
- blocking of any VISA debit cards
- prohibiting any outstanding checks, automatic debits, and/or wire transfers from posting and having them returned as unpaid
- halting of any pending outgoing wire transfer
- holding all interest in account

After a waiting period specified in the garnishment, Schwab Bank is required to turn over available assets up to the full amount demanded in the garnishment. This waiting period can vary widely so you are advised to read the garnishment carefully in order to understand the specifics of your situation.

If you wish to resolve this matter before assets are removed from your account(s) or if you have additional questions contact the judgment creditor's attorney listed on the enclosed garnishment. A $35.00 fee will be charged to cover our processing costs.

## *This garnishment is an error. What do I do?*

Schwab Bank can only act on directions issued by the court or government agency that issued the garnishment. Therefore, you must contact the judgment creditor's attorney if you feel this garnishment has been issued in error. A release of garnishment must be issued and sent Schwab Bank to have the restrictions removed.

## *How long will my account(s) be restricted?*

Restrictions on your account(s) will remain until:
1. Sufficient assets are turned over to satisfy the garnishment or
2. Schwab Bank receives a release (e.g. Notice of Satisfaction, Notice to Vacate, etc.) from same the court or government agency that issued the garnishment.

143946_1.DOC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------- X
  In the Matter of the Application of     :

MERYL BRODSKY, MARK FEINSOT, and ELECT :    Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,   :

     Petitioners,       :    Hon. Eileen A. Rakower

               :

    v.           :

               :

NEW YORK CITY CAMPAIGN FINANCE BOARD, :

    Respondent/Judgment Creditor. :
------------------------------------------------------------- X

## RESTRAINING NOTICE

Sue Ellen Dodell, General Counsel
Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate Counsel
NEW YORK CITY CAMPAIGN
FINANCE BOARD
40 Rector Street, 7th Floor
New York, New York 10006
(212) 306-7100

*Attorneys for Respondent/Judgment Creditor*
*New York City Campaign Finance Board*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- X
In the Matter of the Application of                        :

MERYL BRODSKY, MARK FEINSOT, and ELECT       :       **RESTRAINING NOTICE**
MERYL BRODSKY TO CITY COUNCIL 2005,          :
                                             :
                   Petitioners,              :       Index No. 118316/06
                                             :
v.                                           :       Hon. Eileen A. Rakower
                                             :
NEW YORK CITY CAMPAIGN FINANCE BOARD,        :
                                             :
                   Respondent/Judgment Creditor. :
                                             :
-------------------------------------------------------------- X


RE:    Meryl Brodsky

THE PEOPLE OF THE STATE OF NEW YORK

To: Charles Schwab Bank, Garnishee,

            Address:      Post Office Box 52114
                          Phoenix, AZ 85072

GREETINGS:

        WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent New York City Campaign Finance Board (the "Board"), a

judgment was entered in the Supreme Court of the State of New York, New York County,

on August 31, 2009, in favor of Respondent Board, judgment creditor, and against

Petitioners, including Meryl Brodsky ("Brodsky"), judgment debtor, in the aggregate

amount of $35,850, of which $11,875 from remains due and unpaid.

1

WHEREAS, it is believed that you are in the possession or custody of certain property in which the judgment debtor has an interest, to wit:  High Yield Investor Checking Account #440015571241 and other accounts of the judgment debtor, and the account balances thereof, under the name "Meryl Brodsky"; and

WHEREAS, no previous restraining notice has been served upon you concerning this judgment pursuant to Article 52 of the Civil Practice Law and Rules.

NOW TAKE NOTICE, that pursuant to CPLR § 5222(b), a copy of which is set forth below, you are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with, any property of the judgment debtor or pay over or otherwise dispose of any debt to the judgment debtor to any person other than the sheriff, except under direction of the sheriff or pursuant to order of the court, until the expiration of one year after this notice is served upon you, or until the judgment is satisfied or vacated, whichever event occurs first:

## SECTION 5222(b) OF THE CIVIL PRACTICE LAW AND RULES

(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be

2

subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

**(h) Effect of restraint on judgment debtor's banking institution account into which statutorily exempt payments are made electronically or by direct deposit.**
Notwithstanding the provisions of subdivision (b) of this section, if direct deposit or electronic payments reasonably identifiable as statutorily exempt payments as defined in paragraph two of subdivision (l) of section fifty-two hundred five of this article were made to the judgment debtor's account during the forty-five day period preceding the date that the restraining notice was served on the banking institution, then the banking institution shall not restrain two thousand five hundred dollars in the judgment debtor's account. If the account contains an amount equal to or less than two thousand five hundred dollars, the account shall not be restrained and the restraining notice shall be deemed void. Nothing in this subdivision shall be construed to limit a banking institution's right or obligation to restrain or remove such funds from the judgment debtor's account if required by 42 U.S.C. § 659 or 38 U.S.C. § 5301 or by a court order. Nothing in this subdivision shall alter the exempt status of funds that are protected from execution, levy, attachment, garnishment or other legal process, under section fifty-two hundred five of this article or under any other provision of state or federal law, or affect the right of a judgment debtor to claim such exemption.

**(i) Effect of restraint on judgment debtor's banking institution account.** A restraining notice issued pursuant to this section shall not apply to an amount equal to or less than the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable (as published on the websites of the United States department of labor and the state department of labor) except such part thereof as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents. This amount shall be equal to seventeen hundred sixteen dollars on the effective date of this subdivision, and shall rise to seventeen hundred forty dollars on July twenty-fourth, two thousand nine, and shall rise thereafter in tandem with the minimum wage. Nothing in this subdivision shall be construed to limit a banking institution's right or obligation to restrain or remove such funds from the judgment debtor's account if

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------- X

In the Matter of the Application of        :

MERYL BRODSKY, MARK FEINSOT, and ELECT     :        Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,        :
                                           :        Hon. Eileen A. Rakower
                     Petitioners,          :
                                           :
          v.                               :
                                           :
NEW YORK CITY CAMPAIGN FINANCE BOARD,      :
                                           :
               Respondent/Judgment Creditor. :
-------------------------------------------------------- X

**RESTRAINING NOTICE**

Sue Ellen Dodell, General Counsel
Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate Counsel
NEW YORK CITY CAMPAIGN
FINANCE BOARD
40 Rector Street, 7th Floor
New York, New York 10006
(212) 306-7100

*Attorneys for Respondent/Judgment Creditor*
*New York City Campaign Finance Board*

140

required by 42 U.S.C. § 659 or 38 U.S.C. § 5301 or by a court order. Where a judgment debtor's account contains an amount equal to or less than ninety percent of the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable (as published on the websites of the United States department of labor and the state department of labor), the account shall not be restrained and the restraining notice shall be deemed void, except as to those funds that a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents. Nothing in this subdivision shall alter the exempt status of funds which are exempt from execution, levy, attachment or garnishment, under section fifty-two hundred five of this article or under any other provision of state or federal law, or the right of a judgment debtor to claim such exemption.

TAKE FURTHER NOTICE, THAT DISOBEDIENCE OF THIS RESTRAINING

NOTICE OR FALSE SWEARING, OR FAILURE TO COMPLY WITH THIS

SUBPOENA, IS PUNISHABLE AS A CONTEMPT OF COURT.

WITNESS, Honorable Eileen A. Rakower one of the justices of the New York

State Supreme Court, at the courthouse in the County of New York, on February 8, 2010.

Dated: New York, New York
February 8, 2010

Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, NY 10006
(212) 306-7100

*Attorneys for the Judgment Creditor*
*New York City Campaign Finance Board*

4

STATE OF NEW YORK, COUNTY OF New York           SS:

I, Jihee Suh,                                    being duly sworn, says: that the deponent is not a party
herein, is over 18 years of age and ~~resides~~ work at NYC Campaign Finance Board, 40 Rector Street,
7th Floor, New York, NY 10006
That on February 8, 2010  at No.
deponent served the within restraining notice, exemption notice and two exemption claim forms on

Charles Schwab Bank, Legal Unit

CORPORATION       the banking institution therein named, by delivering a true copy thereof to
1. ☐             personally, whom deponent knew to be the
                 of said institution: deponent knew the banking institution so served to be said banking institution.

SERVICE          by mailing a copy of same, accompanied by a copy in a securely sealed postpaid wrapper properly addressed to
BY
MAIL.            Charles Schwab Bank, Legal Unit
2. ☒            at Post Office Box 52214, Phoenix, AZ 85072-9714
SPECIFY ONE       (a) by registered mail, return receipt requested. Deponent delivered said wrapper to the Registry Clerk at the
(a) or (b)       post office and paid the requisite fee. Return Receipt No.                           is attached hereto.
                 (b) by certified mail, return receipt requested. Deponent deposited said wrapper with the requisite postage
                 and return receipt card affixed, in—a post office—official depository under the care and custody of the United
                 States Postal Service within the State of New York. Return Receipt No. 7006 3450 0002 5339 1929
                 is attached hereto.

Deponent describes the individual served as follows:                N/A

☐ Male      ☐ White Skin    ☐ Black Hair     ☐ White Hair   ☐ 14-20 Yrs.   ☐ Under 5'    ☐ Under 100 Lbs.
☐ Female    ☐ Black Skin    ☐ Brown Hair     ☐ Balding      ☐ 21-35 Yrs.   ☐ 5'0"-5'3"   ☐ 100-130 Lbs
            ☐ Yellow Skin   ☐ Blonde Hair    ☐ Mustache     ☐ 36-50 Yrs.   ☐ 5'4"-5'8"   ☐ 131-160 Lbs.
            ☐ Brown Skin    ☐ Gray Hair      ☐ Beard        ☐ 51-65 Yrs.   ☐ 5'9"-6'0"   ☐ 161-200 Lbs.
            ☐ Red Skin      ☐ Red Hair       ☐ Glasses      ☐ Over 65 Yrs. ☐ Over 6'     ☐ Over 200 Lbs.

Other identifying features:

Sworn to before me on New York, NY                    Print name beneath signature.              LICENSE NO.
February 8, 2010                                      Jihee Suh

                                                Index No.

# Restraining Notice, Exemption Notice and Exemption Claim Forms

Meryl Brodsky, Mark Feinsot, and Elect Meryl        LAW OFFICES OF
Brodsky to City Council 2005

                    Plaintiff(s)                    Attorney(s) for
                                                    Office and Post Office Address
            against
                                                    Jihee Suh, Associate Counsel
New York City Campaign Finance Board                NYC Campaign Finance Board
(Judgment Creditor)                                 40 Rector Street, 7th Floor
                                                    New York, New York 10006
                    Defendant(s)

*charles* SCHWAB

**Office Of Corporate Counsel**
211 Main Street. San Francisco. CA 94105-1905
Tel (877) 243-9263 Fax (888) 368-6355

February 12, 2010

VIA USPS FIRST-CLASS MAIL

MERYL BRODSKY
372 CENTRAL PARK W APT 10U
NEW YORK NY        10025

RE:    Garnishment on Account No(s). ████████████

Dear Client(s):

   Charles Schwab Bank ("Schwab Bank") has received the enclosed garnishment. **As required by law Schwab Bank has frozen assets in the above referenced account(s) up to the amount specified in the garnishment and disclosed it to the proper authority.**

   Please read the enclosed copy of the garnishment carefully. Be aware that the restrictions placed on your account(s) may adversely affect your ability to trade securities, make withdrawals, and use account features. As a courtesy, Schwab Bank has enclosed an *Explanation of a Garnishment* sheet to help you understand how the garnishment affects your account(s). Please be advised that **if Schwab Bank receives instructions from the court to turnover assets Schwab Bank will be required to forward the specified amount.** A $35.00 fee will be charged to your account(s) to cover our garnishment processing costs. If you have a portfolio manager or financial planner, you should advise them of the restrictions on your account.

   Schwab Bank regrets having to take this action, but we must follow the command of the court. Please contact the creditor's attorney listed on the enclosed garnishment if you have further questions.

For the Firm,

*Laura Carnero*

Laura Carnero
Manager, Office of Corporate Counsel
Charles Schwab & Co., Inc.
Fax (888) 368-6355

Enclosures

Charles Schwab & Co., Inc. Member SIPC.

143

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------- X
In the Matter of the Application of                           :
                                                              :
MERYL BRODSKY, MARK FEINSOT, and ELECT      :      **RESTRAINING NOTICE**
MERYL BRODSKY TO CITY COUNCIL 2005,          :
                                                              :
     Petitioners,                    :      Index No. 118316/06
                                                              :
v.                                                            :      Hon. Eileen A. Rakower
                                                              :
NEW YORK CITY CAMPAIGN FINANCE BOARD,       :
                                                              :
    Respondent/Judgment Creditor. :
                                                              :
----------------------------------------------------------------- X

RE:  Meryl Brodsky

THE PEOPLE OF THE STATE OF NEW YORK

To: Charles Schwab Bank, Garnishee,

    Address:  Post Office Box 52114
          Phoenix, AZ 85072

GREETINGS:

    WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent New York City Campaign Finance Board (the "Board"), a

judgment was entered in the Supreme Court of the State of New York, New York County,

on August 31, 2009, in favor of Respondent Board, judgment creditor, and against

Petitioners, including Meryl Brodsky ("Brodsky"), judgment debtor, in the aggregate

amount of $35,850, of which $11,875 from remains due and unpaid.

1

WHEREAS, it is believed that you are in the possession or custody of certain property in which the judgment debtor has an interest, to wit:  High Yield Investor Checking Account #440015571241 and other accounts of the judgment debtor, and the account balances thereof, under the name "Meryl Brodsky"; and

WHEREAS, no previous restraining notice has been served upon you concerning this judgment pursuant to Article 52 of the Civil Practice Law and Rules.

NOW TAKE NOTICE, that pursuant to CPLR § 5222(b), a copy of which is set forth below, you are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with, any property of the judgment debtor or pay over or otherwise dispose of any debt to the judgment debtor to any person other than the sheriff, except under direction of the sheriff or pursuant to order of the court, until the expiration of one year after this notice is served upon you, or until the judgment is satisfied or vacated, whichever event occurs first:

<u>SECTION 5222(b) OF THE CIVIL PRACTICE LAW AND RULES</u>

**(b) Effect of restraint; prohibition of transfer; duration.**  A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated.  A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served.  All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be

2

subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

**(h) Effect of restraint on judgment debtor's banking institution account into which statutorily exempt payments are made electronically or by direct deposit.** Notwithstanding the provisions of subdivision (b) of this section, if direct deposit or electronic payments reasonably identifiable as statutorily exempt payments as defined in paragraph two of subdivision (l) of section fifty-two hundred five of this article were made to the judgment debtor's account during the forty-five day period preceding the date that the restraining notice was served on the banking institution, then the banking institution shall not restrain two thousand five hundred dollars in the judgment debtor's account. If the account contains an amount equal to or less than two thousand five hundred dollars, the account shall not be restrained and the restraining notice shall be deemed void. Nothing in this subdivision shall be construed to limit a banking institution's right or obligation to restrain or remove such funds from the judgment debtor's account if required by 42 U.S.C. § 659 or 38 U.S.C. § 5301 or by a court order. Nothing in this subdivision shall alter the exempt status of funds that are protected from execution, levy, attachment, garnishment or other legal process, under section fifty-two hundred five of this article or under any other provision of state or federal law, or affect the right of a judgment debtor to claim such exemption.

**(i) Effect of restraint on judgment debtor's banking institution account.** A restraining notice issued pursuant to this section shall not apply to an amount equal to or less than the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable (as published on the websites of the United States department of labor and the state department of labor) except such part thereof as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents. This amount shall be equal to seventeen hundred sixteen dollars on the effective date of this subdivision, and shall rise to seventeen hundred forty dollars on July twenty-fourth, two thousand nine, and shall rise thereafter in tandem with the minimum wage. Nothing in this subdivision shall be construed to limit a banking institution's right or obligation to restrain or remove such funds from the judgment debtor's account if

3

required by 42 U.S.C. § 659 or 38 U.S.C. § 5301 or by a court order.  Where a judgment debtor's account contains an amount equal to or less than ninety percent of the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage prescribed in section six hundred fifty-two of the labor law as in effect at the time the earnings are payable (as published on the websites of the United States department of labor and the state department of labor), the account shall not be restrained and the restraining notice shall be deemed void, except as to those funds that a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.  Nothing in this subdivision shall alter the exempt status of funds which are exempt from execution, levy, attachment or garnishment, under section fifty-two hundred five of this article or under any other provision of state or federal law, or the right of a judgment debtor to claim such exemption.

TAKE FURTHER NOTICE, THAT DISOBEDIENCE OF THIS RESTRAINING

NOTICE OR FALSE SWEARING, OR FAILURE TO COMPLY WITH THIS

SUBPOENA, IS PUNISHABLE AS A CONTEMPT OF COURT.

WITNESS, Honorable Eileen A. Rakower one of the justices of the New York

State Supreme Court, at the courthouse in the County of New York, on February 8, 2010.

Dated: New York, New York
       February 8, 2010

Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, NY 10006
(212) 306-7100

*Attorneys for the Judgment Creditor*
*New York City Campaign Finance Board*

4

STATE OF NEW YORK, COUNTY OF New York          SS:

I, Jihee Suh,          being duly sworn, says: that the deponent is not a party herein, is over 18 years of age and resides at NYC Campaign Finance Board, 40 Rector Street, 7th Floor, New York, NY 10006
That on February 8, 2010 at No.
deponent served the within restraining notice, exemption notice and two exemption claim forms on
Charles Schwab Bank, Legal Unit

CORPORATION
1. ☐
the banking institution therein named, by delivering a true copy thereof to
personally, whom deponent knew to be the
of said institution: deponent knew the banking institution so served to be said banking institution.

SERVICE
BY
MAIL
2. ☒
by mailing a copy of same, accompanied by a copy in a securely sealed postpaid wrapper properly addressed to
Charles Schwab Bank, Legal Unit
at Post Office Box 52214, Phoenix, AZ 85072-9714

CHECK OUT
(a) cr (b)
(a) by registered mail, return receipt requested. Deponent delivered said wrapper to the Registry Clerk at the post office and paid the requisite fee. Return Receipt No.          is attached hereto.
(b) by certified mail, return receipt requested. Deponent deposited said wrapper with the requisite postage and return receipt card affixed, in—a post office—official depository under the care and custody of the United States Postal Service within the State of New York. Return Receipt No. 7006  3450  0002 5339 1929 is attached hereto.

Deponent describes the individual served as follows:          N/A

| | | | | | |
|---|---|---|---|---|---|
| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

Sworn to before me on New York, NY
February 8, 2010

..............................................
Print name beneath signature.
Jihee Suh

..............................................
LICENSE NO.

Index No.

# Restraining Notice, Exemption Notice and Exemption Claim Forms

Meryl Brodsky, Mark Feinsot, and Elect Meryl
Brodsky to City Council 2005

Plaintiff(s)

against

New York City Campaign Finance Board
(Judgment Creditor)

Defendant(s)

LAW OFFICES OF

Attorney(s) for
Office and Post Office Address

Jihee Suh, Associate Counsel
NYC Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006

# MERYL BRODSKY

**150 EAST 61ST STREET, #11-K**
**NEW YORK, NEW YORK 10021**
**TELEPHONE/FAX: (212) 866-2105**
**EMAIL: meryl7@verizon.net**

February 14, 2010

By Fax and Mail

Office of the Corp. Counsel
Charles Schwab & Co., Inc.
211 Main Street
San Francisco, California 94105

Dear Sir or Madam:

It has come to my attention that my Schwab brokerage and bank accounts, as well as a bank account
co-owned with Carol Brodsky, my mother, were garnished in the amount of $11,875.00 as of February
11, 2010. I am attempting to stop withdrawal of funds from the bank account, as well as the execution
and sale of stock retained in my brokerage account.   There is a pending appeal against the action of the
New York City Campaign Finance Board, 40 Rector Street, New York, N.Y. 10006 in the *Matter of the
Application of Meryl Brodsky, et al., Petitioners/Judgment Debtors v. New York City Campaign
Finance Board, Respondent/Judgment Creditor*, Index No. 118316/06, Supreme Court of the State of
New York, County of New York. The Notice of Appeal (attached) seeks to vacate the judgment and
has already been docketed in the Appellate Division. Please note that the Decision and Order as well
as the amounts owed, if any, are currently in dispute. I would appreciate the opportunity to speak to
someone in your legal department about this matter at your earliest convenience and can be reached at
212-866-2015.

Pursuant to the laws of New York, CPLR 3120, I am herewith requesting production of the following
documents:

1. A true and complete copy of the Subpoena served on Charles Schwab, 1360 Third Avenue, New
York, New York 10075 by the New York City Campaign Finance Board requesting the bank and
brokerage accounts of Meryl Brodsky, indicating the date, party(ies) served and the exact documents
produced.

2. A true and complete copy of the legal judgment or explanation attached to the subpoena.

149

Page Two
Charles Schwab

3.  True and complete copies of the documents produced for inspection by the New York City
Campaign Finance Board of statements of bank and brokerage accounts of Meryl Brodsky
and the bank account of Carol Brodsky, including but not limited to:

Brokerage Account No. ███████       Name: Meryl Brodsky
Bank Account No. ██████████       Name:  Meryl Brodsky
Bank Account No.███████       Name:  Carol Brodsky

Further, please see a tax statement of Meryl Brodsky that certifies I, Meryl Brodsky, am the owner
of said accounts.  Please provide production of the documents and a copy of the subpoena issued by the
New York City Campaign Finance Board as soon as available, but no later than fifteen (15) days from
the date of receipt of this letter together with the costs of reproduction of the copies.  You may reach
Meryl Brodsky by mail at the above letterhead address, or at 372 Central Park West, Apt. 10-U, New
York, New York 10025; telephone (212) 866-2105; email: meryl7@verizon.  You may also contact
counsel for Petitioner, Meryl Brodsky:  Leo Glickman, Esq., Stoll, Glickman & Bellina, LLP, 71
Nevins Street, Brooklyn, New York 11217; phone (718) 852-3710; lglickman@stollglickman.com.
If further legal steps are required, we will act accordingly.  Although this development has
inconvenienced both Charles Schwab as a non-party as well as myself, to avert any future problems,
please provide the requested information which is critical to discovery in this case.

Yours truly,

*Meryl Brodsky*
Meryl Brodsky

cc: Leo Glickman, Esq.
Attachments

**MERYL BRODSKY**
150 EAST 61ST STREET, #11-K
NEW YORK, NEW YORK 10021
TELEPHONE/FAX: (212) 866-2105
EMAIL: meryl7@verizon.net

March 11, 2010

<u>BY FAX</u>

Office of the Corp. Counsel
Charles Schwab & Co., Inc., c/o Laura Carnero
211 Main Street
San Francisco, California 94105

To whom it may concern:

I have received a letter that you have been subpoenaed to produce documents in the Matter of the *Application of Meryl Brodsky, et al. Petitioners/Judgment Debtors v. New York City Campaign Finance Board, Respondent/Judgment Creditor*, Index No. 118316/06.  There is currently an appeal pending in this case which includes motions to quash all such subpoenas. The relevant documents include Brokerage account No. ███████ (Meryl Brodsky); Bank Account No. ██████████ (Meryl Brodsky); Bank Account No. ████████████ (Carol Brodsky).

Further, the New York City Campaign Finance Board has never made a request to any court for permission to subpoena such accounts nor do they have any legal right to such information. Please see the attached documents.  Please do not produce any documents to the New York City Campaign Finance Board pending the resolution of this matter.

Yours truly,

*Meryl Brodsky*

Meryl Brodsky

Attachments

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------- X
In the Matter of the Application of                              :
                                                                :
MERYL BRODSKY, MARK FEINSOT, and ELECT          :          Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,             :
                                                                :          Hon. Eileen A. Rakower
              Petitioners,                                      :
                                                                :   **SUBPOENA DUCES TECUM**
v.                                                              :
                                                                :   Regarding:  Meryl Brodsky
NEW YORK CITY CAMPAIGN FINANCE BOARD,           :   (Judgment Debtor)
                                                                :
              Respondent/Judgment Creditor.       :
                                                                :
---------------------------------------------------------------- X

THE PEOPLE OF THE STATE OF NEW YORK

To:    Charles Schwab Bank
       Office of Corporate Counsel
       211 Main Street
       San Francisco, CA 94105-1905
       Attn:  Laura Carnero, Manager

GREETINGS:

       WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent/Judgment Creditor New York City Campaign Finance Board (the

"Board"), a judgment was entered in the Supreme Court of the State of New York, New York

County, on August 31, 2009, in favor of Respondent Board, Judgment Creditor, and against

Petitioners, including Meryl Brodsky ("Brodsky"), Judgment Debtor, in the aggregate amount of

$35,850, of which $11,875 remains due and unpaid;

       NOW, THEREFORE WE COMMAND YOU, pursuant to N.Y.C.P.L.R. §§ 5223,

5224(a)(2) to produce certain books and papers for examination **on Tuesday, March 23, 2010** at

the offices of the New York City Campaign Finance Board, **40 Rector Street, 7th Floor, New York, New York 10006**, to wit, copies of any and all of the following records:

1) Periodic (i.e., monthly) account statements from August 1, 2009 to the present date for High Yield Investor Checking Account No. ▇▇▇▇▇▇▇ (of Meryl Brodsky), which show, among other transactions, account balances, withdrawals, transfers, and deposits;

2) Copies of checks drawn on High Yield Investor Checking Account No. ▇▇▇▇▇▇▇ (of Meryl Brodsky) from August 1, 2009 to the present date;

3) Copies of checks or money orders depositing funds to High Yield Investor Checking Account No. ▇▇▇▇▇▇▇ (of Meryl Brodsky) from August 1, 2009 to the present date;

4) Written correspondence and records of telephone communications between Meryl Brodsky and Charles Schwab Bank, from February 9, 2010 to the present date, concerning High Yield Investor Checking Account No. ▇▇▇▇▇▇▇ and/or other Charles Schwab accounts of Meryl Brodsky; and

5) Periodic (i.e., monthly) account statements from August 1, 2009 to the present date for any other personal Charles Schwab accounts of Meryl Brodsky (including but not limited to Schwab One brokerage account and Checking Account ▇▇▇▇▇▇▇), which show, among other transactions, account balances, withdrawals, transfers, and deposits.

TAKE NOTICE that false swearing on such examination or failure to comply with this subpoena is punishable as a contempt of court.

WITNESS, Sue Ellen Dodell, General Counsel, of the New York City Campaign Finance Board, at 40 Rector Street, 7th Floor, New York, New York 10006, on March 5, 2010.

Dated:   March 5, 2010

_____
Jihee G. Suh, Associate Counsel
Hillary Weisman, Deputy General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006

*Attorneys for Respondent/Judgment Creditor*
*New York City Campaign Finance Board*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- X
In the Matter of the Application of                                          :
                                                                             :
MERYL BRODSKY, MARK FEINSOT, and ELECT                                       :          Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,                                          :
                                                                             :          Hon. Eileen A. Rakower
                        Petitioners,                                         :
                                                                             :          **SUBPOENA DUCES TECUM**
v.                                                                           :
                                                                             :          Regarding:  Meryl Brodsky
NEW YORK CITY CAMPAIGN FINANCE BOARD,                                        :          (Judgment Debtor)
                                                                             :
                        Respondent/Judgment Creditor.                        :
                                                                             :
-------------------------------------------------------------------- X

THE PEOPLE OF THE STATE OF NEW YORK

To:     Charles Schwab & Co, Inc.
        211 Main Street
        San Francisco, CA 94105-1905
        Attn:   Third Party Actions

GREETINGS:

        WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent/Judgment Creditor New York City Campaign Finance Board (the

"Board"), a judgment was entered in the Supreme Court of the State of New York, New York

County, on August 31, 2009, in favor of Respondent Board, Judgment Creditor, and against

Petitioners, including Meryl Brodsky ("Brodsky"), Judgment Debtor, in the aggregate amount of

$35,850, of which $11,875 remains due and unpaid;

        NOW, THEREFORE WE COMMAND YOU, pursuant to N.Y.C.P.L.R. §§ 5223,

5224(a)(2) to produce certain books and papers for examination **on Wednesday, March 31,**

1

**2010** at the offices of the New York City Campaign Finance Board, **40 Rector Street, 7th Floor,**

**New York, New York 10006**, to wit, copies of any and all of the following records:

1) Periodic (i.e., monthly) account statements from August 1, 2009 to the present date for

    any and all Charles Schwab brokerage accounts of Meryl Brodsky (including, but not

    limited to, brokerage accounts ending with or containing the partial account numbers

    "████" or "████"), which show, among other transactions, account balances,

    withdrawals, transfers, and deposits.


    TAKE NOTICE that false swearing on such examination or failure to comply with this

subpoena is punishable as a contempt of court.


    WITNESS, Sue Ellen Dodell, General Counsel, of the New York City Campaign Finance

Board, at 40 Rector Street, 7th Floor, New York, New York 10006, on March 23, 2010.


Dated:    March 23, 2010

                                    _____
                                    Jihee C. Suh, Associate Counsel
                                    Hillary Weisman, Deputy General Counsel
                                    New York City Campaign Finance Board
                                    40 Rector Street, 7th Floor
                                    New York, New York 10006

                                    *Attorneys for Respondent/Judgment Creditor*
                                    *New York City Campaign Finance Board*

2

## Notes to Schwab Garnishment

Garnishment of Meryl Brodsky's and joint owner's Schwab Bank and HSBC accounts show negative balances on February 14, 2010 of $23,750 due to the board's garnishment but failure to execute any assets in the requisite time period of ten days pursuant to CPLR § 6212:

a) **The total amount of the two SchwabOne Bank Account garnishments equalled (-)$11,875 plus (-)$11,875 or (-)$23,750, that represents more than two times the amount of the alleged debt of $9,875.00.**

    1. The "minus" number corresponding to the first Name, Investor Checking under "Available Balance" represents a garnishment of (-)$9,034.18 plus (-)$2,840.82 (see next page) which was available in the account but garnished. The Activity line says that this transaction is "pending." A total of (-)$11,875.00 was garnished from the first account on February 14, 2010.

    2. The "minus" number corresponding to the second Name, Investor Checking under "Available Balance" represents a garnishment of (-)$11,775.00 plus (-)$100.00 (see next page) which was available in the account but garnished. The Activity line says that this transaction is "pending." A total of (-)$11,875.00 was garnished from the joint account on February 14, 2010.

b) Meryl Brodsky and joint owner's HSBC bank accounts were also garnished on February 10, 2010 due to the return of Schwab Bank checks for insufficient funds on February 16, 2010;

c) Schwab Bank's release of the two restraints on Meryl Brodsky and joint owner's bank and brokerage accounts followed Brodsky's phone call to Charles Schwab & Co. on February 16, 2010;

    1. The board's garnishment violates CPLR § 5222 because as of February 14, 2010, it restrained three banks in less than a year: TD Bank, HSBC, Schwab Bank individual and joint accounts. Pursuant to CPLR § 5239, Meryl Brodsky and the joint owner can intervene for adverse claims or monies still in the board's possession. F

    2. Further, Suh and Weisman violated 26 U.S.C. ¶ 7431(a)(2) because all of the prior information they subpoenaed and illegally disseminated was tax return information, including:

        • Boeing Corporation
        • Exelon Corporation
        • Xerox corporation
        • Schwab Bank Account

https://client.schwab.com/PrintPopup.aspx?domain=client.schwab.com...

**SCHWAB**                              *a.*

Accounts > Summary

## Accounts Summary                                    Print in landscape for best results.

Urgent Notification   Presidents' Day Schedule, February 15, 2010   Details

### Brokerage Accounts                                              Hide All Details

| Account | Name | Value | Day Change | Activity | Next Steps |
|---------|------|-------|------------|----------|------------|
| ▬▬ | mery | $6,067.80 | ▲ $0.00 (0%) | No Activity | Positions Transactions |
| ▬▬ | Joint Tenant | $42.04 | ▲ $0.00 (0%) | No Activity | Positions Transactions |
| **Totals** | | **$6,109.84** | ▲ $0.00 (0%) | | All Balances  All Positions |

As of 02/14/10 10:12 PM EST

### Charles Schwab Bank                                             Hide All Details

| Account | Name | Available Balance | Balance Owed | Activity | Next Steps |
|---------|------|-------------------|--------------|----------|------------|
| ▬▬ 1 | Investor Checking | -$9,034.18 | | Pending | Bill Pay Transactions |
| ... ▬ 1 | Investor Checking | -$11,775.00 | | Pending | Bill Pay Transactions |
| **Totals** | | **-$20,809.18** | **$0.00** | | All Balances |

As of 02/14/10

1. Schwab Bank Investor Checking and/or High Yield Savings Balances are current as of today, but may not reflect recent transactions. Schwab Bank checking and Savings accounts are also available without a brokerage account. Please call 877-824-5625 for additional Schwab Bank product information.

(2007-4227)

**Brokerage Products: Not FDIC Insured • No Bank Guarantee • May Lose Value**                                   Today's Date: 02/14/10 10:17 PM EST

Charles Schwab & Co., Inc. and Charles Schwab Bank are separate but affiliated companies and wholly-owned subsidiaries of The Charles Schwab Corporation. Brokerage products and services are offered by Charles Schwab & Co., Inc. (Schwab Brokerage), Member SIPC. Deposit and lending products and services are offered by Charles Schwab Bank, Member FDIC and Equal Housing Lender.

Bank sweep accounts are generally held at Charles Schwab Bank. Funds deposited at Schwab Bank are insured by the Federal Deposit Insurance Corporation (FDIC) up to $250,000 when aggregated with all other deposits held by you in the same capacity at Schwab Bank. Funds on deposit at Schwab Bank are not deposits or obligations of Charles Schwab & Co., Inc. and may not be covered by the Securities Investor Protection Corporation (SIPC). NOTE: The temporary increase of FDIC insurance coverage to $250,000 for all insurable capacities has been extended through December 31, 2013. If not further extended, FDIC coverage will revert to $100,000 on January 1, 2014 for all insurable capacities except IRAs and certain other self-directed retirement accounts and plans.

The Bank Sweep feature on your brokerage account is not subject to the FDIC's Transaction Account Guarantee Program. Customers with funds held in deposit accounts at Schwab Bank under the Bank Sweep program will continue to be insured until December 31, 2013, for up to

2/14/2010 10:18 PM

*b.*

 **HSBC**

## NOTICE OF RETURNED CHECK

| CUSTOMER NAME Meryl Brodsky | DATE 2/22/10 |
|---|---|
| ADDRESS 150 E 61st St Apt 11K   NY NY 10065 | |
| ACCOUNT NUMBER 05801705 | |

We have been advised and hereby inform you that the check described herein is being returned unpaid.

| DATE DEPOSITED/CASHED 2/10/10 |
|---|
| MAKER Meryl Brodsky |
| AMOUNT $ 100 |
| REASON FOR RETURN In Sufficient Funds |

If you have any questions regarding this matter, please call

| BRANCH/RSP MANAGER NAME Nadine Wilson | BRANCH/RSP PHONE NUMBER 212 222-6795 |
|---|---|
| BRANCH/RSP LOCATION ADDRESS 730 Amsterdam Ave   New York NY 10025 | |

WHITE – CUSTOMER COPY   •   CANARY – BRANCH COPY

HSBC Bank USA, National Association

b-1

CIS 116 NS (Rev. 6/04)
APS # 238313

b.



*041000014*
02/16/2010
6111278620

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.

RETURN REASON-A
NOT SUFFICIENT
FUNDS

**MERYL BRODSKY**
372 CENTRAL PARK W. APT. 10U
NEW YORK, NY 10025-8283

*charles* SCHWAB
BANK

1003

94-221/1212
3500

*February 19 2010*

RETURN REASON - A
NOT SUFFICIENT FUNDS

Pay to the order of _____ $ 1,000 00

One Thousand Dollars & no/100 _____ Dollars

Charles Schwab Bank
Reno, Nevada

**High Yield Investor Checking**

For _____

⑈121202211⑈ 440015571241 ⑈1003

4⑈121202211⑈ 440015571241 1003   ⑈0000100000⑈

SCHWAB                                                                                     *C.*

Accounts > Summary                                                          **Print in landscape for best results.**

## Accounts Summary

### Brokerage Accounts                                                       Hide All Details

| Account | Name | Value | Day Change | Activity | Next Steps |
|---|---|---|---|---|---|
|  | mery | $6,177.43 | ~ $109.63 (1.81%) | No Activity | Positions Transactions |
|  | Joint Tenant | $42.04 | ~ $0.00 (0%) | No Activity | Positions Transactions |
| **Totals** |  | **$6,219.47** | ~$109.63 (1.79%) | | All Balances All Positions |

As of 02/16/10 02:47 PM EST

### Charles Schwab Bank                                                      Hide All Details

| Account | Name | Available Balance | Balance Owed | Activity | Next Steps |
|---|---|---|---|---|---|
| 1 | Investor Checking | $2,840.82 | | | Bill Pay Transactions |
| 1 | Investor Checking | $100.00 | | | Bill Pay Transaction |
| **Totals** |  | **$2,940.82** | **$0.00** | | All Balances |

As of 02/16/10

1. Schwab Bank Investor Checking and/or High Yield Savings Balances are current as of today, but may not reflect recent transactions. Schwab Bank checking and Savings accounts are also available without a brokerage account. Please call **877-824-5625** for additional Schwab Bank product information.

(2007-4227)

**Brokerage Products: Not FDIC Insured • No Bank Guarantee • May Lose Value**

Today's Date: 02/16/10 02:48 PM EST

Charles Schwab & Co., Inc. and Charles Schwab Bank are separate but affiliated companies and wholly-owned subsidiaries of The Charles Schwab Corporation. Brokerage products and services are offered by Charles Schwab & Co., Inc. (Schwab Brokerage), Member SIPC. Deposit and lending products and services are offered by Charles Schwab Bank. Member FDIC and Equal Housing Lender.

Bank sweep accounts are generally held at Charles Schwab Bank. Funds deposited at Schwab Bank are insured by the Federal Deposit Insurance Corporation (FDIC) up to $250,000 when aggregated with all other deposits held by you in the same capacity at Schwab Bank. Funds on deposit at Schwab Bank are not deposits or obligations of Charles Schwab & Co., Inc. and may not be covered by the Securities Investor Protection Corporation (SIPC). NOTE: The temporary increase of FDIC insurance coverage to $250,000 for all insurable capacities has been extended through December 31, 2013. If not further extended, FDIC coverage will revert to $100,000 on January 1, 2014 for all insurable capacities except IRAs and certain other self-directed retirement accounts and plans.

The Bank Sweep feature on your brokerage account is not subject to the FDIC's Transaction Account Guarantee Program. Customers with funds held in deposit accounts at Schwab Bank under the Bank Sweep program will continue to be insured until December 31, 2013, for up to $250,000 under the FDIC's general deposit insurance rules.

©2010 Charles Schwab & Co., Inc. All rights reserved. Unauthorized access is prohibited. Usage will be monitored.

2/16/2010 2:48 PM

**TD Bank, N.A.**

Legal Department
1701 Route 70 East
Cherry Hill, NJ 08034
**T: 888 751-9000**  F: 856 874-2423

March 11, 2010

Meryl Brodsky
150 E 61st Street – Apt 11K
New York, NY 10021

      Re:  Meryl Brodsky et al vs New York City Campaign Finance Board

Dear Account Holder:

Enclosed please find a subpoena from Jihee G Suh requesting information pertaining to your personal and/or business accounts.  Please be advised that you have 10 days to file a motion to quash with the court in the county from which the subpoena was issued. If we do not receive a copy of the motion from you or your attorney, the requested information will be released.  Please fax your correspondence to 856-489-7016 as well as mail a hard copy to the address below:

        TD Bank, N.A.
        Legal Department
        1701 Route 70 East
        Cherry Hill, NJ 08034

If you should have any questions pertaining to this matter, please feel free to contact me at (856) 470-6171 or Barbara Biderberg at (856) 470-6173.

Sincerely,

*Barbara J Morgan*

TD Bank, N.A.
Barbara J Morgan
Custodian of Records

Enclosure

**MERYL BRODSKY**
150 EAST 61ST STREET, #11-K
NEW YORK, NEW YORK 10021
TELEPHONE/FAX: (212) 866-2105
EMAIL: meryl17@verizon.net

March 12, 2010

**BY FAX**

TD Bank, N.A.
Attn. Barbara J. Morgan
Custodian of Records
Legal Department
1701 Route 70 East
Cherry Hill, New Jersey 08034

Re: Meryl Brodsky et al. v. New York City Campaign Finance Board

Dear Ms. Morgan:

Thank you so much for alerting me to the fact that certain records are subpoenaed by the New York City Campaign Finance Board. While I do not object to the production of the particular documents in this case, I do regret the inconvenience these persons have caused you as a non-party to this action.

I found the assistance at Commerce Bank, now TD Bank, very efficient, courteous and helpful during the time that I held an account there. Incidentally, my case is on appeal and I have attached a brief document. If I can be of assistance to you during this ordeal, please do not hesitate to contact me at 212-866-2105 or email: meryl17@verizon.net.

Yours truly,

Meryl Brodsky
Meryl Brodsky

Attachment

163

# EXPLANATION OF A SUBPOENA

Charles Schwab & Co., Inc. ("Schwab") has received a subpoena (copy enclosed) for records relating to your account(s). As a courtesy to our clients, Schwab offers the following information to help you understand how a subpoena affects your account(s). This is not intended to be legal advice. You should consult with an attorney for assistance with this matter.

## *What is a subpoena?*

A subpoena is a formal, legal demand to turn over documents &/or information related to a legal action. While Schwab is not a party to this legal action, Schwab is subject to the subpoena because the individuals or entities that are party to the action have accounts with Schwab. As custodian of those accounts, Schwab falls under the jurisdiction of the court which the subpoena was issued and has legal obligation to respond accordingly.

## *Who issues a subpoena?*

Any party to a legal action may issue a subpoena. The issuer of the subpoena may be required to notify you that your records are being requested. State laws vary regarding the fulfillment of these notification requirements. It is your responsibility to become familiar with the laws of the State in which legal action has been filed and to know if these requirements have been met.

## *How does this affect my account(s) with Schwab?*

Schwab is required by law to produce the documents &/or information requested in the subpoena. The subpoena specifies a due date by which records are to be produced. Since records are produced via U.S. Mail or UPS, they must be sent from one to three business days prior to the due date in order to ensure they are produced by the time specified in the subpoena.

## *Can I prevent information about my account(s) from being turned over?*

Often you have the right to object to the production of your records. To do so you must file with the court a Motion To Quash the subpoena. In order to notify Schwab that you are contesting the subpoena a copy of the filed motion should be faxed to (888) 368-6355. This must be done before documents are produced. To be safe, Schwab should receive the motion at least three business days before the due date on the subpoena. Once Schwab receives a copy of the filed Motion To Quash, we will make every effort to delay production of the records until the court issues a final order resolving dispute.

Schwab is unable to give advice regarding how to file Motion To Quash. Schwab is also unable to file a Motion To Quash or otherwise contest this subpoena on your behalf. If you need assistance or advice about how to properly contest the subpoena you should contact an attorney.

**Schwab has no authority to deviate from the demands of the subpoena without a filed Motion To Quash, an order from the court, or written withdrawal of the subpoena by the issuing party. A simple letter or phone call to Schwab stating that you object to the production of your documents will not suffice to quash the subpoena.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------ X
In the Matter of the Application of                                       :
                                                                          :
MERYL BRODSKY, MARK FEINSOT, and ELECT           :         Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,                   :
                                                                          :         Hon. Eileen A. Rakower
                        Petitioners,                                 :
                                                                          :     **SUBPOENA DUCES TECUM**
v.                                                                        :
                                                                          :    Regarding:  Meryl Brodsky
NEW YORK CITY CAMPAIGN FINANCE BOARD,        :    (Judgment Debtor)
                                                                          :
                        Respondent/Judgment Creditor.     :
                                                                          :
------------------------------------------------------------------ X

THE PEOPLE OF THE STATE OF NEW YORK

To:     TD Bank
        1701 Route 70 East
        Cherry Hill, NJ 08034-5400

GREETINGS:

WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent/Judgment Creditor New York City Campaign Finance Board (the

"Board"), a judgment was entered in the Supreme Court of the State of New York, New York

County, on August 31, 2009, in favor of Respondent Board, Judgment Creditor, and against

Petitioners, including Meryl Brodsky ("Brodsky"), Judgment Debtor, in the aggregate amount of

$35,850, of which $11,875 remains due and unpaid;

WHEREAS, the party to whom this subpoena is directed has an office for the regular

transaction for business in the County of New York;

165

NOW, THEREFORE WE COMMAND YOU, pursuant to N.Y.C.P.L.R. §§ 5223, 5224(a)(2) to produce certain books and papers for examination **on Thursday, March 25, 2010** at the offices of the New York City Campaign Finance Board, **40 Rector Street, 7ᵗʰ Floor, New York, New York 10006**, to wit, copies of any and all of the following records:

1) Periodic (i.e., monthly) account statements from September 1, 2006 to August 1, 2007 for Certificate of Deposit Account No. 109172355 (of Meryl Brodsky) which show, among other transactions, account balances, withdrawals, transfers, and deposits;

2) Any and all documents showing the total amount of interest earned on the Certificate of Deposit Account No. 109172355 (of Meryl Brodsky);

3) Periodic (i.e., monthly) account statements from August 1, 2009 through the present date for any other personal TD Bank accounts of Meryl Brodsky which show, among other transactions, account balances, withdrawals, transfers, and deposits.

TAKE NOTICE that false swearing on such examination or failure to comply with this subpoena is punishable as a contempt of court.

WITNESS, Sue Ellen Dodell, General Counsel, of the New York City Campaign Finance Board, at 40 Rector Street, 7ᵗʰ Floor, New York, New York 10006, on March 4, 2010.

Dated:   March 4, 2010

_____
Hillary Weisman, Deputy General Counsel
Jihee G. Suh, Associate Counsel
New York City Campaign Finance Board
40 Rector Street, 7ᵗʰ Floor
New York, New York 10006

*Attorneys for Respondent/Judgment Creditor*
*New York City Campaign Finance Board*

**MERYL BRODSKY**
**150 EAST 61ST STREET, #11-K**
**NEW YORK, NEW YORK 10021**
**TELEPHONE/FAX: (212) 866-2105**
**EMAIL: meryl7@verizon.net**

February 13, 2010

Customer Service, Attn. Legal Representative
HSBC Bank USA, N.A.
Post Office Box 2013
Buffalo, New York 14240

Dear Sir or Madam:

I have been a consumer at HSBC in New York City for more than 15 years. I was notified by my attorney that certain documents were subpoenaed by the New York City Campaign Finance Board, 40 Rector Street, New York, N.Y. 10006 in the Matter of the Application of Meryl Brodsky, et al., Petitioners/Judgment Debtors v. New York City Campaign Finance Board, Respondent/Judgment Creditor, Index No. 118316/06, Supreme Court of the State of New York, County of New York. Pursuant to the laws of New York, CPLR 3120, I am herewith requesting production of the following documents:

1. A complete and true copy of the Subpoena served on HSBC USA, N.A. by the New York City Campaign Finance Board requesting the bank statements of Meryl Brodsky, indicating the date, party(ies) served and the number of past years documents were produced. If the subpoena made a demand to provide documents in the future, please supply that information.

2. A true and complete copy of a legal judgment or explanation attached to such subpoena.

3. True and complete copies of the documents produced for inspection by the New York City Campaign Finance Board of the Statements of Accounts of Meryl Brodsky including, but not limited, to:

Account No. 0████████████ --- 739 Amsterdam Avenue, NY, NY 10025
Account No. 0████████████ --- 1165 Third Avenue, NY, NY 10065
Account No. 7████████████

Further, see three (3) bank statements that certify I, Meryl Brodsky, am the owner of said accounts as well as a copy of the Notice of Appeal in this action.

Page Two
February 13, 2010

Please provide production of such documents within twenty (20) days of this request to Meryl Brodsky together with the cost of reproduction of such copies. I can be contacted at the above address in writing and by telephone: 212-866-2105; email meryl17@verizon.net. You may also contact my counsel, Leo Glickman, Esq. if you have questions, at Stoll, Glickman & Bellina, LLP, 71 Nevins Street, Brooklyn, New York 11217; phone (718) 852- 3710; lglickman@stollglickman.com. If further legal steps are necessary, I will act accordingly. Although this development has inconvenienced both you as a non-party as well as me, to avert such problems, please provide the requested documentation which is critical to discovery in this case.

Yours truly,

Meryl Brodsky

cc: Leo Glickman, Esq.
Attachments

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Customer Service/Legal
HSBC Bank USA, N.A.
Post Office Box 2013
Buffalo, New York 14240

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)    7009 2820 0002 2727 2037

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

169



# OFFICE OF THE SHERIFF
## LAW ENFORCEMENT BUREAU
## 66 JOHN STREET - 13TH FLOOR
## NEW YORK, NY 10038





## SHERIFF'S LEVY

## NOTICE TO GARNISHEE (S): COMPUTERSHARE

### SHERIFF'S CASE #: 10013826

**LEVY: I HEREBY LEVY** to the extent necessary to satisfy the execution/attachment with interest, Sheriff's fees and expenses upon any interest of the judgment debtor(s) / defendant(s) named in the copy of the execution/attachment served upon you herewith in all personal property which is in your possession or custody and upon any debt you owe to the judgment debtor(s) / defendant(s), not specifically exempt from levy by law.

**EFFECT OF LEVY:** This levy effects any existing debt, which is past due, currently due or yet to become due certainly or upon demand of the judgment debtor(s) / defendant(s), whenever incurred, including any cause of action which can be assigned or transferred wherever accruing, and any existing interest in personal property which can be assigned or transferred, whether it consists of a present or future right of interest and whether or not it is vested, including any debt or property specified in an accompanying notice; and, it also affects the interest in property hereafter coming into your possession or custody and all debts hereafter coming due from you to the judgment debtor(s) / defendant (s), until you pay or transfer the debt or property to the Sheriff.

**YOU ARE FORBIDDEN BY LAW TO TRANSFER, PAY OVER, OR OTHERWISE DISPOSE OF THE DEBT OR PROPERTY SO LEVIED UPON AS HEREINBEFORE SPECIFIED TO ANY PERSON OTHER THAN THE SHERIFF, EXCEPT BY WRITTEN DIRECTION OF THE SHERIFF. THE SHERIFF HAS AND CLAIMS A LIEN UPON THE LEVIED PROPERTY FOR HIS STATUTORY FEES AND POUNDAGE.**

**DEMAND 1:** I HEREBY DEMAND that you furnish me forthwith with a STATEMENT, IN DUPLICATE, specifying the amount and nature of any and all such property of the judgment debtor(s) / defendant(s). IF YOU DO NOT, YOU ARE SUBJECT TO EXAMINATION UNDER OATH BY DIRECTION OF THE COURT.

**DEMAND 2:** I HEREBY FURTHER DEMAND that you forthwith transfer all such property and pay over to me all such debts upon maturity and execute and document necessary to effect the transfer or payment. If you do not, you are subject to suit by the judgment creditor/plaintiff to recover such property or the amount of your indebtedness obligation or other accountability with costs and expenses.

**DISCHARGE:** Such payment or transfer shall discharge you from your obligation to the judgment debtor(s) / defendant(s) to the extent of the payment or transfer. THE AMOUNT OF $ (See Below) WHICH INCLUDES SHERIFF'S FEES, POUNDAGE AND INTEREST IS NECESSARY TO SATISFY THE EXECUTION/ATTACHMENT. Make checks payable to: **SHERIFF OF THE CITY OF NEW YORK**, and indicate the name and case number of the case when remitting.

DATED: May 20, 2010

SHERIFF OF THE CITY OF NEW YORK

Deputy Sheriff KHALILAH RAMSEY 410

(212) 487-5568

TOTAL AMOUNT (S) DUE:

**$13,435.40**

## THIS IS A FINAL DEMAND:

## MAKE CHECK PAYABLE TO SHERIFF OF THE CITY OF NEW YORK



# MERYL BRODSKY

### 150 EAST 61ST STREET, #11-K
### NEW YORK, NEW YORK 10065
TELEPHONE/FAX: (212) 866-2105
EMAIL: meryl7@verizon.net

November 30, 2010

PERSONAL AND CONFIDENTIAL

ComputerShare
P.O. Box 43078
Providence, Rhode Island 02940-3078

Re: Stock Accounts of Meryl Brodsky, Soc. Sec. No. ███████

Dear Sir or Madam:

  Pursuant to NYCPLR 3120, I require information regarding my stock account as a result of pending litigation against Jihee Suh and the New York City Campaign Finance Board. Please forward answers to any, or all of the following questions, to Meryl Brodsky, 150 East 61st Street, #11-K, New York, New York 10065; Phone: 212-866-2105:

1) the date a stop order was placed on the ExxonMobil account (███████████) and what other stocks were restricted;
2) the price of ExxonMobil stock on the execution date;
3) the exact number of shares of ExxonMobil sold on the execution date;
4) the total liquidated value of ExxonMobil shares levied and sold;
5) the exact date the liquidated shares were turned over to the NYC sheriff and the NYC Sheriff's order; a copy of the cancelled check (both sides) returned to ComputerShare in the amount of the liquidated shares;
6) a copy of the New York City Campaign Finance Board's subpoenas, restraining/garnishment orders, notice and levy/execution and motion papers regarding unentered satisfaction of judgment; any other documents to the present date.

  Please refer to the letters and account statement attached hereto. You may forward the required information to the above address within a reasonable amount of time as well as an invoice for the cost of reproduction of any copies of the requested information. Thank you.

Yours truly,

*Meryl Brodsky*

Meryl Brodsky

Attchs.

VERIFIED

SIGNATURE GUARANTEE
MEDALLION GUARANTEE

AUTHORIZED SIGNATURE
X9005311
(78A) SECURITIES TRANSFER AGENTS MEDALLION PROGRAM™



December 10, 2010

Computershare Investor Services
250 Royall Street
Canton Massachusetts 02021
www.computershare.com

MISS MERYL BRODSKY
150 E 61 ST APT 11 K
NEW YORK NY 10065-8527

Company Name:          EXXON MOBIL CORPORATION / XOM
Holder Account Number:  ▓▓▓▓▓▓▓▓▓
Registration:          Miss Meryl Brodsky

Company Name:          EASTMAN KODAK COMPANY / EKC
Holder Account Number:  ▓▓▓▓▓▓▓▓
Registration:          Meryl Brodsky

Dear Ms. Brodsky:

Thank you for your inquiry regarding the above referenced account. We appreciate the opportunity to be of service to you on behalf of Exxon Mobil Corporation.

Our records indicate that the stop trade restrictions were placed on your Eastman Kodak Company and Exxon Mobil Corporation accounts on April 14, 2010. On that date Exxon Mobil closed at $68.61 per share, and Eastman Kodak closed at $7.81 per share. On July 22, 2010, 223 shares were transferred from your Exxon Mobil account to The New York City Sheriff's Office. We have enclosed a copy of the order we received on April 13, 2010.

Should you have any questions, please call us toll free at 1-800-252-1800. Our telephone representatives are available Monday through Friday between the hours of 8:30 AM and 5:00 PM Eastern Time. If you are calling from outside of the US, please call collect at 1-781-575-2058. Please note that any available representative can assist you. If you have Internet access, you may also obtain information about available services by visiting our web site at www.computershare.com/exxonmobil or write to us at ExxonMobil Shareholder Services, c/o Computershare, P.O. Box 43078, Providence, RI 02940-3078.

Sincerely,

Rodney Dessesaure
Operations Specialist
Computershare Shareholder Services
64548

Enclosures: Copy of request, Copies of Court Order
REF: rd/UIB0001097539



**New York City**
**Campaign Finance Board**

40 Rector Street, New York, NY 10006
tel.  212.306.7100
fax  212.306.7143
www.nyccfb.info

Joseph P. Parkes, S. J.
Chairman

Art Chang
Richard J. Davis
Katheryn C. Patterson
Mark S. Piazza
Members

Amy M. Loprest
Executive Director

Shauna Tarshis Denkensohn
Deputy Executive Director

Sue Ellen Dodell
General Counsel

<u>**By Certified Mail**</u>

April 7, 2010

Computershare
250 Royall Street
Canton, MA 02021
Attn:  Legal Department

Re:   <u>*Brodsky et al. v. New York City Campaign Finance Board*, Index No. 118316/06 (N.Y.</u>
<u>Sup. Ct. June 27, 2007), aff'd, 869 N.Y.S.2d 508 (1st Dep't 2008)</u>

To Whom It May Concern:

I am writing on behalf of the New York City Campaign Finance Board, the Judgment Creditor in the above-referenced matter.  I have been informed that Meryl Brodsky, the Judgment Debtor in the above-referenced case, owns certain stock which your institution holds and manages as a transfer agent/third-party administrator.

Therefore, I have enclosed an Information Subpoena with Restraining Notice, accompanying Information Subpoena Questionnaire (original and copy), and a prepaid addressed envelope for you to respond to the Information Subpoena Questionnaire **within seven days** of receipt of this letter.

Please note that pursuant to the New York Civil Practice Law and Rules, your institution is prohibited from making any sale, assignment, transfer of, or any interference with any of the property, such as shares of stock and dividends, specified in the enclosed Information Subpoena with Restraining Notice.

Please contact me at (212) 306-5261 or isuh@nyccfb.info if you have any questions or need additional time to respond to the Information Subpoena Questionnaire.  Thank you.

Sincerely,

Jhee G. Suh
Associate Counsel

Enc.

173

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- X
In the Matter of the Application of                               :

MERYL BRODSKY, MARK FEINSOT, and ELECT        :        Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,           :
                                                                       :        Hon. Eileen A. Rakower
                          Petitioners/Judgment Debtors,    :

V.                                                                    :

NEW YORK CITY CAMPAIGN FINANCE BOARD,   :

                          Respondent/Judgment Creditor.  :

------------------------------------------------------------------- X

## INFORMATION SUBPOENA WITH RESTRAINING NOTICE

Jihee G. Suh, Associate Counsel
Hillary Weisman, Deputy General Counsel
Sue Ellen Dodell, General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006

*Attorneys for Respondent/Judgment Creditor*
*New York City Campaign Finance Board*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- X
In the Matter of the Application of                               :

MERYL BRODSKY, MARK FEINSOT, and ELECT        :        INFORMATION SUBPOENA
MERYL BRODSKY TO CITY COUNCIL 2005,              :        with RESTRAINING NOTICE

            Petitioners/Judgment Debtors,   :

v.                                                               :        Index No. 118316/06

NEW YORK CITY CAMPAIGN FINANCE BOARD,        :        Hon. Eileen A. Rakower

           Respondent/Judgment Creditor.   :

-------------------------------------------------------------- X


RE:    Meryl Brodsky

THE PEOPLE OF THE STATE OF NEW YORK

To: Computershare

          Address:      250 Royall Street
                        Canton, MA 02021
                        Attn: Legal Department

GREETINGS:

      WHEREAS, in the above entitled action between Petitioners Meryl Brodsky, Mark

Feinsot, and Elect Meryl Brodsky to City Council 2005 (the "Committee") (collectively,

"Petitioners") and Respondent New York City Campaign Finance Board (the "Board"), a

judgment was entered in the Supreme Court of the State of New York, New York County,

on August 31, 2009, in favor of Respondent Board, judgment creditor, and against

Petitioners, including Meryl Brodsky ("Brodsky"), judgment debtor, in the aggregate

amount of $35,850, of which $11,875 remains due and unpaid.

WHEREAS, it is believed that you are in the possession or custody of certain property in which the judgment debtor has an interest, to wit: shares of stock of Exxon Mobil Corporation and Eastman Kodak Company owned and/or co-owned by Meryl Brodsky (of 150 East 61ˢᵗ Street, NY, New York or 372 Central Park West, NY, New York) and/or dividends that Exxon Mobil Corporation and Eastman Kodak Company have paid and/or owes Meryl Brodsky.

WHEREAS, no previous restraining notice has been served upon you concerning this judgment pursuant to Article 52 of the Civil Practice Law and Rules.

NOW TAKE NOTICE, that pursuant to CPLR § 5222(b), a copy of which is set forth below, you are hereby forbidden to make or suffer any sale, assignment, or transfer of, or any interference with, any property of the judgment debtor or pay over or otherwise dispose of any debt to the judgment debtor to any person other than the sheriff, except under direction of the sheriff or pursuant to order of the court, until the expiration of one year after this notice is served upon you, or until the judgment is satisfied or vacated, whichever event occurs first:

<u>SECTION 5222(b) OF THE CIVIL PRACTICE LAW AND RULES</u>

(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest, or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including

2

any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i) of this section. Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs. A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

TAKE FURTHER NOTICE THAT WE COMMAND YOU, to answer in writing under oath, separately and fully, each question in the questionnaire accompanying this subpoena, each answer referring to the question to which it responds, and that you return the answers together with the original of the questions within seven (7) days after your receipt of the questions and this subpoena.

TAKE FURTHER NOTICE, THAT DISOBEDIENCE OF THIS INFORMATION SUBPOENA WITH RESTRAINING NOTICE OR FALSE SWEARING OR FAILURE TO COMPLY WITH THIS INFORMATION SUBPOENA WITH RESTRAINING NOTICE IS PUNISHABLE AS A CONTEMPT OF COURT.

I hereby certify that this information subpoena with restraining notice complies with CPLR § 5224 and that I have a reasonable belief that the party receiving this information subpoena with restraining notice has in its possession information about the judgment debtor that will assist the judgment creditor in collecting the judgment.

3

WITNESS, Honorable Eileen A. Rakower one of the justices of the New York

State Supreme Court, at the courthouse in the County of New York, on April 7, 2010.

Dated: New York, New York
       April 7, 2010

_____
Jihee G. Suh, Associate Counsel
Hillary Weisman, Deputy General Counsel
Sue/Ellen Dodell, General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, NY 10006
(212) 306-7100

*Attorneys for the Judgment Creditor*
*New York City Campaign Finance Board*

4

178

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- X
In the Matter of the Application of                            :

MERYL BRODSKY, MARK FEINSOT, and ELECT        :        Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,              :

              Petitioners/Judgment Debtors,     :        Hon. Eileen A. Rakower

v.                                                                           :

NEW YORK CITY CAMPAIGN FINANCE BOARD,       :

              Respondent/Judgment Creditor.    :

-------------------------------------------------------------------- X

## QUESTIONNAIRE IN CONNECTION WITH INFORMATION SUBPOENA WITH RESTRAINING NOTICE

Jihee G. Suh, Associate Counsel
Hillary Weisman, Deputy General Counsel
Sue Ellen Dodell, General Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006

*Attorneys for Respondent/Judgment Creditor
New York City Campaign Finance Board*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------- X

In the Matter of the Application of                          :

MERYL BRODSKY, MARK FEINSOT, and ELECT        :          Index No. 118316/06
MERYL BRODSKY TO CITY COUNCIL 2005,            :

       Petitioners/Judgment Debtors,   :          Hon. Eileen A. Rakower

              :          **QUESTIONNAIRE**
v.                                                          :          **in connection with**
              :          **INFORMATION SUBPOENA**
NEW YORK CITY CAMPAIGN FINANCE BOARD,          :          **WITH RESTRAINING**
              :          **NOTICE**
      Respondent/Judgment Creditor.    :
              :          Regarding:  Meryl Brodsky
              :          (Judgment Debtor)
              :

---------------------------------------------------------------- X

**Pursuant to the attached information subpoena with restraining notice, you are hereby commanded to answer in a signed, notarized writing, separately and fully, the following questions:**

1) Does Judgment Debtor Meryl Brodsky own shares of stock of Eastman Kodak Company (hereinafter "Kodak")?  If so:

 a)  What is the current total value of Ms. Brodsky's holdings in Kodak?

 b)  How many shares does Ms. Brodsky currently own?

 c)  Since when has Ms. Brodsky owned the shares?

 d)  Are Ms. Brodsky's shares held by Kodak in book entry form?  If so, what is the name and contact information of the individual and/or third-party administrator holding the shares in book entry form?

 e)  Who is holding Ms. Brodsky's Kodak stock certificates – Ms. Brodsky, Kodak or a third-party administrator?  If the stock certificates are being held by Kodak or a third-party administrator, what is the name and contact information of the individual holding the stock certificates for Ms. Brodsky?

 f)  How many shares did Ms. Brodsky own as of March 31, 2010?

 g)  How many shares did Ms. Brodsky own as of February 28, 2010?

 h)  How many shares did Ms. Brodsky own as of January 31, 2010?

i) Since January 1, 2009, has Kodak paid any dividends to Ms. Brodsky? If so, what is the date and amount of each dividend payment?

j) Has Ms. Brodsky elected to reinvest her dividends for additional purchases of Kodak stock? If so, what percentage of her dividends has she elected to reinvest?

k) Since August 31, 2009, has Ms. Brodsky sold any shares and/or purchased additional shares of Kodak? If so, what is the date and amount of shares involved in each transaction?

l) What is Meryl Brodsky's account number and/or investor identification number for her Kodak holdings?

m) Does she own any shares jointly with Carol Brodsky and/or Charlee Mae Brodsky? If so, how many shares does she currently own jointly? Who are the joint owners?

2) If the answer to Question No. 1 of this questionnaire is "no":

a) Has Meryl Brodsky ever owned shares of stock of Kodak? When?

b) When did she sell all of her remaining shares? How many shares did she sell?

c) When did she close her account?

3) Does Judgment Debtor Meryl Brodsky own shares of stock of ExxonMobil Corporation (hereinafter "Exxon")? If so:

a) What is the current total value of Ms. Brodsky's holdings in Exxon?

b) How many shares does Ms. Brodsky currently own?

c) Since when has Ms. Brodsky owned the shares?

d) Are Ms. Brodsky's shares held by Exxon in book entry form? If so, what is the name and contact information of the individual and/or third-party administrator holding the shares in book entry form?

e) Who is holding Ms. Brodsky's Exxon stock certificates – Ms. Brodsky, Exxon or a third-party administrator? If the stock certificates are being held by Exxon or a third-party administrator, what is the name and contact information of the individual holding the stock certificates for Ms. Brodsky?

f) How many shares did Ms. Brodsky own as of March 31, 2010?

g) How many shares did Ms. Brodsky own as of February 28, 2010?

h) How many shares did Ms. Brodsky own as of January 31, 2010?

2

i) Since January 1, 2009, has Exxon paid any dividends to Ms. Brodsky? If so, what is the date and amount of each dividend payment?

j) Has Ms. Brodsky elected to reinvest her dividends for additional purchases of Exxon stock? If so, what percentage of her dividends has she elected to reinvest?

k) Since August 31, 2009, has Ms. Brodsky sold any shares and/or purchased additional shares of Exxon? If so, what is the date and amount of shares involved in each transaction?

l) What is Meryl Brodsky's account number and/or investor identification number for her Exxon holdings?

m) Does she own any shares jointly with Carol Brodsky and/or Charlee Mae Brodsky? If so, how many shares does she currently own jointly? Who are the joint owners?

4) If the answer to Question No. 3 of this questionnaire is "no":

a) Has Meryl Brodsky ever owned shares of stock of Exxon? When?

b) When did she sell all of her remaining shares? How many shares did she sell?

c) When did she close her account?

5) If the Judgment Creditor executes a levy on the shares of Kodak and Exxon stock owned by Meryl Brodsky, to whom at Computershare should the Judgment Creditor send the execution of the levy?

6) Are you aware of any other assets possessed by Meryl Brodsky? If so, please describe these assets.

**False swearing or failure to comply with this information subpoena with restraining notice and information subpoena questionnaire is punishable by contempt of court.**

Return to Judgment Creditor:

New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006
Attn: Jihee Suh, Associate Counsel

3

BNY Mellon Shareowner Services
P.O. Box 358333
Pittsburgh, PA 15252-8333

**BNY MELLON**
SHAREOWNER SERVICES

September 21, 2010

MERYL BRODSKY
372 CENTRAL PARK W APT 10U
NEW YORK NY 10025

| Company Name | EXELON CORPORATION GENERAL ELECTRIC COMPANY ALCATEL-LUCENT CITADEL BROADCASTING COMPANY |
| --- | --- |
| Account Key | BRODSKY--MERY-0000 |
| Control Number | ▇▇▇▇▇▇▇▇▇ |
| Telephone Number | 800-626-8729 |

Dear Investor:

Thank you for your recent request for assistance with the above referenced account(s).

Please be advised that a Notice and Execution/Levy has been forwarded to us for handling from New York City Campaign Finance Board. As per the request we have removed the block from the account.

Also note that, we have reissued the outstanding checks which you will receive within 7-10 business days.

Thank you for the opportunity to assist you. As a reminder, you may access our Investor ServiceDirect Web site at www.bnymellon.com/shareowner/isd or call our automated voice response system at the above number for account information and to initiate certain transactions. You may also choose to speak with one of our Customer Service Representatives who are available from 9 a.m. until 7 p.m. on Monday through Friday.

Sincerely,

BNY Mellon Shareowner Services

Page 1 of 1

BNY Mellon Shareowner Services
P.O. Box 358333
Pittsburgh, PA 15252-8333

BNY MELLON
SHAREOWNER SERVICES

October 1, 2010
MERYL BRODSKY &
CAROL BRODSKY JT TEN
150 E 61 ST APT 11K
NEW YORK NY 10065-8527

NEW YORK CITY
CAMPAIGN FINANCE BROAD
ATTN: JIREE SUH
40 RECTOR ST
NEW YORK NY 10016

| | |
|---|---|
| Company Name | CITADEL BROADCASTING CORPORATION ALCATEL-LUCENT |
| Account Key | BRODSKY--MERY-0100 |
| Control Number | ████████ |
| Telephone Number | 800-522-6645 |

RE: ACCTS R/N/O MERYL BRODSKY &
CAROL BRODSKY JT TEN

Dear Investor:

Thank you for your inquiry requesting information for this account.

Please be advised, as per your written request to release the restraint or any turnover of Meryl Brodky's assets, BNY Mellon Shareowner Services has completed this process for Citadel Broadcasting Corporation Alcatel-Lucent registered in the name of Meryl Brodsky.

We hope you find this information helpful. If you have additional questions, you may choose to speak with one of our Customer Service Representatives who are available from 9 a.m. until 7 p.m. on Monday through Friday at the above number.

Sincerely,

BNY Mellon Shareowner Services

# MERYL BRODSKY

### 150 EAST 61ST STREET, #11-K
### NEW YORK, NEW YORK 10065
### TELEPHONE/FAX: (212) 866-2105
### EMAIL:

October 16, 2010

BNY Mellon Shareowner Services
Post Office Box 358333
Pittsburgh, PA 15252-83333

      Re:  Levy and Release of Shareholder Accounts of Meryl Brodsky

Dear Sir or Madam:

      I am in receipt of two (2) letters from your offices attached (Control Nos.
████████████████ and ████████████████) regarding a Notice and Execution/Levy that has been
forwarded to you for handling by the New York City Campaign Finance Board, c/o Jihee Suh.
You have informed me that you will remove the blocks on the accounts of the following stocks:
Exelon Corporation and General Electric Company (Investor I.D. ███████████); and the joint
accounts of Meryl and Carol Brodsky of Alcatel-Lucent; Citadel Broadcasting Company.

      Pursuant to NYCPLR 3120, I would appreciate if you could mail or fax a copy of
Suh's correspondence regarding the levy and release of any accounts of Meryl Brodsky and
Meryl and Carol Brodsky to the above address or fax number.

      I regret that the Respondent Jihee Suh may have caused you, a nonparty, both
harassment and expense.

                       Yours truly,

                       *Meryl Brodsky*

                       Meryl Brodsky

Attachments


The Walt Disney Company

January 13, 2011

Meryl Brodsky &
Carol Brodsky  Jt Ten
150 E 61 St    Apt 11K
New York   NY  10065

Re:  Account # ▓▓▓▓▓  Meryl Brodsky & Carol Brodsky  Jt Ten

Dear Shareholder:

Per our telephone conversation this morning, I have enclosed a photocopy of the document we received in order to remove the stop order from your certificates.

Thank you for your interest in The Walt Disney Company.  If you have any additional questions please contact our office at (818) 553-7200.

Sincerely,

*Lindi Busenbark*

Shareholder Services


Encl.

500 South Buena Vista Street, Burbank  California 91521-9722
Tel 818.553.7200  Fax 818.553.7210

© Disney

SCHONFELD & WEINSTEIN, L.L.P.

ATTORNEYS AT LAW
80 WALL STREET
SUITE 815
NEW YORK, NEW YORK 10005
WWW.SCHONFELD-WEINSTEIN.COM

SAMUEL P. SCHONFELD (1927-1964)
JOEL SCHONFELD
ANDREA I. WEINSTEIN*
MARK A. MACRON*
*ALSO ADMITTED IN NEW JERSEY

TELEPHONE
(212) 344-1600

FAX
(212) 480-0717

E-MAIL
joel@schonfeld-weinstein.com
andrea@schonfeld-weinstein.com
keywvan@schonfeld-weinstein.com

February 7, 2011

Sheriff of The City of New York
County of New York
66 John St.
13th Floor
New York, New York 100038

    RE:  Sheriffs Case # 10013826
        Meryl Brodsky

Dear Sir:

Please be advised that our firm resents Meryl Brodsky and has been representing Merrill Brodsky for a period of time.

My client wrote to you on December 28, 2010. A copy of the letter is annexed hereto.

To date we have not received any reply to this letter. I would greatly appreciate your answering my client's letter.

Very truly yours,

Joel Schonfeld

Encl.

JS/ss

MERYL BRODSKY
150 EAST 61ST STREET, #11-K
NEW YORK, NEW YORK 10065
TELEPHONE/FAX: (212) 866-2105
EMAIL:

December 28, 2010

PERSONAL AND CONFIDENTIAL

BY CERTIFIED MAIL

Office of the New York City Sheriff
Law Enforcement Bureau
66 John Street-13th Floor
New York, New York 10038

Re:  Sheriff's Case No. 10013825

Dear Sir or Madam:

Pursuant to NYCPLR 3120 and as a result of pending litigation against Jihee Suh and the New York City Campaign Finance Board at the NYS Appellate Division, First department, I require information regarding the turnover of 223 shares of ExxonMobil stock to the New York City Sheriff on or about July 2010. Due to conflicting information, I seek answers to any or all of the following questions. If it is in the purview of the NYC Sheriff's Office to allow petitioner to examine the file, please inform me at your earliest convenience. I can be represented by counsel in this request and will do so if necessary. Please supply answers to any, or all of the following questions and return to: Meryl Brodsky, 150 East 61st Street, #11-K, New York, New York 10065; Phone: 212-866-2105:

1) if 223 shares of ExxonMobil stock were transferred to the NYC sheriff and the exact date that such transfer took place;
2) if said stock was sold by the NYC Sheriff the exact date of execution of the sale of stock and value of the liquidated shares;
3) a copy of the NYC Sheriff's orders and copies of any stock transactions that were obtained;
4) the authorized representative of any depository to which the monies were transferred and the exact date of such transference;
5) if the stock was returned to any respondent at the NYC Campaign Finance Board, the name and address of such person to whom the monies were delivered and the date such delivery was made;
6) the exact amount of Sheriff's fees and costs that were attached to the liquidated value of the stock seized by the Sheriff; any related documents to the present date.

188

Office of the New York City Sheriff
December 28, 2010

      Please refer to the abovementioned Sheriff's Control Number for reference. You may forward the required information to the above address within a reasonable amount of time as well as an invoice for the cost of reproduction of any copies of the requested information. Thank you.

Yours truly,

Meryl Brodsky

# EXHIBIT F

Li Zhuang

From:    Iris Roberts [IRROBERT@courts.state.ny.us]
Sent:    Friday, June 11, 2010 2:54 PM
To:      Jihee Gillian Suh
Cc:      rsikorski@bussonsikorski.com; li@schonfeld-weinstein.com
Subject: Re: Brodsky et al v. NYC Campaign Finance Board - clarification requested

The appearance is on the papers only, you don't have to come to court. Have a great weekend.

Iris

>>> "Jihee Gillian Suh" <JSuh@NYCCFB.INFO> 6/10/2010 11:47 AM >>>
Dear Ms. Roberts,
I am writing to seek clarification on the notices we received via Ecourts concerning a court appearance
date on June 15, 2010.  We understand from the conference this past Tuesday that Brodsky's
opposition to the Order to Show Cause for a turnover order is due on June 15.  Is a court hearing
scheduled for that date?  Having a hearing on the same date would preclude us from being able to
review the opposition papers in advance.  Additionally, we have a scheduling conflict -- both Hillary
Weisman and I, the attorneys handling the Brodsky matter for the NYC Campaign Finance Board, are
scheduled to be out of the office on June 15.
Thus, please clarify whether the June 15 date is a hearing date, or return date only for Brodsky's
opposition papers.  Thank you.
Please note that I have cc'd the attorneys representing the other parties on this e-mail.
Best regards,
Jihee Gillian Suh
Associate Counsel
New York City Campaign Finance Board
40 Rector Street, 7th Floor
New York, New York 10006
Tel: (212) 306-5261
E-mail: jsuh@nyccfb.info

Confidentiality Notice: This e-mail communication, with any attachments, is confidential, and may
contain information that is privileged, attorney work product, or exempt from disclosure under applicable
law. It is for the exclusive use of the recipient(s) named above. If you are not an intended recipient, or
the employee or agent responsible to deliver this communication to an intended recipient, you are

EX PARTE MOTION OFFICE

MS #4

QS

**APPROVED FOR THE PAYMENT OF MOTION FEE ONLY**

Petitioner Mark Feinsot Order to Show Cause and Quash the Subpoena Duces Tecum dated April 23, 2010 and Stipulation to Postpone hearing because Respondent was on vacation until June 8, 2010

At the IAS Part 15 of the New York Supreme Court New York County, at 80 60 Centre Street, New York, New York, (pp 189-206)   009591

April 21 2010

Present: Hon. **HON. EILEEN A. RAKOWER**

-------------------------------------------------x

In the Matter of the Application of

Index No. 118316/2006

MERYL BRODSKY, MARK FEINSOT and
ELECT MERYL BRODSKY TO CITY COUNCIL 2005

Petitioners

-against-

**ORDER TO SHOW CAUSE**

NEW YORK CITY CAMPAIGN FINANCE BOARD

**FEE PAID**

APR 2 0 2010

NEW YORK
COUNTY CLERK'S OFFICE

Respondent

-------------------------------------------------x

Upon the Affidavit of Mark Feinsot, sworn to on April 19, 2010, and the Exhibits annexed thereto;

LET the Respondent *or counsel appear and* show cause at an IAS Part 15 of this Court to be held at the Courthouse located at 80 60 Centre Street, New York, New York, Room 308 on the 18 day of MAY April, 2010, at 9:30 o'clock in the forenoon of that day or as soon thereafter as counsel can be heard:

Why an order should not be made and entered quashing the *Subpoena Duces Tecum*, directing Mark Feinsot to produce tax returns and documents of Meryl Brodsky to the New York City Campaign Finance Board.

Why such other and further relief as to this Court may seem just and proper should not be entered.

**Ordered** that pending the hearing and determination of this motion, the enforcement of the *Subpoena* is stayed, and it is further

192

**Ordered** that pending the hearing ~~and determination~~ of this motion, the Respondent, New York City Campaign Finance Board, its agents or associates are both barred from proceeding with any enforcement against Mark Feinsot. *and*

Sufficient ~~reason~~ *cause* having been ~~shown~~ *alleged* therefor, let the service of a conformed copy of this order and supporting papers upon which it is granted be good and sufficient if served by hand or Federal Express, next business day delivery, on or before April _23_, 2010 upon attorneys for Respondent, New York City Campaign Finance Board, with offices at 40 Rector Street, New York, New York 10006.

ORAL ARGUMENT
DIRECTED

J.S.C.

_____
Justice Supreme Court

**HON. EILEEN A. RAKOWER**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------- x

In the matter of the Application of

MERYL BRODSKY, MARK FEINSOT and *Cf C.*
ELECT MERYL BRODSKY TO CITY COUNSEL 2005,

           Petitioners,

     -against-

NEW YORK CITY CAMPAIGN FINANCE BOARD,

          Respondent.
--------------------------------------------------------- x

Index No. 118316/2006

**AFFIDAVIT IN SUPPORT
OF ORDER TO SHOW
CAUSE TO QUASH
SUBPOENA**

STATE OF NEW YORK  )
            ) ss:
COUNTY OF NEW YORK )

Mark Feinsot, being duly sworn, deposes and says that:

1.   Your deponent is a petitioner in the above captioned proceeding.


### BACKGROUND OF SUBPOENA, ORDERS AND JUDGMENTS HEREIN


2.   This affidavit is submitted in application for an Order to Show Cause to Quash a Subpoena

    Duces Tecum which was sent to your deponent by certified mail, a copy of which subpoena

    is annexed hereto as Exhibit 'A'.

3.   No subpoena fee was tendered with the subpoena.

4.   The subpoena herein seeks to enforce a Judgment of this court. The initial decision and order

of this court was docketed on June 27, 2007, and a copy of the decision and order attached

hereto as Exhibit 'B'.

5.    A judgment was signed by this court on July 17, 2007, a copy of which is attached hereto as

Exhibit 'C'.

6.    Thereafter, a judgment described as a "Duplicate original of Order Dated July 17, 2007" was

entered on August 31, 2009.  A copy of the alleged 'Duplicate Judgment' is attached hereto

as Exhibit 'D'.

7.    A copy of the letter from the respondent's counsel, which accompanied the subpoena, is

annexed hereto as Exhibit 'E'.


## DOCUMENTS SOUGHT BY THE SUBPOENA


8.    The Subpoena, Exhibit 'A', seeks the production by your deponent, Mark Feinsot, CPA, of

another party's personal individual tax returns of Meryl Brodsky.

9.    Your deponent is in possession of Meryl Brodsky's individual tax returns as her CPA, and

not in relation to the NYC Campaign Finance Board.

10.   The letter accompanying the subpoena, Exhibit 'E', also states that the NYC Campaign

Finance Board is seeking a civil penalty of $470.00 from your deponent.


## THE DOCUMENTS SOUGHT, PERSONAL TAX DOCUMENTS, ARE PROTECTED
## FROM DISCLOSURE BY THE FEDERAL AND STATE LAW


11.   The personal tax returns herein are sought from your deponent not as a part of the underlying

-2-

proceeding; instead the tax returns are sought as part of the attempted enforcement of a judgment.

12. In the court's original judgment, Exhibit 'C', your deponent was relieved from any liability for the $470.00 penalty sought by the NYC Campaign Finance Board, and your deponent has paid, on behalf of the Brodsky To City Council 2005 committee the balance of the committee's funds ($25,975.44), for the reimbursement due to the NYC Campaign Finance Board, under this court's order and decision of $35,415.00. This leaves a balance due to the NYC Campaign Finance Board of $9,439.56.

13. Your deponent is not in possession of any funds of the Brodsky committee, and your deponent has no knowledge of any other funds of the campaign committee which is available to make this payment, and under the earlier order of this court, your deponent has no liability as a party or otherwise to the NYC Campaign Finance Board.

14. As your deponent has no personal liability to the Respondent, as to documents sought under the subpoena, your deponent is being subpoenaed as another party's personal accountant.

15. Client tax records in the possession of an accountant are protected from disclosure under both federal and state law, including NYS Tax law §1831 and IRC §7216.

16. To make matters worse for an accountant or other party who discloses tax records of a taxpayer IRC 7525 (a), the act of improper disclosure is a misdemeanor, IRC 7216 (a)(2). This is in the nature of an attorney violating a client's privilege. A client or a taxpayer alone, not the attorney or accountant, has control over this information. The accountant can not be forced to disclose this information except in exceptional circumstances (usually criminal proceedings, IRC 7525 (2)), and even then only under court order.

-3-

17. Under NYS Tax law §3038 (2), the accountant who disclosed a person's tax information would be liable for civil damages.

18. Such exceptional circumstances do not include third party debt collection.

## IN THE INSTANT PROCEEDING, SERVICE WAS NOT MADE IN ACCORDANCE WITH THE CPLR

19. In the instant proceeding, the debt collection was not against the accountant for any funds owed by him, so this was an attempt to collect a debt from a third party. The service of the subpoena was not personal on the accountant, and there was no subpoena fee. This results in a defective and unenforceable subpoena.

## THE TWO JUDGMENTS SOUGHT TO BE ENFORCED ARE IN CONFLICT

20. The two judgments, copies of which are attached, are described in the second order as "Duplicate original of order dated July 17, 2007". Yet, both orders are different from each other. This raises the question as to whether the second order can be enforced. It is claimed to be a duplicate, yet it clearly is not. It seems that only the first judgment can be enforced, as it is the original, and the other judgment should be vacated.

21. As for the documents sought in paragraph (2) and (3) of the subpoena, these are documents while not tax returns, they would be related to the preparation of tax returns, and therefore they would be similarly protected. Regardless, your deponent does not have any records from the Taxpayer (Ms. Brodsky's) brokers or statements concerning the Taxpayer's

-4-

individual stocks.

22. No prior request has been made for the relief sought herein.

**WHEREFORE,** the subpoena compelling Mark Feinsot to deliver documents should be quashed as it violates protections and privileges created by the Internal Revenue code and the New York State tax Law.

*Mark Feinsot*

Mark Feinsot

Sworn to before me this
19th day of April, 2010

**BERENICE BUSSON**
NOTARY PUBLIC, State of New York
No. 01BU6060765
Qualified in New York County
Commission Expires July 2, 2011

-5-

# EXHIBIT A