UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERYL BRODSKY

                    Plaintiff, Pro Se

              -against-

THE NEW YORK CITY CAMPAIGN FINANCE BOARD,
BY HILLARY WEISMAN, GENERAL COUNSEL,
ZACHARY W. CARTER, CORPORATION COUNSEL,
THE CITY OF NEW YORK AND THE NEW YORK CITY
SHERIFF (NONPARTY)

                    Defendants.

**17-CV-3186 (AJN)(JLC)**

# AMENDED MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Submitted by:

Meryl Brodsky, Plaintiff Pro Se
150 East 61st Street, Apt. 11-K
New York, N.Y. 10065
(212) 866-2105; meryl7@verizon.net

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/30/17

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Contents…………………………………………………………………………  i

Table of Authorities………………………………………………………………………  ii

I – PRELIMINARY STATEMENT………………………………………………………  1

II – PROCEDURAL HISTORY……………………………………………………………  2

III – STATEMENT OF FACTS IN OPPOSITION……………………………………………  3

IV – ARGUMENT……………………………………………………………………………  16

    LEGAL STANDARD – FED. R. CIV. P. 15(a)(2)…………………………………  16

    POINT I – PLAINTIFF HAS A VALID 26 U.SC. § 7431(a)(2) CLAIM……………  16

    POINT II – THE RES JUDICATA CLAIM IS FALSE………………………………  17

    POINT III – STATUTE OF LIMITATIONS, § 7431(d)……………………………  20

    POINT IV – FRAUD CLAIMS AND DAMAGES, § 7431( c)………………………  22

CONCLUSION …………………………………………………………………………  25

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153 (9th Cir. 2012)............19, 20, 21, 22

*Barrett v. United States*, 51 F.3d 475 (5th Cir. 1995)....................................................17

*Bleavins v. United States*, 1991 U.S. Dist. LEXIS 20975, at **3-4 (C.D. Ill. 1991)...............17

*Brodsky v. N.Y.C. Campaign Fin. Bd.*, 107 A.D.3d 544 (1st Dep't 2013),
 2013 N.Y. App. Div. LEXIS 4552.......................................................... .5, 14, 15

*Brodsky v. N.Y.C. Campaign Fin. Bd.*,  15-cv-3469, 2015 U.S. Dist. LEXIS 169104,
 at *26 (S.D.N.Y. 2015)..................................................................................  18

*Brodsky v. Carter*,  No. 16-1283-cv (2d Cir. 2016)   ............................................... 15, 17

*Charney v. Zimalist*  07-CV-6272  (S.D.N.Y. 2016)..................................................... 19

*Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999)........................................23

*Faison v Lewis*, 2015 NY Slip Op. 04026.................................................................. 23

*Fedele  v. Harris*, 69 F. Supp. 3d 313 (N.D.N.Y 2014)..................................................23

*Gates v. Wilkinson*, No. 03-CV-763  (N.D.N.Y. 2005)..................................................18

*In re Rae*, 436 B.R. 266 (Bankr. D. Conn. 2010)........................................................ 18

*Jones v. U.S.*, 9 F. Supp. 2d 1119 (D. Neb. 1998)...................................................... 23

*Kaufman v. Kaufman*, 135 A.D.2d 786, 522 N.Y.S.2d 899 (2d Dep't 1987)...................... 23

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 400 F.3d 139 (2d Cir. 2005)......................19

*Lopez Torres*, 552 U.S. 196................................................................................. 4, 11

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160 (2d Cir. 2015).....  16

*Maggio v. Hynes*, 423 F. Supp. 144 (E.D.N.Y. 1976)................................................. 18

*Mallas v. U.S.,* 993 F.2d 1111(4th Cir. 1993)......................................................... 23

*May v. United States*, 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. 1992)................... 17

*McLarty v. U.S.*, 741 F. Supp. 751(D. Minn. 1990) ................................................... 23

*Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313 (S.D.N.Y. 2015)………………………….. 19

*Merck & Co. v. Reynolds,* ___US___, 130 S. Ct. 1784 (2010)…………………………12, 20, 23

*Minda v. U.S.,* No. 15-3964 (2d Cir. 2017)…………………………………………………….. 23

*O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142 (E.D.N.D. Ohio 1949)………………………. 18

*Olsen v. Egger*, 594 F. Supp. 644 (S.D.N.Y. 1984)…………………………………………... 16, 18

*Payne v. U.S.*, 383 Fed. Appx. 483 (5th Cir.2010)……………………………………………   23

*Proctor II,* 2011 WL 2976911………………………………………………………………   19

*Proctor v. LeClaire*, 846 F.3d 597  (2d Cir. 2017)…………………………………………   19

*Ravo v. Rogatnick*, 70 N.Y.2d 305 (1987)…………………………………………………….19

*Rorex v. Traynor*, 771 F. 2d 383 (8th Cir. 1985)…………………………………………… 23

*Rueckert v. IRS*, 775 F.2d 208 (7th Cir. 1985) …………………………………………… 21

*Schaeffler v. US*, 806 F. 3d 34 (2d Circuit 2015)…………………………………………… 19

*Schipper v. U.S.*, 1996 WL 651082, at *4 (E.D.N.Y. 1996)…………………………………… 23

*Siddiqui v. U.S.*, 359 F.3d 1200 (9th Cir. 2004)……………………………………………… 23

*Siler v. 146 Montague Assocs.*, 228 A.D.2d 33 (2d Dep't 1997)……………………………… 19

*Sinicki v. U.S. Dept of Treasury*, No. 97-civ-0901, 1998 U.S. Dist. LEXIS 2015
   (S.D.N.Y.  1998)…………………………………………………………………………… 23

*Snider v. U.S.*, 468 F.3d 500 (8th Cir. 2006) ……………………………………………… 23

*St. Regis Paper Co. v. U.S.*, 368 U.S. 208 (1961)……………………………………………… 18

*United States v. O'Mara,* 122 F. Supp. 399 (D.C.D.C. 1954)....................................................... 18

*US v. Adlman*, 134 F. 3d 1194  (2d Cir. 1998)……………………………………………… 19

*Wilkerson v. U.S.*, 67 F.3d 112 (5th Cir. 1995)……………………………………………… 23

**Statutes**

26 U.S.C. § 6103……………………………………………………………..  13, 15, 16, 17, 18, 21

26 U.S.C. § 6103(a)……………………………………………………………………18

26 U.S.C. § 6103(b)………………………………………………………………….....6

26 U.S.C. § 6103(i)(1)……………………………………………………………………18

26 U.S.C. § 7213……………………………………………………………………  18

26 U.S.C. § 7216(a)(2)……………………………………………………………… 13

26 U.S.C. § 7431…………………………………………………   13, 15, 16, 17, 21, 23

6  U.S.C. § 7431(a)(2)………………………………………   1, 6, 16, 17, 18, 19, 20, 24

26 U.S.C. § 7431(a)(2), (c)…………………………………………………………5, 20

26 U.S.C. § 7431( c)………………………………………………………… 20,  23

26 U.S.C. § 7431(c)(1)(B)(i)(ii),(2),(3)………………………………………   6, 21

26 U.S.C. § 7431(a)(2), (c), (d)…………………………………………… . 15, 22, 25

26 U.S.C. § 7431( c)(1)(B),(2),(3), (d)…………………………………………6, 8, 25

26 U.S.C. § 7431(d)………………………………………………… 20, 21, 22, 23

26 U.S.C. § 7525(a)……………………………………………………………… 13

26 U.S.C. § 7525(2)……………………………………………………………… 14

28 U.S.C. § 1331…………………………………………………………………  1

28 U.S.C. § 1340…………………………………………………………………1, 16

28 U.S.C. § 1367(a)………………………………………………………………1 , 16

28 U.S.C. § 1391(b)………………………………………………………………  1

§ 28 U.S.C. § 1746………………………………………………………………  6

ECF Rules 9.1 and 9.2……………………………………………………  2

Fed. R. Civ. P. 5(b)……………………………………………………………  2

Fed. R. Civ. P. 9(b)……………………………………………………………… 24

Fed. R. Civ. P. 12(b)(6)………………………………………………………  15

Fed. R. Civ. P. 15(a)(1)..................................................................... 3

Fed. R. Civ. P. 15(a)(2)...............................................................1, 16

Fed. R. Civ. P. 26 ............................................................... 23

Fed. R. Civ. P. 34 ............................................................... 18

Fed. R. Civ. P. 40.2............................................................... 18

Local Rule 32.1.1................................................................... 1

Local Rule 56.2.................................................................... 1

2d Cir. R. § 0.23( c)(2)........................................................... 1

**State and City Statutes**

NYCPLR § 213(8)...................................................1, 16, 21, 23, 24

NYCPLR § 1402.................................................................. 19

NYCPLR § 3120 ....................................................... ......12, 13

NYCPLR § 5015(a)(2) and (3)......................................... 14

NYCPLR § 5021(4)(B)..............................................7, 8

NYS Election Law, § 14-130.......................................... 3

**References**

IRS Disclosure & Privacy Law Reference Guide
(Publication 4639 (Rev. 10-2012)
https://www.irs.gov/pub/irs-pdf/p4639.pdf........................................................ 15, 26

IRS Form 1099-A (Copy A & B)........................................................ 9

# I- **PRELIMINARY STATEMENT**

Pursuant to Rule 15(a)(2), plaintiff pro se Meryl Brodsky submits this amended motion in opposition to defendant's motion to dismiss plaintiff's amended complaint in its entirety.[1] By Memo Endorsement, dated October 18, 2017, Judge Nathan permitted  plaintiff to "file updated opposition to Defendant's motion to dismiss." The amended motion relies on all of the claims made in plaintiff's previous motion and declaration, dated August 29, 2017, against the New York City Campaign Finance Board by Hillary Weisman, General Counsel, Zachary W. Carter, Corporation Counsel, the City of New York and the New York City Sheriff (non-party).

Here, the defendant being sued is the New York City Campaign Finance Board by Hillary Weisman represented by the NYC Corporation Counsel. The NYC Sheriff, not being sued, is a nonparty.    Plaintiff has personal and subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which vests authority over questions of federal law; 28 U.S.C. § 1340 for violations of the Internal Revenue Code, § 7431(a)(2); and 28 U.S.C. § 1367(a) providing supplemental jurisdiction over State law pursuant to NY CPLR § 213(8) for fraudulent execution of private property. Pursuant to 28 U.S.C. § 1391(b), events occurred in NYC which venue is the Southern District of New York.

Defendant's motion, p. 1, filed August 17, 2017 (Dkts. 11-13), and letter filed October 16, 2017 (Dkt. 21) cite a Summary Order (Local Rule 32.1.1.; 2d Cir. R. § 0.23( c)(2)), *"Brodsky v. Carter,* 15-CV-3469, 2015 U.S. Dist.  LEXIS 169104 (S.D.N.Y., Dec. 15, 2015), *adopted by,* 2016 U.S. Dist. LEXIS 40461 (S.D.N.Y. Mar. 28, 2016), *aff'd* 673 F. App'x   42 (2d 2016)(hereafter singly and collectively referred to as *"Brodsky 1"*)," however, defendant's letter, p. 2, *cites,* "*Brodsky v. N.Y.C. Campaign Fin. Bd.,* 673 F. App'x 42, 44 (2d Cir. 2016)." Plaintiff's amended complaint, ¶ 1, motions and declaration cite the Summary Order differently. Google Scholar states, "We could not determine how this case has been cited."

---

[1] **To date, defendant has *not* mailed Brodsky a Local Rule  56.2 Notice required if  plaintiff is pro se.**

## II – **PROCEDURAL HISTORY**

This action commenced on May 1, 2017 by the filing of the Summons and Complaint (Dkt. 1), personally served on the defendant, New York City Campaign Finance Board on May 25, 2017 by hand to the NYC Corporation Counsel and filed on May 30, 2017 (Dkt. 5).

Defendant, represented by Agnetha E. Jacob, Assistant Corporation Counsel of the City of New York, moved to dismiss the complaint on August 17, 2017 (Dkts. 11-13). Plaintiff filed a motion and declaration in opposition to defendant's motion to dismiss on August 29, 2017 (Dkts. 15-16). By Order of the Court (AJN)(Dkt. 14), dated August 21, 2017, plaintiff was allowed to file an amended complaint on September 18, 2017 (Dkt. 17), effecting service by ECF (Rules 9.1 and 9.2) pursuant to Fed. R. Civ. P. 5(b).  Defendant was required to file a reply, a new motion to dismiss or a letter stating that it relies on the initially filed motion to dismiss within 14 days.

By Order of the Court, dated September 22, 2017 (Dkt. 18), defendant's deadline to answer the amended complaint was stayed pending a letter by plaintiff filed on September 26, 2017 (Dkt. 19), confirming that she wished to proceed with her amended complaint rendering defendant's motion to dismiss moot.  Further, by Memo Endorsement (AJN), dated October 12, 2017 (Dkt. 20), the Court accepted plaintiff's complaint, moving the deadline for any response by defendant to October 16, 2017. The Clerk of the Court was directed to terminate defendant's motion to dismiss (Dkt. 11) plaintiff's prior complaint  (Dkt. 5) as moot.

On October 16, 2017, Agnetha E. Jacob, Assistant Corporation Counsel, filed a two-page letter, addressed to Judge Alison Nathan, stating that "Defendant intends to rely on its initially filed motion to dismiss in response to Plaintiff's Amended Complaint."(Dkt. 21) ("Jacob letter" or "Jacob").  As stated by the Court's Memo Endorsement of October 12, 2017 (Dkt. 20), Jacob's motion to dismiss the original complaint (Dkt. 11) was deemed moot. This requires defendant

answer the allegations in plaintiff's amended complaint or file a new motion to dismiss, neither of which defendant has proffered pursuant to Rule 15(a)(1).

On October 18, 2017,  Judge Nathan filed a Memo Endorsement (Dkt. 22), stating, "the Court accepts Defendant's August 17, 2017 motion to dismiss, Dkt. Nos. 11-13, as its response to Plaintiff's Amended Complaint, Dkt. No. 17" further allowing Plaintiff to "file updated opposition to Defendant's motion to dismiss," by October 30, 2017.

Plaintiff's amended complaint (Dkt. 17), states claims rendering liable the New York City Campaign Finance Board by Hillary Weisman and the NYC Corporation Counsel by Zachary W. Carter, for the illegal transfer and  dissemination of Brodsky's tax returns and return information resulting in the  unlawful execution of Brodsky's ExxonMobil stock holdings in the amount of approximately $19,000. Pursuant to  26 U.S.C. § 7341(a)(2) and (c) damages in the amount of the actual loss sustained, legal fees and costs are allowed for unauthorized disclosure or dissemination of private tax return information.

### III- <u>STATEMENT OF FACTS IN OPPOSITION</u>[2]

Plaintiff opposes defendant's initially filed motion and letter to dismiss in response to the amended complaint. Referring to public funds, without citing any law, Jacob states, p. 1, ¶ 2-3:

> Recipients of such funds must exclusively use the funds to further their campaign, and return any unspent funds to the City. Following the 2005 election, the Board audited Plaintiff's campaign and determined that Plaintiff owed the City $35,415 in unspent funds and improper campaign expenditures and levied a $470 penalty for the improper expenditures (the "Determination.")

Brodsky's amended complaint ("amended complaint") states, ¶ 31, "The audit department found all expenditures allowed *without* exception" pursuant to NYS Election Law § 14-130, none were converted to personal use. Contrariwise, Tomassetti and Weisman, legal staff, intentionally confused

---

[2] References: plaintiff's amended complaint, ¶__; plaintiff's declaration, Dec. A-I__; defendant's  motion to dismiss, D.__;  defendant's  declaration, D. Dec.__; defendant's letter to dismiss, "Jacob letter__" or "Jacob__."

the two, alleging "unspent funds" were "improper campaign expenditures," in their "Determination," which Judge Rakower reiterated. Such fraudulent misrepresentation allows the board to expand debt amounts imposed on candidates, revealing the loophole, ¶ 14, board staff uses to collect or execute unlawfully public or private funds to pocket a "portion." In order to hypothecate an additional amount, defendant omits stating the amount of "unspent" funds is $26,010, repaid on July 26, 2007 further lying that *"Plaintiff then paid a portion of the amount owed, but refused to pay the total amount"* until after the Appellate Division's decision of 2008 or 2014. This leads to the specious conclusion that a "portion" of "unspent" funds are not repaid. Suh, Weisman and J. Rakower also colluded *not* to file a satisfaction of judgment. Jacob thus reveals that defendants falsified the "total amount" owed, assuming the board or judge, whom you least suspect, can justify discovering ways to peculate public and private monies: ¶ 12-26, 54-65

> Plaintiff challenged the Determination in state court; it was upheld by the New York State Supreme Court, New York County [ J. Rakower] and ***further upheld on appeal to the Appellate Division, First Department… Plaintiff then paid a portion of the amount owed, but refused to pay the total amount***. (Emp. and matter added)

Accordingly, Brodsky states, ¶ 23:

> By 2013, the scheme unraveled. Where Brodsky had total funds of about $120,000 ($26,000 returned), with no interim spending, the board falsified the total to $188,000, deriving a penalty, 25% over the expenditure limit. Predicated on the percentage of total funds that fell below the limit, $150,000/$120,000 = 5/4, or 25%, it added $38,000 (rounded) to the spending cap ($150,000 x .25 = $37,500). Execution of private monies intended to incur a debt for opposing *Lopez Torres*,[3] concealed since the board lost, ***and cut out a portion for its fraudulent efforts.*** The falsified total also devised to exceed what the prevailing candidate spent over the limit without enforcement:  (Emp. added)

$150,000 + $26,000 + X = $188,000; **X = $12,000; $26,000 + $12,000= $38,000 Penalty Damages =  $9,400 +$2,470 + $1,368 (sheriff's fees, interest) = $13,238**
Plus difference of 223 shares of ExxonMobil at about $80-85/sh.
= approximately **$18-19,000** (plus legal fees)

"Consequently, upon Defendant's motion, by Order dated July 9, 2010," p. 1, ¶ 3, Jacob states:

---

[3] Notions in *Lopez Torres*, 552 U.S. 196, include judges be elected without a screening panel, judges who favor elections receive bonuses, similar to the campaign finance program, deemed unconstitutional by the US Supreme Court. ¶ 21

Justice Eileen Rakower of the New York State Supreme Court, New York County, directed an investor services company called ComputerShare to sell $13,290.40 worth of Plaintiff's Exxon-Mobil shares and remit the proceeds to the City's Sheriff's Office in satisfaction of the remaining amount owed by Plaintiff. Justice Rakower's order authorizing the sale was, on appeal, affirmed by the Appellate Division, First Department,. *Brodsky v. N.Y.C. Campaign Fin. Bd.*, 107 A.D.3d 544 (1st Dep't 2013).

ComputerShare, stock transfer agent for ExxonMobil, would not remit monies to Suh and Weisman, due to a defective subpoena and order, stating they needed a court order. Accordingly, ¶ 166-167, "On or about April 20-1, 2010, a phone conference with ComputerShare's Boston office revealed ComputerShare would not remit the monies to Suh due to a defective order. A nonparty, they did not want liability for adverse claims but advised Brodsky to intervene" for damages. Previously, J. Rakower ordered Brodsky's counsel, Leo Glickman, to submit Brodsky's un-redacted tax returns and return information to Rakower's chambers which documents she subsequently handed to Suh and Weisman on March 23, 2010 representing the illegal dissemination of returns and return information, pursuant to 26 U.S.C. § 7431(a)(2) and (c), Dec. Ex. B, C, D, E.

Decisions of the two state courts referenced by Jacob evince that the campaign treasurer was exempt from the exact same liability imposed on Brodsky, Dec. Ex. F. However, J. Rakower, Weisman and Suh "fixed" it, ¶ 62, by altering the August 31, 2009 order to impose additional liability, revealing that J. Rakower lied. The Appellate Division, First Department, *Brodsky v. N.Y.C. Campaign Fin. Bd.* 107 A.D.3d 544 (1st Dep't 2013) subsequently affirmed that Feinsot was exempt from liability, Dec. Ex. G. J. Rakower, not authorized to disseminate Brodsky's returns, in lieu of Feinsot who would not, improperly executed Brodsky's monies. To conceal fraud on the court, Jacob, on behalf of Weisman, entirely omits NYC Claim #2017LW002809 and facts obtained from the Sheriff that an endorsement/execution for four stocks and XOM check disclosing return information pend as well as $7,917 interest on $26,010, not due. Brodsky claims about $19,000 damages against the NYC Campaign Finance Board for the unlawful dissemination. Dec. Ex. A

5

1. Attached to this amended motion are **Exhibits A –I** of Meryl Brodsky's Declaration, filed August 29, 2017 (Dkt. 16), under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following are true and correct in opposition to defendant's motion to dismiss, filed August 17, 2017 (Dkts. 11-13) and currently against Jacob's letter, dated October 16, 2017, in its entirety, Dkt. 21:

2. Attached as **Exhibit A** [¶ 1-113, 124-125, 137-141, 154-196, 200-252] (Dec. A11-41; Dec. D128-131) are **Exhibits 1-4** of Brodsky's complaint filed on May 30, 2017 (Dkt. 5) and **Exhibit 5** from the NYC Sheriff, dated May 8, 2017 (Dkts. 15, 16). (Jacob 2, ¶ 3)

**Exhibit 1** [¶ 124, 208] - Response of Computershare to Suh's "Questionnaire…with Restraining Notice" of April 7, 2010  containing answers  disseminated in Suh's turnover order, May 14, 2010. The illegal dissemination of return information  and execution of 223 shares of  Brodsky's ExxonMobil stock ("Exxon" or "XOM"), still  in defendant board's possession, represents damages pursuant to 26 U.S.C. § 6103(a) and (b); § 7431(a)(2),  7431(c)(1)(B), 7431(c)(2) and 7431( c)(3):

> Among the largest of Brodsky's stock holdings are over _____ shares of ExxonMobil stock that she purchased directly from the corporation…. Brodsky owns at least____ worth of ExxonMobil shares, which could easily be used to satisfy the judgment… Approximately___ of the over _____ ExxonMobil shares belonging to Brodsky are 'plan shares' held by Computershare in electronic form in an account for Brodsky. See Ex. L (Computershare's Information Subpoena Response) **Exhibit 1** (Dec. A13, D128- 131)

Also included in **Exhibit 1** is correspondence from Computershare to Brodsky,  January 12, 2017, answering her request for the execution check of 223 XOM shares, "we need an approval from the New York City Sheriff's Office as the check is not  payable  in  your  name" (Dec. A15); and Computershare's answer to Brodsky of February 14, 2017,  enclosing a copy of the XOM check (Dec. A16-17).   Since J. Rakower, Suh and Weisman illegally compelled Exxon to transfer Brodsky's private return information to them, then illegally disseminated it on subpoenas and writs of execution, etc.,  attached is  the "Wall Street Journal" price of XOM on 4/29/2017 to assess damages which, to date, represents a range of $80-85 per share. (Dec. A18 ).

6

**Exhibit 2** [¶ 196, 232] – Lieutenant Lopez's correspondence, February 6, 2017 (Dec. A20) in response to Brodsky, January 24, 2017 (Dec. A27), stated, "Pursuant to CPLR 5021(4)(B) enclosed please find a certified copy of the requested execution endorsed 'partially satisfied' (Dec. A24) in the amount of $12,546.04 returned to the New York County Clerk on August 3, 2010." (Dec.A21-24)  Enclosed are copies of the XOM check (Dec.A25); and the Sheriff's Statement of Disbursement. (Dec. A26) However, Weisman and board counsel have not provided proof "if," "when," or "to whom" the check was endorsed, made payable, or deposited.

Attached to the "Writ of Execution" is former board employee Suh's "List of Judgment Debtor Meryl Brodsky's Specified Property Subject to Execution" (Dec. A23 ) endorsed by Suh and Weisman enumerating Brodsky's return information, including General Electric Company, Alcatel-Lucent, Citadel Broadcasting Corporation and Exelon Corporation. Suh had illegally disseminated return information in her turnover order of May 14, 2010, stating, "For example, she owns more than ____ worth of shares in the Walt Disney Company and more than ____ worth of shares in General Electric Company" and "Brodsky recently paid approximately $8,000 in legal fees to oppose the Board's judgment enforcement efforts. See Ex. M (Dep. 111:10-19; 172: 12-13)" [¶ 124-125; Dec. A29]

The return information of XOM stock, c/o Computershare and the "Execution… With Notice to Garnishee," c/o Mellon Investor Services, LLP (Dec.A22) were held at the NY County Clerk and Sheriff's Offices until April 10, 2017 for future execution of Brodsky's holdings. Although the front side of the "Endorsement" attached to the "Execution" was stamped September 7, 2010, the flip side lacks a date.  The Clerk informed Brodsky in February 2017 that board employees would have to re-file writ(s) of execution to Mellon or Exxon. Satisfactions of Judgment were *not* submitted by Suh or Weisman to Mellon Investor Services, LLP, ExxonMobil, c/o Computershare, or any other garnishee. Suh, Weisman and J. Rakower colluded *not* to submit a satisfaction of judgment for

7

$26,010 "unspent" funds, repaid by Brodsky on July 26, 2007, in order to impose "the amount of $35,850 of which $11,875 remains due and unpaid" on multiple subpoenas. [¶ 227-238] Their fraudulent scheme devises to expand the amount of "unspent" funds from $26,010 to $68,000 for collection from any future election or employment. [¶ 29-47] [4]

Exhibit 3 [¶ 233] The NYC Comptroller assigned Brodsky Claim #2017LW002809 on January 31, 2017 (Dec. A29) which includes, inter alia, two checks: $34.56 paid September 11, 2006 (Dec. A32) and $25,975.44 paid, pursuant to Arthur Greig, Esq., July 26, 2007 (Dec.A30-31), totaling $26,010; deposited on August 16, 2007 by Julia Tomassetti, former board employee.

Exhibit 4 [¶ 234]   Correspondence of Lieutenant Lopez of April 10, 2017 to Brodsky, stating, "In my previous letter to you I sent you a 'partially returned' endorsed property execution pursuant to CPLR 5021(4)(B). However, the property execution was mistakenly endorsed and I have enclosed a certified copy of the corrected property execution endorsed 'fully satisfied.'...This does not change your current status with our office with regard to your previous request." (Dec. A34) The letter implies that according to board employees, the debt for $12,546.04 remains but board employees would have to re-file the writs of execution. A corrected copy of the property execution was filed at the New York County Clerk on April 10, 2017.(Dec.A35-37 )

Subsequently, Brodsky was told by the NYC Comptroller's Office, June 1, 2017 that on April 3, 2017, board counsel rebutted the Sheriff's contention that interest of $7,917 was due on $26,010.  Since Suh and Weisman colluded not to file a satisfaction of judgment, no proof exists "if" $26,010 was paid. On April 27, 2017, board counsel supplied the Comptroller with various

---

[4]   Brodsky's total funds were $119-120,000 including $26,010 "unspent" repaid. Tomassetti, Weisman and Suh expanded the total to $188,000, $38,000, 25% "over the limit," $150,000, to incur penalties for a debt: [¶ 29-53]

Thus, $38,000 − $26,000 = $12,000 (rounded) = $9,400 + $470 + $470(500) + $1,500 = "$11,87[5]," corresponds to "the aggregate amount of $35,850, *of which $11,875 remains due and unpaid*" imposed on subpoenas and executions. (Dec. E132-189)The difference, $68,000 ($188,000 - $120,000) represents the "partly satisfied," fraudulent debt of $11,875, "due and unpaid" on about five subpoenas which resulted from the illegal dissemination of returns, 26 USC § 7431(c)(1)(B),(2),(3) and (d).

documents   implying that since $26,010 had not previously been paid, J. Rakower   imposed $11,875  additional penalties on the unpaid amount  in excess of statutory interest, thus the $7,917 interest lien is not due but "$12,546.04" may still be owed. Weisman, et al. perpetuate the bald-faced lie that Brodsky and Feinsot did not return $26,010 for an indeterminate time.  Brodsky and Feinsot repaid $26,010  within a month of the 2007 decision: *no debt was due.* Since J. Rakower lied that "thereafter" Feinsot and Brodsky repaid $26,010 to the board, *which they did not*, "The sum currently due, $13,290.40" represents adverse claims to date:

> **Brodsky appealed the June 21, 2007 decision, and the decision was affirmed by the Appellate Division First Department. A judgment was entered, and thereafter Brodsky returned the $26,010 in funds to the Board.** The sum currently due, $13,290.40, was calculated by the Board after fees and interest were added to the remaining balance. [No. 118316/06 (N.Y. Sup. Ct. July 9, 2010)] [¶ 235-237; Dec. G238] (D. Dec. Ex. A) (Jacob 1, ¶ 3; 2, ¶ 2.)

**Exhibit 5** - Letter of Lieutenant Lopez informing Brodsky that the Sheriff would honor the request of ExxonMobil, c/o Computershare, for release of the execution check disseminating tax return information under the purview of the IRS.[5] [¶ 234; Dec. A39] The letter of May 8, 2017 (Dec. A40), with Exxon's letter of January attached states, "Please accept this letter as an approval for you to release a copy of the relevant check to Miss Brodsky."

3. Attached as **Exhibit B** [¶ 66-113](Dec. B42-58; Dec. D125-127) is  Brodsky's Opposition to Suh's information subpoena  by Leo Glickman, Esq., February 8, 2010:

> The statute, we believe permits us to deposit the instrument solely with the court, rather than the clerk, because to deposit it with the clerk would make it public record and defeat the purpose of the stay provision. We therefore ask that if Petitioner is required to submit an unredacted version of the Information Response, she be allowed to deposit it with your honor's chambers. (Dec. B46) (Jacob 2, ¶ 2)

Further, Suh and Weisman evince "…fraud – on the court and Petitioner regarding the amount

---

[5]   Suh and Weisman did *not* file a 1099-A(copy A and B) with the IRS for the execution of 223 shares of Brodsky's ExxonMobil stock at about $13,237.93 on July 22, 2010 which requirement, *if not filed*, carries steep penalties. They also failed to file an IRS Information Return for the $26,010 Brodsky repaid in 2007. [¶ 159-163, 219]

owed to Respondent" [¶ 66-77; Dec. B46-47] Attached correspondence from Glickman to Suh, dated January 18 and January 22, 2010, request Suh to modify or withdraw the subpoena, "Since you have not taken the opportunity to discuss the defects, and refused to modify or withdraw it [ex]cept *[sic]* insofar as to adjust the date, we consider the 'subpoena' a nullity."(Dec.B48-50) Glickman contacted Brodsky on March 19, 2010 concerning the un-redaction of Brodsky's returns, etc. "You must appear for the deposition on April 1. I will also have to provide the information questionnaire on March 23" and Brodsky's response (Dec. B54) On March 22, Suh wrote  Glickman, "I am writing to inform you that the deposition on April 1, 2010 in the above-referenced matter may be videotaped." (Dec. B55)  Attempting to stop Suh and Weisman's exploitative tactics, Glickman answers on March 22, 2010: (Dec. B56)

> …presumably it is your client's intention to  ask  Ms. Brodsky questions to assist
> you in identifying her assets. Obviously, any disclosure of that information
> beyond the parties to this litigation would pose a security issue to Ms. Brodsky…
> We therefore ask that you sign  a protective order that would enjoin the parties
> and their attorneys from disseminating the information elicited in the deposition.

Suh responds on March 24,  "As a government agency, the CFB is also subject to the New York State Freedom of Information Law (FOIL). Thus, we cannot enter into the protective order requested in your letter because it is contrary to the CFB's disclosure obligations." (Dec. B57-58) Suh lies that a federal or state Freedom of Information law exists allowing dissemination of private tax returns or return information.

Suh also publicizes libelous information in the "New York Post." On February 19, 2010, Glickman emailed Brodsky, "Maggie Haberman sounds like she's doing a little story on your litigation with the CFB. I just gave her some of the facts of the case." Haberman reiterates Suh's libelous statements in an article of February 22, 2010 without interviewing Brodsky, "Pol Fights for 'tainted' cash."(Dec.B51-52)  Suh libels the treasurer, or "top staffer," whose liability was denied by two state courts and Brodsky who did *not* withhold public funds; Suh further falsifies the amount of

"debt." Brodsky answered on March 1, 2010, highlighting the board's transgressions and the 0-9

decision, *Lopez Torres*, 552 U.S. 196. (Dec. B53, Dec. D125-127)

       4. Attached as **<u>Exhibit C</u>** [¶104] (Dec. C59-107) are Exhibits A-X (U, V missing) of

the April 1, 2010 deposition following J. Rakower's handing Brodsky's tax returns and information

to Suh and Weisman on March 23, 2010.  They then  disseminate the return information on

subpoenas and writs of execution to banks, brokerage companies, an accountant and  employers:

        Exhibit A –   Un-redacted Information Subpoena (redacted) (Dec. C60-62)
        Exhibit B –   Information Subpoena Questionnaire, questions 1-21 (Dec. C63-66)
        Exhibit C –   Image Archive of Honeywell International, Inc. check (Dec. C67)
        Exhibit D –   Schwab Statement: 2/1/2010  to 2/28/2010 showing return
                          information for Boeing Co.,  Exelon Corporation, Xerox Corp.,
                          American Electric Power Co., Inc. (Dec. C68-69)
        Exhibit E –   Schwab Statement: 12/1/2009 to 12/31/2009 showing return
                          information for Boeing Co.,  Exelon Corporation, Xerox Corp.,
                          Honeywell International (Dec. C70-71)
        Exhibit F –   Schwab Statement: 11/1/2009 to 11/30/2009 showing return
                          information for Boeing Co., Exelon Corporation, Xerox Corp.
                        (Dec. C72-73)
        Exhibit G –   Schwab Statement: 10/1/2009 to 10/31/2009 showing return
                        information for Boeing Co.,  Xerox Corp., Exelon Corp.(Dec. C74-75)
        Exhibit H –   Schwab Statement: 8/1/2009 to 9/30/2009 showing return
                        information for Exelon Corp., DuPont E. I. De Nemours & Co.,
                        American Electric Power Co.,  Inc.(Dec. C76-77)
        Exhibit I –   Schwab Statement: 1/30/2010 to 2/26/2010 showing two
                        Checking Accounts (Dec. C78-85)
        Exhibit J –   HSBC Joint Checking Statement, 1/8/2009 – 2/6/2009 (Dec. C86)
        Exhibit K –   HSBC Bank – Charles Schwab check, 9/28/2009 (Dec. C87)
        Exhibit L –   Charles Schwab Bank Check, 12/28/2009 (Dec. C88)
        Exhibit M –   Charles Schwab Bank Check, 1/4/2010 (Dec. C89-90)
        Exhibit N –   Charles Schwab Bank Check, 2/10/2010 (Dec. C91-92)
        Exhibit O –   HSBC bank deposit, 9/25/2009 (Dec. C93)
        Exhibit P –   Brodsky's 2008 Individual Income Tax Return (redacted)(Dec.C94-95)
        Exhibit Q –   Brodsky's 2007 Individual Income Tax Return (redacted)(Dec.C96-97)
        Exhibit R –   HSBC personal check of nonparty (Dec. C98)
        Exhibit S –   HSBC personal check of nonparty (Dec. C99)
        Exhibit T –   Commerce Bank Statement of Time Deposit, 7/27/2007 (Dec. C100)
     *Exhibit U –   Missing Information
     *Exhibit V –   Missing Information
        Exhibit W –  Notice not served to Brodsky, August 31, 2009 (Dec. C101-104)
        Exhibit X –  Notice of Judgment Debtor Exemption (Dec. C105-107)

5.  Attached as **Exhibit D** [¶ 114-123] (Dec. D108-131) are excerpts from deposition of April 1, 2010   at the board corresponding to dissemination of Brodsky's tax return information for 2007, 2008 and 2009 [Dec. D94-96, 109]: ( Jacob  2, ¶ 2)

> **Honeywell** (tax return) [¶ 114](Dep. 62:2-63:12; 111:12-18)(Dec. D110)
> **American Electric Power** (tax return)[¶115](Dep.76:16-77:2;79:17-5)(Dec.D111-114)
> **Eastman Kodak:** (tax return)[¶ 116](Dep. 82:23-84:3)(Dec. D115)
> **ExxonMobil** (tax return)[¶ 117] (Dep. 84:18-85:18)(Dec. D116)
> **General Electric** (tax return)[¶ 118] (Dep. 85:19-86:18)(Dec. D117)
> **Merck**   (tax return) [¶ 119]  (Dep. 90:5-17)  (Dec. D118)
> **Walt Disney** (tax return)[¶ 120](Dep. 90:18-91:9)(Dec. D119)
> **Exelon** (Schwab on tax return)[¶ 121] (Dep. 93:13-25; 96:13-16; 98:8-9)(Dec. D120)
> **Xerox** (Schwab on tax return) [¶122] (Dep. 96:2-11, 97:18-98:2)(Dec. D121-122)
> **Boeing** (Schwab on tax return) [¶ 123] (Dep. 93:11; 98:4-14)(Dec. D123-124)

6. Attached as **Exhibit E** [¶ 126-136](Dec. A23; E132-189) are abstracts of the subpoenas, restraining orders and correspondence to banks and brokerage companies; notices of levy and executions: ( Jacob  2, ¶ 2)

¶127.  (i)    Charles Schwab and Co., Inc., 311 Main Street, San Francisco, CA 94105:
Two restraining notices; Meryl Brodsky etc. February 8, 2010 **(Dec. E133-148)**
Two Subpoenas duces tecum, Meryl Brodsky and joint owner, March 5, 2010
and March 23, 2010 **(Dec. E152-156 )**
Brodsky's CPLR § 3120 letters, February 14 and March 11, 2010 **(Dec. E149-151)**
**Notes and exhibits to Schwab garnishment (Dec. E157-161)**
**\*Illegal disclosure of Boeing, Honeywell, AEP, Merck and DuPont from returns**
**Notice and Levy, execution of two Schwab accounts,  February 12, 2010**
*Amount garnished from the two accounts: $9,160.29, plus fees*

¶128. (ii)   TD Bank, 1701 Route 70 East, Cherry Hill, NJ 08034:
Information Subpoena with Restraining Notice, September 1, 2009
Subpoena duces tecum, March 4, 2010  **(Dec. E164-166)**
TD Bank letter, March 11, 2010; Brodsky's letter, March 12, 2010 **(Dec. E162-163)**

¶129. (iii)  HSBC Bank, P.O. Box 2013, Buffalo, NY 14240:
**\*Two subpoenas duces tecum and restraining orders on two bank accounts:**
Meryl Brodsky; Meryl Brodsky and joint owner
Brodsky's  CPLR § 3120 letter, February 13, 2010 – No answer **(Dec. E167-169)**

¶130. (iv)   ComputerShare, 250 Royall Street, Canton, MA 02021:
**\*Illegal Disclosure: Information Subpoena with Restraining Order;**
**Questionnaire in Connection with Information Subpoena with**
**Restraining Notice to ExxonMobil and Eastman Kodak Companies,**
**April 7, 2010 (Dec. E173-182)**
Suh's turnover order served on ComputerShare May 19, 2010
**\*Illegal disclosure: Notice and Levy, execution of  ExxonMobil**

12

|  | | Brodsky's CPLR § 3120 letter, November 30, 2010 **(Dec. E171 )** |
|---|---|---|
|  | | ComputerShare letter to Meryl Brodsky, December 10, 2010 **(Dec. E172 )** |
| ¶131. | (v) | Office of the Sheriff, 66 John Street, New York, NY 10038: |
|  | | Sheriff's levy to ComputerShare for ExxonMobil stock, May 20, 2010 **(Dec. E170)** |
|  | | Brodsky's CPLR § 3120 letter, December 28, 2010 – No Answer **(Dec.  E188-189)** |
| ¶132. | (vi) | BNY Mellon, P.O. Box 358016, Pittsburgh, PA 15252: |
|  | | Information subpoena with restraining order, April 7, 2010 |
|  | | ***Illegal disclosure: Notice and Levy, execution of individual and joint*** |
|  | | ***holdings of Alcatel Lucent, Citadel Broadcasting, General Electric and*** |
|  | | ***Exelon, July 7, 2010; (Dec. A23)*** |
|  | | *Sheriff's levy to BNY Mellon, July 7, 2010 |
|  | | BNY letter, response to plaintiff's phone call, September 21, 2010 and |
|  | | October 1, 2010 **(Dec. E183-184)** |
|  | | Brodsky's CPLR § 3120 letter, October 16, 2010 **(Dec. E185)** |
|  | | Replevin of Exelon stock, October 23, 2010 |
| ¶133. | (vii) | Walt Disney Company, 500 S. Buena Vista Street MC 9722, Burbank, CA 91521: |
|  | | Information subpoena with restraining order, April 7, 2010 |
|  | | ***Illegal disclosure: Notice and Levy, joint holdings, Walt Disney, July 7, 2010*** |
|  | | *Sheriff's Levy; Walt Disney letter, January 13, 2011, stop order removed |
|  | | **(Dec. E186)** |
| ¶134. | (viii) | Real estate liens on one jointly owned and one private apartment |
| ¶135. | (ix) | Defendant Suh's phone calls to three employers from W-2s |
| ¶136. | (x) | Mark Feinsot, CPA, 38 West 32nd Street, New York, NY 10001: |
|  | | Subpoena duces tecum for tax returns to Mark Feinsot, CPA, |
|  | | April 5, 2010 **(Dec.  F200-202)** |

7. Attached as **Exhibit F** [¶ 142-196] (Dec. F190-230) is Suh's email to J. Rakower,

c/o Iris Roberts, June 11, 2010 (Dec. F191); Feinsot's motion to quash, barring dissemination of

Brodsky's tax returns (Dec. F192-226); Brodsky's affidavit and Schonfeld, Esq.'s affirmation  for

adverse claims. (Dec. F227-230) Suh did not answer Feinsot and importuned J. Rakower to "fix" it,

which she did. There being no judicial exceptions pursuant to 26 U.S.C. § 6103 and § 7431,

Rakower nonetheless hands Brodsky's returns to Suh and Weisman then precludes Feinsot's and

Brodsky's motions. Despite previously stating, "Oral Argument Directed," now, "The appearance is

on the papers only, you don't have to come to court."(Dec. F191) Feinsot, deposed by Sikorski:

> To make matters worse for an accountant or other party who discloses tax
> records of a taxpayer IRC § 7525(a), the act of improper disclosure is a
> misdemeanor, IRC § 7216 (a) (2). This is in the nature of an attorney violating a
> client's privilege. **A client or a taxpayer alone, not the attorney or accountant,**

13

> **has control over this information. The accountant cannot be forced to disclose this information except in exceptional criminal circumstances (usually criminal proceedings, IRC § 7525(2)), and even then only under court order. [¶ 147]**

Pointing out two conflicting orders of August 31, 2009 and September 24, 2007, Sikorski states:

> The two judgments, copies of which are attached, are described in the second order as 'Duplicate original of order dated July 17, 2007'. Yet, both orders are different from e a c h other. This raises the question as to whether the second order can be enforced. It is claimed to be a duplicate, yet it clearly is not. It seems that only the first judgment can be enforced, as it is the original, and the other judgment should be vacated.[¶ 151; Dec. F196-197]

Shutting out Brodsky's affidavit as well as Schonfeld's affirmation, "I am asking the Court

to leave the judgment intact and to postpone on any Garnishment or the compelling of Ms.

Brodsky's brokers to turn over funds to satisfy the judgment until the appeal is determined,"

J. Rakower, Suh and Weisman evince extrinsic fraud. [¶ 184; Dec. F230] (Jacob 2, ¶ 2-3)

      8. Attached as **Exhibit G** [¶ 187-204] (Dec. G231-243) are two decisions of

J. Rakower, No. 118316/06 (N.Y. Sup. Ct. July 9, 2010) (Seq. 04) (Dec. G232-235) & (Seq.05)

(Dec.G236-239) (D. Dec. Ex. A); Rakower's disposition of Case #111590-2011, November

2011(Dec.G240-241); and Appellate decision, *Brodsky v. N.Y.C. Campaign Finance Board*,

2013 N.Y. App. Div. LEXIS 4552. (Dec. G242-243). (Jacob 1, ¶ 3)

      Handing Brodsky's return information to Suh and Weisman [¶187-189] enabled

them to locate Brodsky's assets, forcing the companies, notably, ExxonMobil to transfer

return information to them and release monies for a fraudulent debt. Stating "the Board 'will

no longer need the subpoenaed records from Feinsot,'" Rakower holds him liable for the debt

because the August 2009 order does and he refuses to disseminate Brodsky's tax returns.

(Dec. G239)

      After two state judges recused, Case No. 111590-2011 "for renewal and to vacate

the money judgment" pursuant to CPLR § 5015(a)(2) and (3), was routed to J. Rakower who

precluded adverse claims. Lacking any answer, Brodsky goes to Rakower's chambers and witnesses her scrawl, "Decline to sign… leave to renew is denied," evincing extrinsic fraud. [¶ 198-199; Dec. G241] Weisman's and Suh's attempt to stop litigation by failing to serve the August 31, 2009 order, or file notice of entry, incurred  additional legal fees.  The First Department  affirmed that Feinsot was exempt, "The court, however, found petitioner Feinsot was not personally liable for the repayment. Petitioners appealed to this court and we affirmed," *Brodsky v. N.Y.C. Campaign Finance Board*, 2013 N.Y. App. Div. LEXIS 4552. [¶ 202;  Dec. G242] (Jacob 1, ¶ 3)

   9.  Attached as  **Exhibit H**   [¶ 197] (Dec. H244-245) is the Disciplinary Committee of  the NYC Association of the Bar's response to Brodsky's complaint, leaving the matter open.  Suh and Weisman threatened two or more attorneys with baseless sanctions  to deny Brodsky defense throughout  the  proceeding  costing  over  $30,000.  Accordingly,  "[C]oncerning  the  material allegations of professional misconduct…We have found that a judicial determination of such matters is helpful to the Committee," dated October 28, 2010. [¶ 197] (Jacob 2, ¶ 3)

   10.  Attached as  **Exhibit I**   [¶ 1]( Dec. I246-252) is the  Second Circuit opinion, *Brodsky v. Carter,* 16-1283-cv (2d Cir. 2016) which does ***not***  state Brodsky's IRC claims are precluded by res judicata, collateral estoppel or the statute of limitations.  The Decision  opines that Brodsky's pleading lacks "specifics" needed to  substantiate violations of § 6103 pursuant to 26 U.S.C. § 7431(a)(2),( c) and (d). The facts contained in this Declaration, **Exhibit A** through

**Exhibit I**   create a foundation for the instant case:

> A complaint filed pursuant to section 7431 must allege with specificity the returns or return information inspected or disclosed, the dates of inspection or disclosure, to whom information was disclosed, and any other facts sufficient to inform the defendant of the particulars of the alleged violation. Absent such information, motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) have been successful. Generally, however, courts dismiss without prejudice and provide plaintiffs an opportunity to amend the complaint.(https://www.irs.gov/pub/irs-pdf/p4639.pdf) (Jacob 2, ¶ 1)

# IV - <u>ARGUMENT</u>

## LEGAL STANDARD – FED. R. CIV. P. 15(a)(2)

Although Docket No. 11 is currently dismissed by Memo Endorsement (AJN), dated October 12, 2017, plaintiff amends her motion to object to points in the Jacob letter, dated October 16, 2017. The amended motion does not replace plaintiff's prior motion or declaration, dated August 29, 2017. Statutory authority is found in Fed. R. Civ. P. 15(a)(2): "(2) *Other Amendments.*  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." This Judge Nathan has done. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160 (2d Cir. 2015).

## POINT I – PLAINTIFF HAS A VALID 26 U.S.C. § 7431(a)(2) CLAIM

Jacob states, p. 2, ¶ 2, "By Complaint filed May 1, 2017, Plaintiff commenced the present action claiming the Board violated § 6103 by using Plaintiff's financial information, disseminated by Justice Rakower, to garnish Plaintiff's Exxon-Mobil shares, and seeking to recover the value of those shares. See Docket No. 1 at ¶¶ 110, 112-136, 190, and at 48." Herein lies the primary claim. J. Rakower violated § 7431(a)(2) by handing Brodsky's tax returns to defendants Suh and Weisman for dissemination to financial institutions in order to garnish and execute Brodsky's personal monies:

(i) *Section 6103  generally prohibits the disclosure of tax information to the Justice Department or other federal, state or local  enforcement agencies  in nontax civil cases.* (IRS Disclosure & Privacy Law Reference Guide, Rev. 10-2012, at 1-11.) [¶¶66-67, 181-183]; (ii) Disclosure and dissemination are prohibited "except as authorized in this title" and does *not permit the court to create judicial exceptions to the general prohibition against disclosure, see Olsen v. Egger*, 594 F. Supp. 644 (S.D.N.Y. 1984). Contrariwise, plaintiff filed an amended complaint, September 18, 2017, ¶ 2:

> Employees of the NYC Campaign Finance Board (the "board") violated the Internal
> Revenue Code pursuant to 28 U.S.C. § 1340, 26 U.S.C. § 7431 and supplemental
> State law, 28 U.S.C. § 1367(a) pursuant to NYCPLR § 213(8) allowing claims for fraud.

Accordingly, "[T]he Board sought to dismiss the Complaint on the grounds that the suit (i) was barred by a 2-year statute of limitations; (ii) was precluded by the doctrine of *res judicata*; and (iii) failed to state a claim. *See* Docket Nos. 11-13 " (Jacob 2, ¶ 2) Predicated on a valid claim, Brodsky argues that Jacob's "*res judicata*" and statute of limitations responses are both false and inimical to the public interest.

## POINT II – THE RES JUDICATA CLAIM IS FALSE

Jacob predicated her prior motion to dismiss on a previous action (Dkt. 11)(Jacob 2, ¶ 1), then relies on it to dismiss the amended complaint, despite that it was eliminated pursuant to the Court's Endorsement Memo (AJN), dated October 12, 2017. *Brodsky did not previously bring a § 7431(a)(2) claim nor is the statute mentioned in any prior pleading or decision of the district court.* Such claims could not be heard, nor were they, in any state court ("such taxpayer may bring a civil action for damages…in a district court of the United States"). The Second Circuit dismissed a 2016 action brought under an unrelated statute but opined that any IRC claim lacked specificity, "Although §§ 6103 and 7431, in tandem, provides a private cause of action for certain unlawful disclosures of tax returns or return information…Brodsky has not alleged that any individual in fact unlawfully disclosed her tax returns or return information," *Brodsky v. Carter*, 16-1283-cv (2d Cir. 2016). Here, the Court did not mention res judicata or the statute of limitations. (Dec. I) (D. 8) *See Bleavins v. United States*, 1991 U.S. Dist. LEXIS 20975, at **3-4 (C.D. Ill. 1991) (Bleavins did not allege the items or to whom the return information was disclosed; dismissed without prejudice, *allowing 20 days to amend complaint*.); *May v. United States*, 1992 U.S. Dist. LEXIS 16055, at *6 (W.D. Mo. 1992)("plaintiff must specifically allege who made the … disclosures, to whom… the nature of the disclosures, the circumstances…and the dates on which they were made"); *c.f. Barrett v. United States*, 51 F.3d 475, 480 (5th Cir. 1995)(Damages awarded for § 7431 violation where Agent acted in bad faith by disclosing return information.)

17

Claims that may appear in the final judgment but which were not the subject of contest in the action will not support res judicata or collateral estoppel. Judge George B. Daniels dismissed the case, in its entirety, recently declining it as "not related" or not identical, Rule 40.2. The previous case was not a final judgment on the merits reached after trial, summary judgment or judgment as a matter of law due to Magistrate Freeman's denial of the right to query a witness or amend. Since no hearing or discovery ensued, the primary requirement of res judicata of a trial on the merits is not satisfied.

Although Magistrate Freeman correctly stated in her Report that a *private right* exists under § 6103: "The only section of the Internal Revenue Code cited by Plaintiffs for which Congress *has* provided a private right of action" (*Brodsky v. N.Y.C. Campaign Fin. Bd.*, 15-CV-3469, 2015 U.S. Dist. LEXIS 169104 at *26 (S.D.N.Y. 2015)), she misplaces the statute, *citing   Maggio v. Hynes*, 423 F. Supp. 144-46 (E.D.N.Y. 1976) (A state prosecutor for nursing homes could subpoena returns from an accountant).   Since Maggio was prosecuted under § 7213, allowing criminal penalties, not civil damages,  prior to the 1977 enactment of § 6103 amendments adding restrictive disclosure laws, *see Gates v. Wilkinson*, No. 03-CV-763  (N.D.N.Y. 2005) ("Since 1977, tax returns are described by statute as 'confidential.' 26 U.S.C. § 6103(a)"), her determination is not apt. (D.4) See also, *St. Regis Paper Co. v. U.S.*, 368 U.S. 208 (1961)(Disclosure of census data to FTC allowed but law amended); *United States v. O'Mara,* 122 F. Supp. 399 (D.C.D.C.1954)(Return disclosure allowed only for US Senate Committee on Interstate and Foreign Commerce)[¶11, fn 3], *contra, O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142, 143 (E.D.N.D. Ohio 1949)(Rule 34 did not permit disclosure of tax returns in a personal injury case). The board is ***not*** the IRS (*see In re Rae*, 436 B.R. 266, 271 (Bankr. D. Conn. 2010)) (D. 7), tax court, federal judge, prosecutor or  Senate Committee with authority in criminal cases to subpoena tax returns, I.R.C.  § 6103(i)(1)[¶ 182]. If neither Brodsky nor the Magistrate cited  § 7431(a)(2), there could be no decision on the merits – Jacob's

18

first element of res judicata – and "amendment would be futile" (D. 8) are nullities; *contra*, "Plaintiff is on notice that declining to amend her pleadings… to Defendant's August 17 motion to dismiss may well constitute a waiver…to cure any defects," Order, Judge Alison Nathan (Dkt. 14), August 21, 2017. The second element is not met because Brodsky recently filed a city claim omitted by Defendant which expands nonparties, ***not*** in privity. The third element lacks credibility since the transactions resulting in § 7431(a)(2) claims emanating from execution of Brodsky's stock due to fraud are inapposite to any prior claim. (D. 3) Such facts were not, nor could have been, previously litigated. See *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 400 F.3d 139, 141(2d Cir. 2005) (Claims subsequent to a prior action are ***not*** res judicata); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 327 (S.D.N.Y. 2015) (Claims requiring facts beyond prior complaint are ***not*** res judicata). (D.8)

Prior appeal of an unrelated claim does not preclude. See *Proctor v. LeClaire*, 846 F.3d 597 (2d Cir. 2017)(Despite LeClaire's protracted confinement claim was previously dismissed on res judicata and collateral estoppel grounds, *Proctor II*, 2011 WL 2976911, at *3-4, summary judgment now violates F.R.C.P. 56(f) and vacated on substantive due process.). *See also*, *Schaeffler v. US*, 806 F. 3d 34 (2d Circuit 2015); *Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153 (9th Cir. 2012); *US v. Adlman*, 134 F. 3d 1194 (2d Cir. 1998). Plaintiff's securities and common law fraud claims relating to a real estate scheme, *Charney v. Zimalist* 07-CV-6272 (S.D.N.Y. 2016), defeat collateral estoppel because plaintiffs have a "right to collect the full judgment from [a tortfeasor]," see *Siler v. 146 Montague Assocs.*, 228 A.D.2d 33, 38 (2d Dep't 1997); *accord Ravo v. Rogatnick*, 70 N.Y.2d 305, 313 (1987) (under joint and several liability, citing N.Y. CPLR § 1402). Neither res judicata or collateral estoppel applied where plaintiff plead violations of the FMLA Act, *Ravo v. Rogatnick*, 70 N.Y.2d 305, 313 (1987) and the arbitrator disclaimed consideration of the Act. Similarly, Brodsky's 26 U.S.C. § 7431(a)(2) claims were not litigated.

19

## POINT III –STATUTE OF LIMITATIONS, § 7431(d) [6] (D. 6-9)

Section 7431(a)(2), titled "Civil damages for unauthorized inspection or disclosure of returns and return information," provides a civil remedy for any employee not of the United States. [¶ 75] A court may consider the ruling of a higher court, the Ninth Circuit, that is not binding. *Aloe Vera of America, Inc. v. United States*, 699 F.3d 1153 (9th Cir. 2012), sets a precedent for applying the statute for wrongful disclosure of returns. Until the taxpayer knows about the disclosure of a false statement, § 7431(d) does not begin to run because the taxpayer has not discovered the existence of the disclosure of false fact. [¶ 76-77]  The statute of limitations did not begin to run when the  plaintiffs became aware of an examination, but only later when they knew of the specific unlawful disclosures at issue, which the court affirmed. *Aloe*, 699 F.3d 1153 (9th Cir. 2012).

Defendant misrepresents that Brodsky "was required to bring this action in 2012." (D. 7) Here, the statute of limitations did not exhaust in 2012 because a subsequent action in 2013, relieving Feinsot of any campaign obligations, proved  that J. Rakower lied.[¶ 173-186, 200-204] (D. 7) Apprised by the IRS of  pending adjustments disseminated by the NTA since 1991-92, plaintiffs filed Freedom of Information Act requests in 1997,  1999 and a complaint under 26 USC § 7431(a). The question was when the "date of discovery" occurs. Accordingly, this rule comports  with the "general federal rules" that a limitations period begins  when "the plaintiff knows or has reason to know of the injury which is the basis of the action," *citing Merck & Co. v. Reynolds,* ___US___, 130 S. Ct. 1784, 1795 (2010), against the background of the so-called "discovery rule" in fraud cases, *Id.*

---

[6]  § 7431(c)  "**Damages** In any action brought under subsection (a), upon a finding of liability on  the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of …   (1) the greater of  (B) the sum of  (i) the actual damages sustained by the plaintiff as a result of such  unauthorized inspection or disclosure, plus (ii) in the case of a willful inspection or disclosure or  an inspection or disclosure which is the result of gross negligence, punitive damages, plus (2) the costs of the action, plus (3) in the case of a plaintiff which is described in section 430(c)(4)(A)(ii), reasonable attorneys fees…"

§ 7431(d)  **Statute of limitations**: "Notwithstanding any other provision of law, an action to enforce any liability created  under this section may be brought, without regard to the amount in controversy, at any time  within 2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure."

Brodsky could not discover the fraud until appeal of one of two identical execution orders dated July 9, 2010 for the exact same obligation. Thus, the August 31, 2009 order renders the identical execution orders of July 9, 2010 falsifications. After contacting the NYC Sheriff for a restrained XOM check in February 2017, Brodsky was informed that the case is not satisfied due to a pending Writ of Execution of $12,546.04 on four stocks at Mellon Investor Services, LLP and interest lien of $7,917 on $26,010.— Weisman lied that $26,010 was not repaid. Both the Exxon check and writ of execution reveal that Suh and Weisman compelled the transfer of return information to them, representing illegal dissemination and damages to date. (Dec. A11-41) Brodsky had not seen the documents until now. Tomassetti, Weisman and Suh predicated the debt on a bogus total of $188,000, concealed in court papers, which yields a bogus debt of $68,000. With no interim spending, the total of $119-120,000 represents fact: $63,232 private funds, $55,776 matching funds; $26,010 returned and $29,766 spent. [¶ 29-47] Suh and Weisman intentionally failed to file satisfactions of judgment to Mellon Investor Services, LLP, Exxon, c/o Computershare, or any garnishee after locating and executing stock, intending to do it again. Adverse claims pursuant to § 7431(c)(1)(B)(i)(ii),(2),(3) exist for Exxon because the debt remains a falsification and return information, still in their possession, is currently disseminated. Focusing on *Aloe*, the Court noted a taxpayer who knows the IRS has disclosed his tax return generally has no reason to suspect that the IRS also fabricated and disclosed a false statement. Brodsky had no reason to suspect a judge would fabricate and disclose such falsifications or disseminate return information to execute a bogus debt but J. Rakower did. Accordingly, the statutes pursuant to CPLR § 213(8) and 26 U.S.C. § 7431(d) do not run on Brodsky's claims, "Until …the disclosure of that specific, false statement." [¶ 76]

One of § 6103's main purposes, actionable under § 7431, is protection against malevolent government disclosure. *Rueckert v. IRS*, *775 F.2d* 208 (7th Cir.1985) The question is "whether a *knowing* provision of false information can be 'pertinent' to 'preventing fraud or fiscal evasion.'"

Clearly, "information known to be false cannot be subject to protection as 'pertinent' information under the Tax Treaty." Further, "There is support in the record for Taxpayers' assertion that Taxpayers had correctly reported the supposedly unreported $32 million in commissions and royalties. Thus, there is a genuine issue of material fact as to whether the government knowingly disclosed false information and summary judgment was not appropriate on this issue." *Aloe*, *Id.* Similarly, Rakower, Suh and Weisman falsified total funds, "deliberately miscalculat[ing]" (D. 3) in order to fabricate a debt but fail to prove that Brodsky or Feinsot owed anything after the return of $26,010. [¶¶ 78-83, 114-144; Dec. A-I] Predicating campaign debt on falsehoods, as the board does in this case and others is contrary to the public interest and should not waive the test of constitutionality.

## POINT IV – FRAUD CLAIMS AND DAMAGES, § 7431(c )

Jacob belies her allegation, p.2, ¶ 3, that Brodsky fails to state a claim for damages since her response to the amended complaint is insufficient to dismiss:

> Plaintiff instead filed a 252-paragraph Amended Complaint, nearly identical to the initial pleading, See Docket No. 17. The relevance of Plaintiff's few new allegations is not readily discernible. *Id.* at ¶¶ 234-235. The allegations do not, however, cure the deficiencies identified in Defendant's initial moving papers.

Jacob, p. 2, ¶ 2-3, refers to only 33 (¶ 1, 48 (legal fees), 112-136, 234-235, 246-249) of 252 paragraphs of the amended complaint, also excluding the amended caption, then distorts the facts. The financial information disseminated and executed by Suh, Weisman and J. Rakower, cited by Jacob as 33 paragraphs of the amended complaint but omitting all of the hard data in Brodsky's Declaration, substantiates violations of § 7431(a)(2), (c) and (d).

Jacob points out two paragraphs: "The relevance of Plaintiff's few new allegations is not readily discernible. *Id.* at ¶¶ 234-235." Brodsky denies Jacob's contention that there are only two "allegations" describing recent events relevant to illegal dissemination and  recovery of damages because the preponderance of evidence proves fraud within the statute of limitations, § 7431(d):

22

(i) Brodsky references the following 216 paragraphs in opposition to the two allegations stated by Jacob, including true and correct copies of documents: "Declaration of Meryl Brodsky," **Exhibit A,** Exhibits 1-5: Dec. 1; A11-41; Dec. D128-131; ¶ 1-113, 124-125, 137-141, 154-196, 200-252. The Rule 26 relevance standard allows all of the paragraphs and exhibits required to prove her case. Most paragraphs relate to proving dissemination of returns and fraudulent execution of Brodsky's monies against the background of the so-called "discovery rule" in fraud cases. Pursuant to § 7431(c) recovery of compensatory damages falls within the relevant period,[7] "2 years after the date of discovery by the plaintiff of the unauthorized inspection or disclosure," § 7431(d).[8]

(ii) The imposition of a $7,917 interest lien on $26,000 shows that Suh, Weisman and Rakower lied to the Sheriff about the return of $26,010 on July 26, 2010 to expand a fabricated debt, thus lying about the entire amount, NYC Claim #2017LW002809. Certainly, if $26,010 was repaid as it was, predicated on two Appellate decisions referenced by Jacob (1, ¶ 3) that exempt Feinsot, defendant could not simultaneously hold Feinsot or Brodsky liable nor could any interest accrue. Conjecturing they could execute private funds to enrich themselves, Suh and Weisman charged Brodsky and Feinsot with not repaying $26,010 pursuant to the altered order of August 31, 2009 subsequently opposed by Sikorski's motion to quash the subpoena for Brodsky's tax returns,

---

[7] Damages awarded for § 7431 disclosure violations: *See Rorex v. Traynor*, 771 F. 2d 383 (8th Cir. 1985); *McLarty v. U.S.*, 741 F. Supp. 751(D. Minn. 1990); *Wilkerson v. U.S.*, 67 F.3d 112 (5th Cir., 1995); *Mallas v. U.S.*, 993 F.2d 1111 (4th Cir. 1993); *Schipper v. U.S.*, 1996 WL 651082, at *4 (E.D.N.Y. 1996); *Sinicki v. U.S. Dept of Treasury*, No. 97-civ-0901, 1998 U.S. Dist. LEXIS 2015 (S.D.N.Y. 1998); *Jones v. U.S.*, 9 F. Supp. 2d 1119 (D. Neb. 1998); *Siddiqui v. U.S.*, 359 F.3d 1200 (9th Cir. 2004); *Snider v. U.S.*, 468 F.3d 500 (8th Cir. 2006); *Payne v. U.S.*, 383 Fed. Appx. 483 (5th Cir. 2010); *Fedele v. Harris*, 69 F. Supp. 3d 313 (N.D.N.Y 2014); *Minda v. U.S.*, No. 15-3964 (2d Cir. 2017), etc.

[8] The limitations period begins "when the plaintiff knows or has reason to know of the injury which is the basis for his action." *Covington v. City of New York*, 171 F3d. 117, 121 (2d Cir. 1999)(Plaintiff's "false arrest claim would not accrue… and not be time-barred."); *Kaufman v. Kaufman*, 135 A.D.2d 786, 522 N.Y.S.2d 899, 900 (2d Dep't 1987 (The fraud was uncovered and "action timely commenced (CPLR 213 [8])"); *Faison v Lewis*, 2015 NY Slip Op. 04026 (The statute of limitations, § 213(8), did not foreclose plaintiff's claim because a forged deed is void ab initio.). Federal law provides that a securities fraud action is time-barred if it is commenced more than five years after the securities violation, or two years after "discovery of the facts constituting the violation." *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010). The Supreme Court ruled that the two-year "discovery" time limit only begins to run (1) when the plaintiff actually discovers the facts constituting the violation of securities laws including the defendant's fraudulent intent, or "scienter," or (2) when a "reasonably diligent investor would have discovered" such facts.

¶142-163.  Suh and Weisman did *not* answer Feinsot's motion or Brodsky's affidavit for adverse claims in their entirety, evincing extrinsic fraud. ¶ 142-196; Dec. Ex. F190-230.  J. Rakower, aided and abetted by Suh and Weisman, disseminated returns for execution of "partial satisfaction" of the bogus debt on multiple defective subpoenas to financial institutions, a fraud on the court. Devised to collect indeterminate amounts, the fraudulent amounts of $35,415 and $470 penalty (Jacob 1, ¶ 2), predicated on a hypothecated total of $188,000, reveal they intend to collect over $68,000 from Brodsky or Feinsot. Dissemination of XOM return information, restraint of the check by the Sheriff, and an undated, execution for Exelon, Alcatal-Lucent, Citadel Broadcasting, General Electric stock, reveal J. Rakower, Suh and Weisman disseminated return information and executed private money in violation of law. Defendant's statement that "here, as in *Brodsky I*, she does not plead the elements of fraud – that is she does not allege that the Board made any material misrepresentation or that she relied on any such misrepresentation" is subterfuge (Jacob p 2, ¶ 3). The amended complaint reiterates a plethora of false statements and pleadings made by defendants including the intentional miscalculation of total campaign expenditures and willful attempt to deceive plaintiff who relied on such false calculations, statements and pleadings, in the absence of any other. Pursuant to § 7431(a)(2), Rule 9(b) and CPLR § 213(8), forcing reliance on its fraudulent total, defendants' malfeasance satisfies elements of both extrinsic and common law fraud: ¶ 37-47

**Common law and extrinsic fraud** ¶ 53 (Jacob p. 2, ¶ 3)

(1) Making a false statement of a material fact: Suh, Weisman and Tomassetti intentionally conceal the falsified total of which they derive the bogus debt imposed on subpoenas.
(2) Knowledge on the part of the defendant that the statement is untrue; and
(3) Intent on the part of the defendant to deceive the alleged victim: Statements from board staff reveal they knew they falsified the debt as well as subpoenas, executions, etc.
(4) Justifiable reliance by the alleged victim on the statement: Brodsky and Feinsot relied on the amounts and total contained in the disclosure statements, believing the board did so. Despite requests for facts, the board denied any derivation or breakdown of the debt.
(5) Injury to the victim as a result: Falsified liability to Feinsot and Brodsky as well as fraudulent execution of Brodsky's private monies resulted.

Brodsky's total funds were $119-120,000 including $26,010 "unspent" repaid. Tomassetti, Weisman and Suh expanded the total to $188,000, $38,000, 25% "over the limit," $150,000, to incur penalties for a debt. [¶ 29-53] *Such total and penalty amounts were concealed, not litigated*:

(a)   Five percent (5%) of $188,000 is $9,400, falsified "adjustment to disbursements";
(b)   Then 5% of $9,400 = $470, falsified "penalty"; plus
(c)   $470 rounded to $500, plus $1,500 additional penalties ($470, $777, $650 (rounded)) = $2,000: $470 + ($500 + $800 + $700) = $2,470 + $9,400 + $150,000 +$26,010 = $188,000 (rounded)[¶ 37-43]

Thus, $38,000 − $26,000 = $12,000 (rounded) = $9,400 + $470 + $470(500) + $1,500 = "$11,87[5]," corresponds to "the aggregate amount of $35,850, *of which $11,875 remains due and unpaid*" imposed on subpoenas and executions. (Dec. E132-189) The difference, $68,000 ($188,000 - $120,000) represents the "partly satisfied," fraudulent debt of $11,875, "due and unpaid" on about five subpoenas which resulted from the illegal dissemination of returns, 26 USC § 7431(c)(1)(B),(2),(3) and (d). **Damages =  $9,400 +$2,470 + $1,368 (sheriff's fees, interest) = $13,238** plus the difference of 223 **XOM** shares held in a dividend reinvestment plan, at $80-85/sh.  = **$18-19,000** [¶ 37-51, 227-251]

Elements of fraud are met pursuant to § 7431(a)(2), (c) and (d):  (1) The concealed amounts on subpoenas and executions were fraudulent; (2) Defendants Suh, Weisman and J. Rakower intentionally made the unauthorized disclosures of Brodsky's return information to execute a bogus debt in violation of § 7431(a)(2), (c) and (d): (i) The unauthorized disclosures and dissemination exist  within the 6 year *as well as the  2-year discovery period,* from May 8, 2017 to May 8, 2019, ¶ 76, 157-163, 207, 218, 242, 246-249, inapposite to Jacob, 2, ¶ 3, "Plaintiff attempts to argue that her action is timely under the six-year statute of limitations for fraud actions, *id.* at ¶¶ 246-249"; (ii) Brodsky sues for the amount of $19,000 damages and reserves the right to sue for  past legal fees.

## CONCLUSION

Plaintiff's amended complaint should not be dismissed.

Dated:  October 30, 2017

Meryl Brodsky, Plaintiff Pro Se
150 East 61st Street, Apt. 11k
New York, New York 10065
(212) 866-2105; meryl7@verizon.net